# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| Larry D. Ingram,<br>　　　Plaintiff,<br><br>　　v.<br><br>Christopher Donovan, Paul F. Glynn<br>Christopher Morelli, Todd Johnson,<br>Russ Palmer and James Matesanz,<br>all are agents of the Massachusetts<br>Department of Correction and sued<br>in their individual and official<br>capacities,<br>　　　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**V E R I F I E D**

**C O M P L A I N T**

04 CV 12475 RCL

**J U R Y   T R I A L   D E M A N D E D**

MAGISTRATE JUDGE _Collings_

## JURISDICTION

1. The Court has jurisdiction pursuant to 42 U.S.C. §§ 1983 and 1985 alleging a civil rights conspiracy, the right to petition the government and the Free exercise clause of the First Amendment to the United States Constitution and 42 U.S.C. § 1997d.  The Court also has jurisdiction over the Plaintiff's claims under 28 U.S.C. § 1331 et seq.

## PARTIES

2. Plaintiff, Larry D. Ingram is currently incarcerated at the Bay State Correctional Center ("BSCC") P.O. Box 73, Norfolk, Massachusetts. 02056.

3. Defendant, Christopher Donovan a Captain and Shift Commander, the highest authority during the 7x3 work shift at BSCC and at all times relevant to this complaint.  He is sued in his official and individual capacity.

4. Defendant, Paul F. Glynn a Sergeant employed as Disciplinary Officer ("D.O.") and Program Sergeant ("P.S.") and at all times relevant to this complaint. He is sued in his official and individual capacity.

5. Defendant, Christopher Morelli a Sergeant employed as Modular Housing Sergeant and at all times relevant to this complaint.  He is sued in his official and individual capacity.

1

6.  Defendant, Todd Johnson a Correction Officer (**"C.O"**) employed at BSCC and at
    all times relevant to this complaint. He is sued in his official and individual
    capacity.

7.  Defendant, Russ Palmer a C.O. employed as disciplinary Hearing Officer (**"H.O."**)
    at BSCC and responsible as the H.O. for disciplinary reports, 01-135 and 01-136
    and at all times relevant to this complaint. He is sued in his official and
    individual capacity.

8.  Defendant, James Matesanz, Superintendent (**"Supt."**), the chief administrative
    officer and responsible as the appellate authority reviewing all administrative
    appeals to disciplinary offenses and inmate grievances filed by inmates at BSCC
    and at all time relevant to this complaint. He is being sued in his official
    and individual capacity.

9.  All Defendants have acted under color of law during all times relevant to this
    complaint.

## FACTS

10. On October 18, 2001, Plaintiff formally filed civil action #01-11804 against
    (4) of the named defendants named herein with the United States District
    Court, District of Massachusetts. 02210. (Exhibit 1).

11. On October 18, 2001, Plaintiff filed a motion for service of process by the
    United States Marshals without fees to serve summons and complaint upon all
    the named defendants therein, including (4) of the named defendants in this
    complaint. (Exhibit 1, pg. 3).

12. On November 13, 2001, Plaintiff's motion for service by the U.S. Marshals
    without fees was allowed by the Court. It was further ordered that, "the
    United States Marshal serve a copy of the complaint, summons and this order
    upon the Defendants as directed by the Plaintiff with all costs of service to
    be advanced by the United States." (Exhibit 2).

13. On November 16, 2001, Plaintiff received  **"Notice To Plaintiff"** (dated 11-14-
    01), post-marked Nov. 15, 01,  with the following forms: (15) Original Summons;
    (15) USM-285 forms (Process Receipt and Return); and an order approving the
    application for service on each defendant named from the clerk of Court. The

Notice also gave instructions of the necessary forms to be forwarded to the United States Marshals Service. (Exhibit 3).

14. On November 20, 2001 at approximately 8:05 a.m. Plaintiff requested that another inmate witness the contents of (16) enveloped prior to leaving his housing unit to be mailed. (Exhibit 4).

15. On November 20, 2001 at approximately 8:10 a.m. Plaintiff caused to be mailed (16) 10x13 manila envelopes marked **"Legal Mail"** addressed to the United States Marshal for service of process upon each named Defendant named in the complaint, Certified Mail Return Receipt Requested, #[7000 1530 0000 5686 6379].(Exhibit 5).

16. On November 20, 2001 at approximately 8:10 a.m. the following were present and witnessed the required inspection of Plaintiff's mailing (16) legal envelopes: Defendants Donovan, Glynn and Morelli; C.O. Henault, C.O. Kennedy, C.O. mail officer Tom Caulfield and inmate Arlis Evans.

17. On November 20, 2001 at approximately between 8:10-8:15 a.m. Plaintiff announced that the destination of the (16) legal envelopes was to the United States Marshals Office. Plaintiff randomly selected C.O. mail officer Tom Caulfield to inspect each envelope individually prior to being sealed for delivery to the U.S. Post Office to be mailed.

18. On November 20, 2001 between 8:10-8:15 a.m., as mandated Plaintiff was required to have his outgoing legal mail inspected, Defendants Donovan and Glynn began to vex and threaten Plaintiff with who provided him with legal photocopies, permission for legal photocopies better be validated or else and what was the nature and contents of his legal documents clearly marked to the United States Marshals Service.

19. On November 20, 2001 at approximately 8:15 a.m. Defendant Donovan told Plaintiff to report to Defendant Glynn's officer, room A211 at 10:00 a.m. with proof of purchase of one of the (16) manila envelopes addressed to the U.S. Marshals Office.

20. On November 20, 2001 at approximately 10:20 a.m. Defendants Glynn and Morelli entered the Modular Two housing unit. Defendant Glynn called and asked Plaintiff why he had not reported to his office. Plaintiff said he forgot. Plaintiff was then handcuffed and taken to administrative segregation from 10:20 a.m. to

5:15 p.m. per order Defendant Donovan.(See: Exhibit 10, pg. 2, ¶¶3,4).

21. On November 20, 2001 at or about 2:00 p.m. Defendants Donovan and Glynn entered the holding cell where Plaintiff was detained. Defendant Donovan began verbally threaten Plaintiff in the following: "you can't beat the system, there are things we all have to do, even I have to do things I don't like, but in the end the system always win." "Don't you like it here?" "You wouldn't want to be in 10 block with urine and feces all over the place?" "Now, I know when someone is calling me a liar." "Now, where did you get that envelope?" "Do you have proof of purchase?" Defendant Donovan ended his threats by saying, "I'll see you in court."

22. On November 20, 2001 at or about 2:00 p.m. Plaintiff responded to Defendant Donovan verbal threats while detained: "I like it here, and No, I wouldn't want to live in 10 block conditions." "I haven't called anyone a liar, I can provide proof of purchase for the envelope you are concerned about from Crow's Office Supplies." Plaintiff did not reply to Defendant Donovans' threat, "I'll see you in court."

23. On November 20, 2001 at approximately 5:15 p.m. Plaintiff was released from administrative segregation. Plaintiff returned to his cell to find the following of his legal documents missing: (7) manila envelopes, one clearly marked 'exhibit' (1) Civil complaint #11804 (20) pages with exhibits (133) pages; and a Judges order directing service of process by the U.S. Marshals Service.

24. One day later, on November 21, 2001 at approximately 1:05 p.m. Defendant Morelli gave a direct order for Plaintiff to report to his office. Plaintiff was handed a wood box containing the legal documents missing from Plaintiff's cell. (Exhibit 6).

25. On November 21, 2001 at or about 3:15 p.m. Plaintiff received the Certified Mail Receipt for #[7000 1530 0000 5686 6379] indicating that his outgoing legal mail of November 20, 2001, 8:10 a.m. to the United States Marshals Service showed a post-mark of 'Nov. 21, 2001', one day later. (Exhibit 7).

26. On November 23, 2001 at approximately 10:46 a.m. Plaintiff was served with disciplinary report #01-0136, notice of hearing, request for representation and/ or witnesses and request for evidence form by Defendant Glynn. (Exhibit 8).

27. On November 23, 2001 after receiving d-report #01-0136 Plaintiff submitted a Request for Evidence to D.O. Defendant Glynn requesting, Property records verifying that Plaintiff was in legal possession of a lamp and had received light bulbs through property; Confirmation from Steve Fairley, Director of Security that he approved Boston University Students retention of Hi-Liters; and School records showing that Plaintiff was a Boston University Student; and that the hearing be recorded. (Exhibit 9).

28. On November 23, 2001 at approximately 12:29 p.m. Plaintiff was served with d-report #01-0135 written by Defendant Glynn, notice of hearing, request for representation and/or witnesses and request for evidence form by Sergeant Daniel Sullivan. (Exhibit 10).

29. On November 24, 2001 after receiving d-report #01-0135 Plaintiff submitted a Request for Witnesses form to D.O. Defendant Glynn requesting, the presence of the reporting officer (Defendant Glynn); Captain Defendant Donovan and provided a brief statement of his expected testimony and that the hearing be recorded. (Exhibit 11).

30. On November 27, 2001 at approximately 1:00 p.m. D.O. Defendant Glynn served Plaintiff with the following Evidence Produced to Inmate:1) Orientation Manual "Attachment D"; 2) Memo "Inmate Contraband item"; 3) Educational Summary Sheet; and 4) Personal Appliance Sheet. (Exhibits 12 thru 16).

31. On December 6, 2001 at approximately 8:45 a.m. a formal hearing for d-report, #01-0136 was held first. At which time H.O. Defendant Palmer found Plaintiff "Guilty" and recommended a sanction of "1 month lost of canteen." (Exhibit 17).

32. On December 6, 2001 at approximately between 9-10:00 a.m. a formal hearing for d-report #01-0135 was held second. At which time H.O. Defendant Palmer found Plaintiff "Guilty" and recommended a sanction of "5 days room detention." (Exhibit 18).

33. On December 21, 2001 Plaintiff caused to be mailed Certified Mail Return Receipt Requested, #[7000 1530 0000 5686 6386] a consolidated appeal to d-reports, ## 01-0135 & 01-0136 to Supt. Defendant Matesanz seeking dismissal based on the following grounds: 1) Threats, harassment, seizure of legal documents and retaliation relative to outgoing legal mail by Defendants Donovan, Glynn and

Johnson; 2) D-Report #01-0135 was written by D.O. Defendant Glynn in retaliation and abuse of authority by Defendants Donovan and Glynn; 3) Violation of 103 CMR 430.07 and 430.11(2), Defendant Glynn wrote d-report #01-0135 and should have recused himself from all aspects of d-report #01-0135. (Exhibits 19 & 20).

34. On February 11, 2002 Plaintiff was served with appeal results of consolidated appeal ## 01-0135 & 01-0136 by Defendant Glynn from Defendant Matesanz stating in part, "Your appeal is denied." (Exhibit 21).

35. On February 14, 2002 at approximately 1:00 p.m. Defendant Glynn served Plaintiff with effective start dates for (5) days room detention and (4) weeks loss of canteen privileges. (Exhibits 22 & 23).

## CLAIMS

### CAUSE OF ACTION

36. The actions of Defendants Donovan, Glynn, Morelli, Johnson, Palmer and Matesanz in paragraphs 10 through 35 violated the United States Constitution and Federal Law.

37. The actions of Defendant Donovan conspired in concert in harassing Plaintiff while mailing legal mail to the United States Marshals Service; in ordering Plaintiff's detention for (7) hours and threatening Plaintiff with return to higher security (10) block; in ordering Plaintiff's legal documents (C.A. # 11804-RCL) be seized from his cell while being detained to threaten, retaliate and punish Plaintiff for filing a complaint against him in violation of the Plaintiff's rights to petition the government for the redress of grievances clause of the First Amendment of the United States Constitution. In direct violation of the grievance clause of the First Amendment to the U.S.Constitution.

38. The actions of Defendant Glynn conspired in concert in harassing Plaintiff while mailing legal mail to the United States Marshals Service; in ordering Plaintiff's legal documents (C.A. # 11804-RCL) be seized from his cell while being detained; in filing false d-report #01-0135 against Plaintiff for filing a complaint against him to threaten, retaliate and punish Plaintiff in violation of Plaintiff's rights to petition the government for the redress of grievance clause of the First Amendment of the United States Constitution. In direct violation of the grievance clause of the First Amendment to the U.S. Constitution.

6

39. The actions of Defendant Morelli conspired in concert in returning seized legal documents (C.A. # 11804-RCL) to threaten, retaliate and punish the Plaintiff for filing a complaint against him in violation of the Plaintiff's right to petition the government for the redress of grievances clause of the First Amendment of the United States Constitution. In direct violation of the grievance clause of the First Amendment of the U.S. Constitution.

40. The actions of Defendant Johnson conspired in concert in seizing legal documents (C.A. # 11804-RCL) from Plaintiff's cell while being detained per order Defendant Donovan; in filing false d-report #01-0136 against Plaintiff to threaten, retaliate and punish the Plaintiff for filing a complaint against Defendants Donovan, Glynn, Morelli and Matesanz in violation of Plaintiff's right to petition the government for the redress of grievances clause of the First Amendment of the United States Constitution. In direct violation of the grievance clause of the First Amendment of the U.S. Constitution.

41. The actions of Defendant Palmer conspired in concert in finding guilt and sanctioning Plaintiff for false d-reports, ## 01-0135 and 01-0136; in refusing Plaintiff the right to question the reporting officer to d-report #01-0136, to threaten, retaliate and punish the Plaintiff for filing a complaint against Defendants, Donovan, Glynn, Morelli and Matesanz in violation of Plaintiff's right to petition the government for the redress of grievances clause of the First Amendment of the United States Constitution. In direct violation of the grievance clause of the First Amendment of the U.S. Constitution.

42. The actions of Defendant Matesanz conspired in concert in refusing to overturn the findings and sanctions of false d-reports, ## 01-0135 and 01-0136; in refusing to correct or modify the overwhelmingly clear evidence of the seizure of legal documents (C.A. # 11804-RCL) from Plaintiff's cell while being detained per order Defendant Donovan constituted deliberate indifference to threaten, retaliate and punish the Plaintiff for filing a complaint against him, Defendants Donovan, Glynn and Morelli in violation of Plaintiff's right to petition the government for the redress of the grievances clause of the First Amendment of the United States Constitution. In direct violation of the grievance clause of the First Amendment to the U.S. Constitution.

RELIEF REQUESTED

**WHEREFORE,** Plaintiff request this Honorable Court grant the following relief:

A.  Issue a **declaratory** judgment stating that:

1.  Defendant Donovan actions conspired in concert in harassing Plaintiff while mailing legal mail to the U.S. Marshals Service; in ordering Plaintiff's detention for (7) hours and threatening Plaintiff with a return to higher security (10) block: in ordering Plaintiff's legal documents (C.A. #11804-RCL) be seized from his cell while being detained violated Plaintiff's rights as secured under the First Amendment to the U.S. Constitution and constituted a civil rights violation and retaliation under Federal Law.

2.  Defendant Glynn actions conspired in concert in harassing Plaintiff while mailing legal mail to the U.S. Marshals Service; in ordering Plaintiff's legal documents (C.A. #11804-RCL) be seized from his cell while being detained; in filing false d-report #01-0135 against Plaintiff violated Plaintiff's rights as secured under the First Amendment to the U.S. Constitution and constituted a civil rights violation and retaliation under Federal Law.

3.  Defendant Morelli actions conspired in concert in returning seized legal documents (C.A. #11804-RCL) violated Plaintiff's rights as secured under the First Amendment to the U.S. Constitution and constituted a civil rights violation and retaliation under Federal Law.

4.  Defendant Johnson actions conspired in concert in seizing legal documents (C.A. #11804-RCL) from Plaintiff's cell while being detained per order Defendant Donovan; in filing false d-report #01-0136 against Plaintiff violated Plaintiff's rights as secured under the First Amendment to the U.S. Constitution and constituted a civil rights violation and retaliation under Federal Law.

5.  Defendant Palmer actions conspired in concert in finding guilt and sanctioning Plaintiff for false d-reports ## 01-0135 and 01-0136; in refusing Plaintiff the right to question the reporting officer to d-report #01-0136 violated Plaintiff's rights as secured under the First Amendment to the U.S. Constitution and constituted a civil rights violation and retaliation under Federal Law.

8

6. Defendant Matesanz actions conspired in concert in refusing to overturn the findings and sanctions of false d-reports ## 01-0135 and 01-0136; in refusing to correct or modify the overwhelmingly clear evidence of the seizure of legal documents (C.A. #11804-RCL) from Plaintiff's cell while being detained per order Defendant Donovan violated Plaintiff's rights as secured under the First Amendment to the U.S. Constitution and constituted a civil rights violation and retaliation under Federal Law.

B. Issue an **injunction** ordering the Defendants or their agents to:

1. Expunge the disciplinary convictions described in this complaint from Plaintiff's institutional and central office records.

C. Award **compensatory** damages in the following amounts:

1. **$5,000** against Defendant Donovan for the punishment and emotional injury resulting from his actions of conspiracy in harassing Plaintiff while mailing legal mail to the U.S. Marshals Service; in ordering Plaintiff's detention for (7) hours and threatening Plaintiff with a return to higher security (1) block; in ordering Plaintiff's legal documents (C.A. #11804-RCL) be seized from his cell while being detained.;

2. **$5,000** against Defendant Glynn for the punishment and emotional injury resulting from his actions of conspiracy in harassing Plaintiff while mailing legal mail to the U.S. Marshals Service; in ordering Plaintiff's legal documents (C.A.# 11804-RCL) be seized from his cell while being detained; in filing false d-report #01-0135 against Plaintiff.;

3. **$5,000** against Defendant Morelli for the punishment and emotional injury resulting from his actions of conspiracy in returning seized legal documents (C.A. #11804-RCL) from Plaintiff's cell while being detained per order Defendant Donovan.;

4. **$5,000** against Defendant Johnson for the punishment and emotional injury resulting from his actions of conspiracy in seizing legal documents (C.A. # 11804-RCL) from Plaintiff's cell while being detained per order Defendant Donovan; in filing false d-report #01-0136  against Plaintiff.;

9

5. **$2,500** against Defendant Palmer for the punishment and emotional injury resulting from his actions of conspiracy in finding guilt and sanctioning Plaintiff for false d-reports ## 01-0135 and 01-0136; in refusing Plaintiff the right to question the reporting officer to d-report #01-0136.;

6. **$5,000** against Defendant Matesanz for the punishment and emotional injury resulting from his actions of conspiracy in refusing to overturn the findings and sanctions of false d-reports ## 01-0135 and 01-0136; in refusing to correct or modify the overwhelmingly clear evidence of the seizure of legal documents (C.A. #11804-RCL) from Plaintiff's cell while being detained per order Defendant Donovan.

D.   Grant such relief as it may appear the Plaintiff is entitled.


**Dated:** November 19, 2004 _____

_Larry D. Ingram, Pro Se_
Larry D. Ingram, Pro Se
Bay State Correctional Center **(BSCC)**
P.O. Box 73
Norfolk, Massachusetts. 02056-0073


### JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


### VERIFICATION

I, Larry D. Ingram hereby declare pursuant to 28 U.S.C. §1746 that all the information contained herein is true and factual to the best of my personal knowledge. Signed and sworn to the pains and penalties of perjury on this  19th  day of November, 2004.

_Larry D. Ingram_
Larry D. Ingram


  November 19, 2004 ____
Date

10

U.S. District Court
U.S. District Court - Massachusetts (Boston)

CIVIL DOCKET FOR CASE #: 01-CV-11804

Ingram v. Canavan, et al                                    Filed: 10/18/01
Assigned to: Judge Reginald C. Lindsay      Jury demand: Plaintiff
Demand: $770,000                                    Nature of Suit: 550
Lead Docket: None                                    Jurisdiction: Federal Question
Dkt# in other court: None

Cause: 42:1983 Prisoner Civil Rights


LARRY D. INGRAM                    Larry D. Ingram
        Plaintiff                  [COR LD NTC] [PRO SE]
                                   Bay State Correctional Center
                                   (BSCC)
                                   P.O. Box 73
                                   Norfolk, MA 02050-0073



    v.


JAMES T. CANAVAN, Individual
and Official Capacity▨▨▨▨▨
        Defendant


JUDY F. SHARPE, Individual and
Official Capacity
        Defendant


HASSAN OSMAN, Individual and
Official Capacity
        Defendant


CHRIS MORELLI, Individual and
Official Capacity
        Defendant


PAUL F. GLYNN, Individual and
Official Capacity
        Defendant

┌─────────────────────┐
│      **EXHIBIT**    │
│                     │
│     __1__           │
└─────────────────────┘

EUGENE BENEVIDES, Individual
and Official Capacity
        Defendant


Docket as of November 2, 2001 2:26 pm                    Page 1

Proceedings include all events.
1:01cv11804 Ingram v. Canavan, et al


PAUL LABOULIERE, Individual
and Official Capacity
        Defendant


JAMES GRACE, Individual and
Official Capacity
        Defendant


PETER GAW, Individual and
Official Capacity
        Defendant


ROBERT WHITE, Individual and
Official Capacity
        Defendant


CHRIS DONOVAN, Individual and
Official Capacity
        Defendant


FRANK MURRAY, Individual and
Official Capacity
        Defendant


JOSEPH CASEY, Individual and
Official Capacity
        Defendant


JAMES MATESANZ, Individual and
Official Capacity
        Defendant


DAVID HENAULT, Individual and
Official Capacity
        Defendant

```
Proceedings include all events.
1:01cv11804 Ingram v. Canavan, et al

10/18/01 1      Complaint filed.  Case assigned to Judge: Lindsay.  Receipt
                #: 34563  Amount:$ 150.00.  Fee Status: paid  (Exhibits were
                not scanned) (sat) [Entry date 10/24/01]
                [Edit date 10/24/01]

10/18/01 2      Motion by Larry D. Ingram for service by U.S. Marshalls
                without fees, filed. (sat) [Entry date 10/24/01]
```

```
Docket as of November 2, 2001 2:26 pm                    Page 3
```

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LARRY D. INGRAM
    Plaintiff

    v.                                          C. A. No. 01-11804-RCL

JAMES T. CANAVAN, et al.
    Defendants.

## ORDER FOR SERVICE BY U.S. MARSHAL

Now before the court is plaintiff's Motion for Service by U.S. Marshal (Docket No. 2).

Rule 4(c)(2) of the Federal Rules of Civil Procedure provides that:

> Service may be effected by any person who is not a party and who is at least 18 years of age. At the request of the plaintiff, however, the court may direct that service be effected by a United States marshal, or other person or officer specially appointed by the court for that purpose. Such an appointment must be made when the plaintiff is authorized to proceed in forma pauperis pursuant to 28 U.S.C. § 1915.... On June 15, 1999, the court entered an endorsed order granting plaintiff's motion.

Having considered plaintiff's motion, it is hereby

ORDERED, plaintiff's Motion for Service by U.S. Marshal (Docket No. 2) is

ALLOWED; and it is further

ORDERED, the United States marshal serve a copy of the complaint, summons and this

order upon the defendants as directed by the plaintiff with all costs of service to be advanced by

the United States.

Dated at Boston, Massachusetts, this 13th day of November, 2001.

REGINALD C. LINDSAY
UNITED STATES DISTRICT JUDGE

EXHIBIT
2

UNITED STATES DISTRICT COURT
OFFICE OF THE CLERK
UNITED STATES COURTHOUSE
COURTHOUSE WAY, SUITE 2300
BOSTON, MA 02210

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE $300

Larry D. Ingram
Bay State Correctional Center (BSCC)
P.O. Box 73
Norfolk, MA   02050-0073

Opened By
Mail Cy Cartford

U.S. OFFICIAL MAIL

Rec'd: Nov. 15, 2001
Larry D. Ingram




**OFFICE OF THE CLERK**
**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**UNITED STATES COURTHOUSE**
**1 COURTHOUSE WAY - SUITE 2300**
**BOSTON, MASSACHUSETTS 02210**

TONY ANASTAS
CLERK OF COURT

TELEPHONE: 617-748-9152

DATE: _11-14-01_

IN RE: _Larry Ingram_

CIVIL ACTION NO: _01-11804 CCL_

## NOTICE TO PLAINTIFF

**Upon receipt of the enclosed forms, you are required to complete the necessary forms and furnish the United States Marshal with the following:**

- (✓) one copy of the original complaint for service on each named defendant;

- ( ✓) one original summons for each named defendant;

- (✓) one copy of each original summons for service on each named defendant;

- (✓) one copy of USM-285 (Process Receipt and Return) for service on each named defendant;

- (✓) ~~one copy of the application to proceed without~~ prepayment of fees ~~and the~~ order approving the application for service on each named defendant.

**Upon completion of each package of the above forms, please forward them to the**

**Office of the United States Marshal**
**United States Courthouse**
**Civil Section - Room 1500**
**1 Courthouse Way**
**Boston, Massachusetts 02210**

(Notice - Service by USM.wpd - 12/98)

**EXHIBIT**

**3**



UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
OFFICE OF THE CLERK
BOSTON, MA 02210

BOSTON
NOV 15 01
MASS.

U.S. OFFICIAL MAIL
U.S. POSTAGE
PENALTY FOR PRIVATE USE $300
$3.50

Case: 1:01-cv-11804

Larry D. Ingram
Bay State Correctional Center (BSCC)
P.O. Box 73
Norfolk, MA  02050-0073

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                        ┌─────────────────────┐
                                        │       EXHIBIT       │
                                        │ tabbies             │
                                        │         4           │
                                        │      _____    │
                                        └─────────────────────┘
```

Larry D. Ingram,                    )
         Plaintiff,                 )
                                    )
                                    )
                                    )
              v.                    )      C. A. No. 01-CV-11804-RCL
                                    )
                                    )
                                    )
                                    )
James T. Canavan, et al,            )
         Defendants,                )


## AFFIDAVIT

I, Louis Goforth, an inmate currently confined at the Bay State Correctional Center, ("BSCC"), Norfolk, Massachusetts. I make this affidavit of my own free will and hereby state:

1. On November 20, 2001 at approximately 8:05 a.m. inmate Larry D. Ingram request that I witness the contents of a box containing (16) 10 x 13 manila envelopes;

2. One of the sixteen envelopes was addressed to the United States Marshal, Massachusetts.;

3. The remaining fifteen were marked "Legal Mail" and all contained the same contents; a one page federal judges order; one civil complaint; and forty-four exhibits;

4. I also visually observed inmate Ingram carry said box containing the sixteen envelopes to the main one housing unit at BSCC for a required inspection before being mailed out.

Wherefore, pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

1

_Louis Goforth_

Louis Goforth, Affiant
Bay State Correctional Center
P.O. Box 73
Norfolk, Massachusetts. 02056.

Dated: 4-1-02

2

Mr. Larry Donnell Ingram
~~W57874~~
Baystate Correctional Center  P.O. Box 73
Norfolk, Ma. 02056

Office of the United States Marshal
United States Courthouse
Civil Section - Room 1500
1 Courthouse Way
Boston, Massachusetts. 02210
(617) 748-2500; Fax:(617) 748-2599
Attn: Nancy J. McGillivray
      U.S. Marshal                                      Return
                                                        Receipt
                                                        Requested
         U.S. First Class Mail [ 7000 1530 0000 5686 6379 ] #########

   Re:  SERVICE BY U.S. MARSHAL


      Marshal McGillivray;
                 Please find enclosed the following for service
   on each named defendant as ordered by the court:


      [✓]    15 copies of the original complaint with exhibits and
             Judges order directing service by U.S. Marshal for each
             named defendant;

      [✓]    15 original summons for service on each named defendant;
             and a copy of each summons for each named defendant;


      [✓]    15 original USM-285 (Process Receipt and Return) for
             service on each named defendant.



         Thank you for your attention to this matter.


                                   Cordially,

                                   *Larry D. Ingram*

                                   Larry D. Ingram, Plaintiff

   Dated:November 20, 2001


   cc: Attorney Rust
       file

EXHIBIT
5

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LARRY D. INGRAM

CIVIL ACTION NO. 01-CV-11804-RCL

Plaintiff,

vs.

JAMES T. CANAVAN, et al.

## AFFIDAVIT

I, Christopher Morelli depose and state that:

1.    I am a Sergeant at Bay State Correctional Center.

2.    

3.

4.

5.    The next day, I spoke with Mr. Ingram and explained that he had more

documents in his cell than the regulations allow.  I gave him the

opportunity to sort through the papers to remove anything he did not want

**EXHIBIT**

6

included in the one cubic foot of materials he was allowed to retain.

Christopher Morelli

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

United States Marshal
United States Courthouse
Civil Section - Room 1520
1 Courthouse Way
Boston, Ma. 02210
Attn: Nancy J. McGillivray
U.S. Marshal

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)   B. Date of Delivery   11/21

C. Signature
X Nancy Delacruz    ☐ Agent   ☐ Addressee

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☑ No

3. Service Type
   ☑ Certified Mail   ☐ Express Mail
   ☐ Registered   ☑ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number (Copy from service label)   7000 1530 0000 5686 6379

PS Form 3811, July 1999    Domestic Return Receipt    102595-00-M-0952

---

08056+0073

UNITED STATES POSTAL SERVICE
FEED THE CHILDREN

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

Larry D. Ingram
Bay State C C
P.O. Box 73
Norfolk, MA 02056

---

EXHIBIT
7
tabbies®

---

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

7000 1530 0000 5686 6379

| | |
|---|---|
| Postage | $ .6505 |
| Certified Fee | 2.10 |
| Return Receipt Fee (Endorsement Required) | 1.50 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 19.65 |

Sent to office of the United States Marshal
attn: Nancy J. McGillivray, U.S. Marshal
Street, Apt. No.; or PO Box No.
1 Courthouse Way - Room 1500
City, State, ZIP+4
Boston, Massachusetts 02210

PS Form 3800, May 2000    See Reverse for Instructions

## DEPARTMENT OF CORRECTION
## NOTICE OF DISCIPLINARY HEARING

TO:  **LARRY INGRAM**                                      I.D. #:  **W-38220**

Re: Disciplinary Report #:        **01-0136**              Date:  **11/20/2001**

You have been charged with a disciplinary offense(s) which has been referred to the Hearing
Officer for a hearing.  A description of the offense(s) is contained in the attached Disciplinary
Report.  Your disciplinary hearing has been scheduled for:

**11/29/2001**

(Date of Hearing)

If you wish to be represented, request the presence of the reporting staff person, request
other witnesses, and/or request a taped hearing, please fill out the attached Request for
Representation/Witness Form.  If you wish to request evidence, please fill out the attached
Request for Evidence Form.

Notice Served By: _Paul Kelly_       Date: _11/23/01_  Time: _10:46_

Inmate's Signature: _Larry D. Ingram_  Date: _11/23/01_ Time: _10:46_

***When an inmate has been given copies of the above enumerated documents, but refuses to sign this
acknowledgement, the staff person who delivered the documents shall complete the following:

I personally delivered copies of this Notice, Disciplinary Report, Request for Representation/
Witness Form, and Request for Evidence Form to:        **LARRY INGRAM**

(Inmate's Name)

and he refused to sign.

Staff Person's Signature:_____Date:_____

Print Name:_____Time:_____

**The actual scheduling of the hearing may be delayed if circumstances require; however, you will be
notified of the actual date of the re-scheduled hearing at least twenty-four (24) hours in advance of that
date.

Bay State Correctional Center

EXHIBIT
8

1

## BAY STATE CORRECTIONAL CENTER
## MASSACHUSETTS DEPARTMENT OF CORRECTION
## DISCIPLINARY REPORT

Inmate: _Ingram Larry_    Commit #: _W38220_   Housing Unit: _MOD-2_

Date: _11/20/01_     D-Report #: _BS-01-0136_

Offense: _____   Code #: _2, 8, 24, 33_

Reviewed by Disciplinary Officer on _____ _11/23/01_

Disciplinary Report Designated as Minor ____ Major _X_ on _11/23/01_

Referred to District Attorney:     Yes _____    No _X_

Referred to DDU Special Hearing Officer:   Yes _____    No _X_

**DESCRIPTION OF OFFENSE:**

ON 11/20/01 At Approximently 10:50 AM
I CO TODD JOHNSON Conducted A Room
Search of Rm #221.
The Following Items were found in
Inmates Ingram, Larry #W38220 property
(1) SYLVANIA 40W Light Bulb
(1) Avery yellow Hi-Liter
These Item Are considered Contraband.
Sgt morrelli Notified.

Has the Inmate been placed on Awaiting Action Status? Yes: _____ No: _____

Reporting Staff Persons's Signature: _CO TODD Johnson_

Date: _11/20/01_    Shift: _7x3_     Days Off: _F/S_

Shift Commander's Signature: _____ Date: _11/20/01_

Disciplinary Officer's Signature: _Paul Fay_ Date: _11/23/01_

Finding and Sanction, If Any: _____

_____
**(Transcribed from disciplinary hearing if major matter)**

Appeal Results: _____

_____

Reviewing Authority: _____ Date: _____

**August, 2000**         **ATTACHMENT A - BSCC 430**

# DEPARTMENT OF CORRECTION
## REQUEST FOR EVIDENCE FORM

TO: **LARRY INGRAM**                                    #:   **W-38220**

RE: **01-0136**                                         Date:  **11/20/2001**

I understand that I will be served at a reasonable time prior to my disciplinary hearing with any

documents which may be used against me.  In addition to any such documents, I wish to request access

to the following document(s) prior to my hearing which I believe will show me not guilty of the alleged

infraction(s) contained in the D-Report.  I understand that, in the event the Disciplinary Officer at the

institution where the alleged disciplinary infraction(s) occurred denies my request for these documents(s),

it will be up to the Hearing Officer to decide if I am entitled to the document(s) for the reason(s) I have

stated.  The Hearing Officer will determine if the requested document(s) are relevant and not merely

repetitive and whether they are central to the preparation of my defense.  The Hearing Officer may deny

my request for documents if he/she determines that producing them would be hazardous in the

particular situation.  If the Hearing Officer decides that the document(s) need not be provided, his/her

reason(s) will be included in the final report.


I am requesting the following specific document(s): Property records to verify that I
am in possession of a lamp and have received light bulbs through property
on numerous occasions; Verbal confirmation or other documentation from
Steve Fairley, Director of Security that he approved for retention last
semester Boston University students Hi-Liters, in which I was a student.
Any school record to verify that I was a student last B.U. school semester.


Each document is central to my defense for the following reasons:  (see above)

_____

_____

_____

_____

_____


Please be advised that failure to return this form to the Disciplinary Officer within 24 hours of receiving

it will be considered as a waiver of request for any evidence.

(*) I wish to have this hearing recorded!!!


Bay State Correctional Center

**EXHIBIT**

**9**

## DEPARTMENT OF CORRECTION
## NOTICE OF DISCIPLINARY HEARING

TO:  **LARRY INGRAM**                          I.D. #:  **W-38220**

Re: Disciplinary Report #:        **01-0135**            Date:  **11/20/2001**


You have been charged with a disciplinary offense(s) which has been referred to the Hearing Officer for a hearing.  A description of the offense(s) is contained in the attached Disciplinary Report.  Your disciplinary hearing has been scheduled for:

### 11/29/2001

#### (Date of Hearing)


If you wish to be represented, request the presence of the reporting staff person, request other witnesses, and/or request a taped hearing, please fill out the attached Request for Representation/Witness Form.  If you wish to request evidence, please fill out the attached Request for Evidence Form.

Notice Served By: _____  Date: _11·24·01_ Time: _12:29pm_

Inmate's Signature: _Larry R Ingram_  Date: _11-24-01_ Time: _12:29_

***When an inmate has been given copies of the above enumerated documents, but refuses to sign this acknowledgement, the staff person who delivered the documents shall complete the following:

I personally delivered copies of this Notice, Disciplinary Report, Request for Representation/ Witness Form, and Request for Evidence Form to:        **LARRY INGRAM**

                                                    (Inmate's Name)

and he refused to sign.

Staff Person's Signature:_____Date:_____

Print Name:_____Time:_____

**The actual scheduling of the hearing may be delayed if circumstances require; however, you will be notified of the actual date of the re-scheduled hearing at least twenty-four (24) hours in advance of that date.

Bay State Correctional Center

**EXHIBIT**
**10**
exhibit

-1-

11-20-01

# BAY STATE CORRECTIONAL CENTER
# MASSACHUSETTS DEPARTMENT OF CORRECTION
# DISCIPLINARY REPORT

Inmate: **Larry Ingram** Commit #: **W38220** Housing Unit: **Mod 221A**

Date: **November 20, 2001** D-Report #: **BS-01-0135**

Offense: _____ Code #: **#1,2,8,33**

Reviewed by Disciplinary Officer on **11/23/01**

Disciplinary Report Designated as Minor ____ Major **X** on **11/23/01**

**Referred to District Attorney:**          Yes _____    No _____

**Referred to DDU Special Hearing Officer:**  Yes _____    No _____

**DESCRIPTION OF OFFENSE:**
On November 20, 2001 at approximately 8:10 am, I, Sgt. Paul F. Glynn, while doing the mail, spoke with inmate Larry Ingram W38220 and instructed him to report to room A211 at 10:00 am.

At approximately 8:10 am I instructed inmate Ingram twice to report to room A211 at 10:00 am. I informed Ingram that he should not be late or early, but should arrive at 10:00 am. At this time he stated "ok". As inmate Ingram walked away he stated "Sgt. Glynn, 10:00" and I said "Yes, 10:00".

Inmate Ingram did not show up at A211 at 10:00 am, as instructed. At approximately 10:20 am I called Mod 2 and spoke with Officer Johnson who informed me that inmate Ingram had not signed out of his unit. At that time I informed Captain Donovan that the inmate had not shown up. I was instructed by Captain Donovan to escort the inmate to the Inner Control holding cell.

Myself and Sgt. Morelli entered Mod 2. Inmate Ingram was sitting in the day room reading a book. We called inmate Ingram into the Mod 2 Sergeant's office. I asked inmate Ingram why he did not report to room A211 at 10:00 am, as instructed. He replied in a surly tone "Oh, I forgot". Inmate was placed in restraints by myself and Sgt. Morelli and escorted to the Inner Control holding cell.

Has the Inmate been placed on Awaiting Action Status? Yes: ____ No: ____

Reporting Staff Persons's Signature: _____

Date: **11/20/01** Shift: **7x3** Days Off: **S,S**

Shift Commander's Signature: _____ Date: **11/20/01**

Disciplinary Officer's Signature: _____ Date: **11/23/01**

Finding and Sanction, If Any: _____

**(Transcribed from disciplinary hearing if major matter)**

Appeal Results: _____

Reviewing Authority: _____ Date: _____

-2-

August, 2000                          ATTACHMENT A - BSCC 430

# DEPARTMENT OF CORRECTION
## REQUEST FOR REPRESENTATION AND/OR WITNESSES

Inmate: **LARRY INGRAM**                    I.D.#: **W-38220**

Report #: **01-0135**                    Date of Hearing: **11/20/2001**

You must complete this form and return it to the Disciplinary Officer within twenty-four (24) hours of receiving it. Failure to do so may be considered as a waiver for representation and/or witnesses pursuant to 103 CMR 430.11 (5).

1. If you wish to be represented by an attorney or a law student at the disciplinary hearing regarding the attached disciplinary report, fill in the representative's name, address and phone number.

    YOU ARE RESPONSIBLE FOR CONTACTING THIS PERSON AND ARRANGING FOR REPRESENTATION (See 103 CMR 430.12)

    Name:_____

    Address:_____

    Telephone:_____

2. If you do not speak English, or do not understand the charges pending against you, you may request the assistance of a staff person. Please check here_____.

3. Do you wish to have the Reporting Staff Person present at the Disciplinary Hearing?

    Yes__XXX_____    No_____

4. Do you wish to call other witnesses at the Disciplinary Hearing?

    Yes__XXX_____    No_____

    If yes, please list the names of the witnesses You wish to call and provide a brief statement of the expected testimony as required by 103 CMR 430.14 (4) (e)  (Use additional paper if necessary).

    Witness:___Capt. Christopher Donovan_____

    Testimony: will testify why he instructed me to report to A211.

    Witness:_____

    Testimony:_____

    Received by:_____    Date:_____

(*) I request that the hearing be tape recorded!!!!

Bay State Correctional Center

EXHIBIT

11

# DEPARTMENT OF CORRECTION
## EVIDENCE PRODUCED TO INMATE FORM

**TO:**     **INGRAM  LARRY, W38220**

Inmate Name

**FROM:**   **PAUL F. GLYNN**

Disciplinary Officer

**RE:**   Disciplinary Report #:          **01-0136**          *Hearing to be tape*
*$2.50 per tape ② tapes*
*$5.00*

**A.**      EVIDENCE PRODUCED TO INMATE (ATTACHED)

1. *Orientation manual " Attachment D "*

2. *Memo "Inmate Contraband item"*

3. *Educational Summary Sheet.*

4. (Use additional pages if necessary) *Personal Appliance Sheet.*

**B.**      DENIAL OF REQUESTED EVIDENCE AND REASON FOR DENIAL

1. *Request for evidence denied, Inmate did*
REASON FOR DENIAL:

2. *not state how each document is central*
REASON FOR DENIAL:

3. *to his defense. for the following reasons.* (PF6)

REASON FOR DENIAL:

(Use additional pages if necessary)

Served By: *Paul F. Gly*          Date: *11/27/01* Time: *1:00*

Inmate's Signature: X *Larry Ingram*          Date: *11/27/01* Time: *1:00*

***When an inmate has been given copies of the above enumerated documents, but refuses to sign this acknowledgement, the staff person who delivered the documents shall complete the following:

I personally delivered copies of this  EVIDENCE PRODUCED TO INMATE FORM  with the identified documents to          **LARRY INGRAM**

(Inmate's Name)

Staff Person's Signature:_____Date:_____

Print Name:_____          _____Time:_____

EXHIBIT
**12**

**Bay State Correctional Center**

...ense of any kind including burning, electrically controlled, or ...nging type deodorizers.

Jewelry in excess of 103 CMR 403 - Inmate Property Policy.

Any type of currency, checks, or money orders.

16.  Matches.

17.  Boxes that have been opened prior to processing shipped from the factory.

18.  Personal towels, wash cloths, and bedding.

19.  Possession of property not accounted for on the Property Inventory Form.

20.  Plants/animals.

21.  Glass mirrors.

22.  Metal silverware or kitchen utensils.

23.  Unauthorized medical supplies to include, band-aids, gauze, medical equipment/tools.

24.  Metal hot pots.

25.  Personal pots and pans or unit pots and pans in rooms.

26.  Metal hair accessories (ie. bobby pins and hair clips).

27.  Refillable lighters and lighter fluid.

28.  Radios larger than 12x10x5.

29.  State or employee personal office equipment/supplies to include: white out, paper clips, paper cups, tape, staples, staple remover, stapler, thumb tacks, "post- its", high lighters, metal three ring binders, spiral bound notebooks, telephone books, or scissors.

30.  Tools.

31.  Tin foil.

32.  Toxic, caustic, flammable substances to include possession of unit cleaning supplies without authorization, gasoline, lacquer, paint, paint thinner, motor oil, kerosine, anti-freeze, acid.

33.  Typewriters with memory banks.

laloney
oner

)ennehy
issioner

:sanz
dent

October, 2000

**EXHIBIT**

**13**

**ATTACHMENT D**
**BSCC INMATE ORIENTATION MANUAL**
**PAGE 2 OF 3**

*The Commonwealth of Massachusetts*

*Executive Office of Public Safety*

*Department of Correction*

*Bay State Correctional Center*

*28 Clark Street, P.O. Box 73*

*Norfolk, Massachusetts 02056*

**Argeo Paul Cellucci**
Governor

**Jane Swift**
Lieutenant Governor

**Jane Perlov**
Secretary

**Michael T. Maloney**
Commissioner

**Kathleen M. Dennehy**
Deputy Commissioner

**James Matesanz**
Superintendent

TO:        All Staff

FROM:    Steven Fairley, Director of Security

DATE:    November 7, 2000

RE:        **Inmate Contraband Item**

Be advised that employee state issued highlighters are considered to be inmate contraband.

However, the Education Department has been allowed to issue non-flourescent <u>pink</u> highlighters to the educational inmate population that are not considered contraband.

SF/jeb

cc:    James Matesanz, Superintendent
       Judy Sharpe, Deputy Superintendent
       Property
       Roll Call
       File

**EXHIBIT**
**14**

# Bay State C.C. — EDUCATIONAL SUMMARY SHEET

EXHIBIT
15

| NAME OF STUDENT | INMATE # | UNIT | DOB | SOCIAL SECURITY # |
|---|---|---|---|---|
| INGRAM, Larry | W-38220 | | 2/24/60 | ▓▓▓▓▓ |

TITLE OF CLASS: Introduction to Management    (BU)    ENTRY DATE: 9/03/98    TERMINATION DATE:
ABSENCES:
COMMENTS:

TITLE OF CLASS: BU 155 SOY    ENTRY DATE: 9/11/2000  TERMINATION DATE: 12/31/2000
ABSENCES:                                          REASON TERMINATED: EOC
COMMENTS:

TITLE OF CLASS: BU 50100    ENTRY DATE: 1/17/01   TERMINATION DATE: 5/9/01
ABSENCES:                                         REASON TERMINATED: EOC
COMMENTS:

TITLE OF CLASS: BU 46543    ENTRY DATE: 9/18/01,  TERMINATION DATE:
ABSENCES:                                         REASON TERMINATED:
COMMENTS:

TITLE OF CLASS:    ENTRY DATE:    TERMINATION DATE:
ABSENCES:          REASON TERMINATED:
COMMENTS:

TITLE OF CLASS:    ENTRY DATE:    TERMINATION DATE:
ABSENCES:          REASON TERMINATED:
COMMENTS:

TITLE OF CLASS:    ENTRY DATE:    TERMINATION DATE:
ABSENCES:          REASON TERMINATED:
COMMENTS:

TITLE OF CLASS:    ENTRY DATE:    TERMINATION DATE:
ABSENCES:          REASON TERMINATED:
COMMENTS:

## PERSONAL APPLIANCE & ACCESSORIES INVENTORY CARD

| SOURCE | DATE REC. | DISCRIPTION OF ITEMS | TOT | SEAL # | | DISPOSITION | DATE |
|---|---|---|---|---|---|---|---|
| OCCC | 05/05/93 | Lakewood fan (white) | 1 | 159229 | 159230 | | |
| OCCC | 05/08/93 | Realistic Nova 40 headphones | 1 | | | | |
| mail | 08/11/93 | Sanyo 1.7 cf refrigerator | 1 | | | Stored in Property | |
| visit | 09/20/93 | Gooseneck clip on lamp | 1 | 159231 | | | |
| mail | 01/26/94 | Regal poly hot pot | 1 | | | | |
| REPAIRED | 06/09/95 | GE Super II radio (rio speaker) | 1 | 157150 | 157151 | | |
| VISIT | 06/09/95 | Magnavox 13" color tv (no speak | 1 | 70511 | 156873 | | |
| mail | 11/08/95 | Smith Corona 345 DLE typewriter | 1 | 159232 | 155174 | | |
| MAIL | 08/12/97 | WESTCLOX ALARM CLOCK | 1 | 156310 | | | |
| CANTEEN | 03/12/97 | AIWA AM/FM WALKMAN | 1 | 159233 | NAME / CON# | | |
| CANTEEN | 03/12/97 | AIWA HEADPHONES | 1 | NAME | CON# | | |

Inmate Signature: _____    Officer:    SGT.O.        Date:    10/23/01

```
EXHIBIT
  16
```

# MASSACHUSETTS DEPARTMENT OF CORRECTION

## DISCIPLINARY HEARING

### BAYSTATE CORRECTIONAL CENTER

INMATE: _Conley Ingram_   COMMIT #: _W 38220_

D-REPORT #: _BS-01-0156_   DATE OF REPORT: _11-20-01_

DATE OF HEARING: _12-6-01_   HEARING OFFICER: _Russ Pormer_

HEARING HELD AT: _BSCC_

1) THE INMATE WAS GIVEN AT LEAST 24 HOURS NOTICE OF THE HEARING (IF NO, ATTACH 24 HR WAIVER).   YES: _✓_ NO: ___

2) THE INMATE IS PRESENT BEFORE THE HEARING OFFICER (IF NOT, ATTACH REFUSAL TO APPEAR FORM).   YES: _✓_ NO: ___

3) THE INMATE HAS BEEN ADVISED OF HIS RIGHT TO REMAIN SILENT, SINCE THE OFFENSE CHARGED HAS, OF MAY BE REFERRED TO THE DISTRICT ATTORNEY. THE INMATE HAS FURTHER BEEN ADVISED THAT HIS SILENCE MAY BE USED TO DRAW AN ADVERSE INFERENCE AGAINST HIM, BUT HIS SILENCE ALONE MAY NOT BE USED TO SUPPORT A GUILTY FINDING.   YES: _✓_ NO: ___

4) THE INMATE REQUESTED REPRESENTATION.   YES: ___ NO: _✓_

   THE INMATE IS REPRESENTED BY AN ATTORNEY/LAW STUDENT.   YES: ___ NO: _✓_

   NAME OF LEGAL REPRESENTATIVE: _____

5) THE INMATE REQUESTED THE PRESENCE OF THE REPORTING STAFF   YES: _✓_ NO: ___

   THE REPORTING STAFF PERSON IS PRESENT.   YES: _✓_ NO: ___
   IF THE INMATES REQUEST IS DENIED, INDICATE THE REASON: _____

6) INMATE CHALLENGES IMPARTIALITY OF THE HEARING OFFICER.   YES: ___ NO: _✓_

   IF YES, STATE REASONS WHY: _____
   _____

EXHIBIT
17

INMATE: *Ingram*        COMMIT#: 38220    D-REPORT: *BS 01. 0136*

7.    WITNESS:          IF NONE REQUESTED, CHECK HERE: _____✓_____

A.    REQUESTED BY INMATE:    (IF ANY WITNESS REQUEST IS DENIED, A
                              WRITTEN EXPLANATION OF THE REASONS
                              MUST BE INCLUDED AS PART OF THE
                              RECORD)

      (1) _____

      (2) _____

      (3) _____

B.    REQUESTED BY HEARING OFFICER:

      (1) _____ *N/A* _____

      (2) _____

      (3) _____

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

8.    PRESENTATION OF EVIDENCE:

      A.    INMATE STATEMENT

      PLEA: *NOT GUILTY* _____

      STATEMENT IN DEFENSE (SUMMARY): *INMATE INGRAM CONTENDS THAT HE WAS ISSUED THE LIGHT BULB THRU PROPERTY. HE DOES HAVE A LAMP ON HIS TOOL SHEET AND THIS IS A REPLACEMENT BULB. ON THE ISSUE OF THE HIGHLITER "YELLOW" INMATE INGRAM STATED THAT THE MEMO ISSUED BY DOS FAIRLEY WAS ADDRESSED TO ALL STAFF AND NOT TO THE INMATES. HE STATED THAT HE WAS ISSUED THIS HIGHLITER PRIOR TO THIS MEMO ANYWAY AND HAD NO IDEA IT WAS CONTRABAND.*

      B.    REPORTING STAFF PERSON'S STATEMENT:
*OFFICER TODD JOHNSON STATED THAT HE DID DO A ROOM SEARCH AND CONTRABANDED ITEMS. THE ONLY ITEMS IN SERIOUS VIOLATION WERE THE BULB AND THE YELLOW HIGHLITER.
WHEN INGRAM ASKED OFFICER JOHNSON IF THIS WAS A RANDOM SEARCH THE HEARING OFFICER INSTRUCTED OFFICER JOHNSON NOT TO ANSWER AND THAT IT DOESN'T MATTER IF IT WAS RANDOM OR ASSIGNED.*

PAGE 2A

INMATE: _INORMU_    COMMIT#: _38220_   D-REPORT: _BS.01-0136_

INMATE TESTIMONY CONTINUED: _____

N/A

REPORTING STAFF PERSON'S TESTIMONY CONTINUED:

N/A

Witness #1: _____ N/A _____

STATEMENT: _____

**Page #3**

INMATE: _INGRAM_                    COMMIT# _38220_    D-REPORT: _01 - 0136_

C:    OTHER WITNESS STATEMENTS: (IF WITNESS HAS BEEN DENIED,
                                INDICATE REASON(S) FOR DENIAL
                                IN THIS SPACE)

WITNESS-# 2 NAME: _____N/A_____

STATEMENT: _____

_____

_____

_____

WITNESS # 3 NAME: _____N/A_____

STATEMENT: _____

_____

_____

_____

_____

WITNESS # 4 NAME: _____N/A_____

STATEMENT: HEARING OFFICER CONCURRED W/ D-OFFICERS DECISION
ON EVIDENCE.
※ EVEN THOUGH MOST EVIDENCE WAS DENIED BY INMATE'S
REQUEST (IT WAS SPECIFIED ON HOW IT WAS ESSENTIAL TO
DEFENSE), THIS EVIDENCE WAS PRESENTED TO THE INMATE BECAUSE
IT WAS USED BY THE D-OFFICE.

**************************************************************

C:    DOCUMENTARY EVIDENCE:

        IN ADDITION TO THE DISCIPLINARY REPORT, THE HEARING OFFICER
ACCEPTED INTO EVIDENCE THE FOLLOWING DOCUMENTS, PHYSICAL
EVIDENCE, PHOTOGRAPHS/VIDEO TAPES:
ORIENTATION MANUAL "ATT D"
DOS FAIRLY MEMO
EDUCATIONAL SHEET
TOOL SHEET
COPY OF INTER OFFICE CORRESPONDANCE ENVELOPE

PAGE 4

INMATE: _Ingram_  COMMIT#: _58220_  D-REPORT: _BS 01 0136_

FINDINGS: _Guilty_

STATEMENT OF EVIDENCE RELIED UPON TO SUPPORT FINDINGS:    (CONTINUE
ON PAGE 4A, IF NECESSARY)

_THE EVIDENCE USED TO SUPPORT THE FINDING WAS BASED ON_
_THE D-REPORT, CO JOHNSON' TESTIMONY, DOS' MEMO, TOOL SHEET._

SANCTIONS AND RECOMMENDATIONS:

_1 MONTH LOSS OF CANTEEN_

REASON FOR SANCTIONS (CONTINUE ON PAGE 4A, IF NECESSARY):

_INMATE INGRAM IS IN VIOLATION OF INSTITUTIONAL RULES, BEING IN_
_POSESSION OF THESE ITEMS. ORIENTATION MANUAL PAGE 2 #29 STATES_
_HIGHLIGHTERS ARE CONSIDERED CONTRABAND. IT DOES NOT SPECIFY COLORS._
_ON NOV 7, 2000 DOS FAIRLY AMENDED THIS RULING BY ALLOWING PINK_
_HIGHLITERS 'ONLY' TO SCHOOL INMATES. THE ORIENTATION MANUAL IS ISSUED/_
_AVAILABLE TO ALL INMATES._
_    THE LIGHT BULB IS CONSIDERED A BREAKABLE SHARP OBJECT WHICH IS_
_ALSO CONSIDERED CONTRABAND AT BSCC.     (CONT.)_

THE INMATE HAS BEEN ADVISED OF HIS RIGHT TO APPEAL THIS DECISION
WITHIN 15 DAYS OF HIS RECEIPT; TO THE SUPERINTENDENT: _Yes_

HEARING OFFICER: _Russ Parma_

THE INMATE HAS BEEN ADVISED OF THE HEARING OFFICER'S DECISION AND
A COPY OF THIS DOCUMENT HAS BEEN DELIVERED TO THE INMATE: _yes_

STAFF SIGNATURE: _Paul O'Reilly_  DATE: _12/7/01_  TIME: _11:00_

**PAGE 4A**

INMATE: *INGRAM*          COMMIT#: *38220*   D-REPORT: *BS 01 0136*

STATEMENT OF EVIDENCE RELIED UPON (CONTINUED):

*N/A*

REASON FOR SANCTIONS (CONTINUED):

*IT IS UNVERIFIED WHERE INGRAM OBTAINED THIS SPARE BULB, BUT IF IT WAS NOT IN USE IT SHOULD NOT HAVE BEEN STORED IN HIS ROOM.*

# MASSACHUSETTS DEPARTMENT OF CORRECTION

## DISCIPLINARY HEARING

## BAYSTATE CORRECTIONAL CENTER

INMATE: _Larry Ingram_          COMMIT #: _W 38220_

D-REPORT #: _BS·01·0138_     DATE OF REPORT: _11· 20· 01_

DATE OF HEARING: _12- 6 01_     HEARING OFFICER: _Russ Khrumor_

HEARING HELD AT: _BSCC_

1)  THE INMATE WAS GIVEN AT LEAST 24 HOURS NOTICE OF THE HEARING
    (IF NO, ATTACH 24 HR WAIVER).          YES: _✓_  NO: _____

2)  THE INMATE IS PRESENT BEFORE THE HEARING OFFICER (IF NOT,
    ATTACH REFUSAL TO APPEAR FORM).          YES: _✓_ NO: _____

3)  THE INMATE HAS BEEN ADVISED OF HIS RIGHT TO REMAIN SILENT,
    SINCE THE OFFENSE CHARGED HAS, OF MAY BE REFERRED TO THE
    DISTRICT ATTORNEY.   THE INMATE HAS FURTHER BEEN ADVISED THAT
    HIS SILENCE MAY BE USED TO DRAW AN ADVERSE INFERENCE AGAINST
    HIM, BUT HIS SILENCE ALONE MAY NOT BE USED TO SUPPORT A
    GUILTY FINDING.                    YES: _✓_ NO: _____

4)  THE INMATE REQUESTED REPRESENTATION.      YES: _____  NO: _✓_

    THE INMATE IS REPRESENTED BY AN ATTORNEY/LAW STUDENT.
                                       YES: _____  NO: _✓_

    NAME OF LEGAL REPRESENTATIVE: _____

5)  THE INMATE REQUESTED THE PRESENCE OF THE REPORTING STAFF
                                       YES: _✓_ NO: _____

    THE REPORTING STAFF PERSON IS PRESENT.   YES: _✓_ NO: _____
    IF THE INMATES REQUEST IS DENIED, INDICATE THE REASON:
    _____

6)  INMATE CHALLENGES IMPARTIALITY OF THE HEARING OFFICER.
                                       YES: _____  NO: _✓_

    IF YES, STATE REASONS WHY: _____
    _____
    _____

**EXHIBIT**

**18**

PAGE 2

INMATE: _INGRAM_   COMMIT#: 38220   D-REPORT: _BS 01 0175_

7.   WITNESS:          IF NONE REQUESTED, CHECK HERE: _____

A.   REQUESTED BY INMATE:   (IF ANY WITNESS REQUEST IS DENIED, A
                            WRITTEN EXPLANATION OF THE REASONS
                            MUST BE INCLUDED AS PART OF THE
                            RECORD)

     (1) ___CAPT DONOVAN_____

     (2) _____

     (3) _____

B.   REQUESTED BY HEARING OFFICER:

     (1) _____

     (2) _____

     (3) _____
************************************************************

8.   PRESENTATION OF EVIDENCE:

     A.   INMATE STATEMENT

     PLEA: __NOT GUILTY_____

     STATEMENT IN DEFENSE (SUMMARY): _INMATE, INGRAM CLAIMS HE_
_WAS TOLD TO REPORT TO A211 AT 10 AM BUT FORGOT. HE STATED_
_THAT HE WAS NOT PAGED TO REPORT TO THAT AREA. INMATE ALSO_
_QUESTIONED ON WHY HE WAS BEING TOLD TO REPORT TO THAT AREA_
_TO BOTH CAPT DONOVAN & SGT GLYNN._____
_____
_____
_____

     B.   REPORTING STAFF PERSON'S STATEMENT:
_SGT GLYNN STATED THAT HE DID INMATE INGRAM TO REPORT TO_
_A211 AT 10 AM AND INMATE INGRAM ACKNOWLEDGED THIS. THIS WAS_
_DONE AT 8:19 AM._____
_____
_____

INMATE: _Ingram_  COMMIT#: _38220_  D-REPORT: _135 01 0135_

INMATE TESTIMONY CONTINUED: _____

_N/A_

REPORTING STAFF PERSON'S TESTIMONY CONTINUED:

_N/N_

Witness #1: _CAPTAIN DONOVAN_

STATEMENT: _CAPTAIN DONOVAN STATED THAT HE DID QUESTION INMATE INGRAM ON WHERE HE OBTAINED SAID ENVELOPES AND DID WANT HIM TO REPORT TO SGT GLYNN FOR A MORE INDEPTH INTERVIEW ON THE SITUATION._

Page #3

INMATE: _INGRAM_    COMMIT# _38220_ D-REPORT: _BS U1 0175_

C:    OTHER WITNESS STATEMENTS:(IF WITNESS HAS BEEN DENIED,
                                 INDICATE REASON(S) FOR DENIAL
                                 IN THIS SPACE)

WITNESS # 2 NAME: _____N/A_____

STATEMENT: _____
_____
_____
_____
_____

WITNESS # 3 NAME: _____N/A_____

STATEMENT: _____
_____
_____
_____
_____

WITNESS # 4 NAME: _____N/A_____

STATEMENT: _____
_____
_____
_____
_____

**************************************************************

C:    DOCUMENTARY EVIDENCE:

    IN ADDITION TO THE DISCIPLINARY REPORT, THE HEARING OFFICER
ACCEPTED INTO EVIDENCE THE FOLLOWING DOCUMENTS, PHYSICAL
EVIDENCE, PHOTOGRAPHS/VIDEO TAPES:
_AFFIDAVIT SUBMITTED BY INMATE INGRAM_
_COPY OF ENVELOPE SUBMITTED BY INMATE INGRAM_
_(BOTH ACCEPTED AT HEARING)_
_____

PAGE 4

INMATE: _INGRAM_ COMMIT#: _W 38220_ D-REPORT: _BS 01 0135_

FINDINGS: _Guilty_

STATEMENT OF EVIDENCE RELIED UPON TO SUPPORT FINDINGS: (CONTINUE
ON PAGE 4A, IF NECESSARY)

_THE EVIDENCE USED TO SUPPORT THE FINDING WAS BASED ON_
_THE D-REPORT, SGT GLYNN'S TESTIMONY, CAPT DONOVAN'S TESTIMONY,_
_INMATE INGRAMS AFFADAVIT._

SANCTIONS AND RECOMMENDATIONS:

_5 DAYS ROOM DETENTION_

REASON FOR SANCTIONS (CONTINUE ON PAGE 4A, IF NECESSARY):

_THE SANCTION IS IN LINE WITH THE OFFENSE. BY INMATE_
_INGRAMS OWN ADMISSION HE WAS INSTRUCTED BY SGT GLYNN TO_
_REPORT TO A211 AT 10 AM. IT IS IRRELEVANT IF THE INMATE WAS_
_PAGED OR NOT HE WAS AWARE THAT HE WAS DUE IN A211 AT_
_10 AM, AND DID NOT SHOW._

THE INMATE HAS BEEN ADVISED OF HIS RIGHT TO APPEAL THIS DECISION
WITHIN 15 DAYS OF HIS RECEIPT; TO THE SUPERINTENDENT: _YES_

HEARING OFFICER: _RUSS VARNER_

THE INMATE HAS BEEN ADVISED OF THE HEARING OFFICER'S DECISION AND
A COPY OF THIS DOCUMENT HAS BEEN DELIVERED TO THE INMATE: _YES_

STAFF SIGNATURE: _Paul J Glynn_ DATE: _10/7/01_ TIME: _11:00_

EXHIBIT

19

James Matesanz, Superintendent
Bay State Correctional Center (BSCC)
28 Clark Street
Norfolk, Massachusetts. 02056

Larry D. Ingram, [W-38220] Mod.2. #221 A
Bay State Correctional Center
P.O. Box 73
Norfolk, Massachusetts. 02056

Return
Receipt
Requested
U.S. First Class Mail [7000 1530 0000 5686 6386] #########

Re: <u>Consolidated Disciplinary Appeal</u>
    <u>D-Reports,##01-0135 & 01-0136</u>

Supt. Matesanz,

Please find before you my consolidate appeal to d-reports,#
01-0135 and 01-0136. Each disciplinary report is written by a different
officer, yet stem from a single incident.

The specific grounds for dismissal to d-report, #01-0135
are as follows: 1) Harassment and retaliatory actions relative to
outgoing legal mail by Capt. Donovan and Sgt. Glynn; 2) D-report, # 01-
0135 was written by Sgt. Glynn as an abuse of authority of Sgt. Glynn
and Capt. Donovan; and 3) Violation of existing CMR's, i.e. 103 CMR
430.07 and 430.11 (2). Sgt. Glynn wrote d-report, #01-0135, he should
have recused himself from all aspects of d-report, #01-0135, he did
not.

As to d-report, #01-0136 C.O. Todd Johnson was ordered,
(Respondeat Superior) by Capt. Donovan and/or Sgt. Glynn to search my
living quarters at 10:50 a.m. to find and confiscate contraband and
any excess property, etc., thus, a d-report. However, legal documents
were taken from my living quarters while I was detained in the inner
control holding cell for (7) hours. This action was retaliatory and
abuse of authority by Capt. Donovan and Sgt. Glynn. C.O. Johnson's
ordered room search produced an extra light bulb and a yellow Hi-Liter.
These items were allowed for retention by inmates (light bulbs still

Consolidate appeal continued......2


allowed for retention if you possess a lamp). I have never been
informed by notice or otherwise that I could no longer be in possession
of a yellow hi-liter or light bulbs.

For these reasons, independently and accumulative the
Findings, Sanctions and Recommendations to d-reports, #01-0135 and
#01-0136 should be dismissed and expunged from my institutional record.


I.

Disciplinary Report, 01-0135


I have attached my affidavit of the accuracy of the
circumstances which give rise and produced d-report, #01-0135. The
following is a more detailed description of what took place:


On November 20, 2001 at approximately 8:05 a.m. I
went to mail (16)  10 x 13 manila envelopes to the
United States Marshals Office, Massachusetts. (I
requested that an unnamed inmate witness the contents
of each envelope prior to leaving Mod. 2 for mail out).

Once in the main one housing dayroom the following staff
members were present, Capt. Chris Donovan, Sgt. Paul Glynn,
Sgt. Chris Morelli, I.P.S. Kennedy, C.O. David Heanult and
Tom Caulfield, mail Officer, and inmate Arlis Evans.

I announced to C.O. Tom Calufield that the destination
of my mail out was to the United States Marshals Office.
I proceeded to allow C.O. Caulfield to inspect each
envelope individually. After several envelopes were inspected
Capt. Donovan began questioning me.

Capt. Donovan: "where did you get those envelopes?"
Inmate Ingram: "from the law library."

Capt. Donovan: "where did you get all those copies from?"
Inmate Ingram: "from the law library."

Consolidated appeal continued......3

Capt. Donovan:   "Did you fill out a slip for those copies?"
Inmate Ingram:   "yes."

Capt. Donovan:   "there better be one."

While still allowing C.O Caulfield to inspect the
envelopes Sgt. Glynn began questioning me:

Sgt. Glynn:   "Hey Larry, are you going on a trip today?"
Inmate Ingram:   "not to my knowledge, and if so, I'm not
                  aware of such a trip."

Capt. Donovan:   "where did you get that envelope from?"
Inmate Ingram:   "I brought it."

Capt. Donovan:   "do you have proof of that?"
Inmate Ingram:   "yes I do."

Capt. Donovan:   "come and see me at 10:00 a.m., No! No! don't
                  see me, see Sgt. Glynn."

Sgt. Glynn:   "I'll see you at 10:00 a.m. right Larry?"
Inmate Ingram: "yeah, yeah, O.K."

It is evident that d-report, #01-0135 says nothing about
why I was instructed to report to A211 . It (d-report, #01-0135) does
not describe nor identify the envelope in question, (See: d-report,#
01-0135 ¶¶ one and two). A photostat copy of the envelope has been
submitted into evidence at both hearings to show relevancy and a
continuum of the intentions of Capt. Donovan and Sgt. Glynn.

I reasoned that I was suppose to report to A211 with proof
that I purchased the envelope in question. D-report, #01-0135 says
absolutely nothing about why I was instructed to report to A211. I
requested that the reporting officer, Sgt. Glynn be at the hearing,
and that the hearing be tape recorded. I asked Sgt. Glynn one question,

Inmate Ingram:   "why was I instructed to report to A211 ?"
Sgt. Glynn:   "the Captain wanted to get more information."

**Consolidated appeal continued......4**


        Before I left the main one housing dayroom I clearly
told Capt. Donovan that I had proof of purchase for the envelope he
was concerned about. What more information could he have been looking
for? At the hearing for d-report, #01-0135 I requested that Capt.
Donovan be a witness. I asked Capt. Donovan several questions:


        Inmate Ingram:  "why was I instructed to report to A211?"
        Capt. Donovan:  "I wasn't satisfied with your answers."


        At or about 10:15 a.m. Sergeants Glynn and Morelli
        entered Mod. two. Sgt. Glynn motioned for me to come
        to the officers station. Sgt. Glynn asked why didn't
        I report to A211 as instructed. I simply stated,
        "I forgot."
        As a result of said reply I was escorted to the
        modular Sgt. office, over aggressively pat searched
        by Sgt. Glynn and taken to the inner control holding
        cell from 10:20 a.m. to 5:15 p.m. (7 hours) per order
        Capt. Donovan. (See: D-report, #01-0135, ¶3.)


        According to d-report, #01-0136 a room search was conducted
(per order Capt. Donovan and/or Sgt. Glynn) at 10:50 a.m. (30) minutes
after I was detained at the inner control holding cell by C.O. Todd
Johnson. C.O. Johnson considered the following item contraband, (1)
40 watt light bulb and (1) Avery yellow Hi-Liter and confiscated these
items. (See: D-report, #01-0136).

        He also confiscated (7) manila envelopes, one clearly
marked "Exhibit", (the same type of envelope Capt. Donovan instructed
me to report to A211 with proof of purchase), (1) Civil Complaint,
#11804 (20 pages), 44 exhibits (133 pages), and a Judges order directing
service upon the defendants by U.S. Marshals.

Consolidated appeal continued......5


At or about 2:00 p.m. 11/20/01 Capt. Donovan and
Sgt. Glynn entered the inner control holding cell.
The following is a summary of the conversation that
ensued:

Capt. Donovan:  "You can't beat the system. There are things
                we all have to do, even I have to do things
                I don't like, but in the end the system
                always win."
                "Don't you like it here? You wouldn't want
                to be in 10 block with urine and feces all
                over the place?"

Inmate Ingram:  "I like it here, and No! I wouldn't want to
                live in those conditions."

Capt. Donovan:  "Now, I know when someone is calling me a liar."

Inmate Ingram:  "I haven't called anyone a liar."

Capt. Donovan:  "Now, where did you get that envelope?"

Inmate Ingram:  "Crow's Office Supplies."

Capt. Donovan:  "Do you have proof of that?"

Inmate Ingram:  "I can provide proof for the envelope you are
                concerned about."

Capt. Donovan:  "I'll see you in court."


When I was released from the inner control holding cell
at 5:15 p.m. I returned to my living quarters. I immediately
realized that, as previously described, (7) manila envelopes,
one clearly marked "exhibit", (1) Civil complaint, #11804 (20
pages), Exhibits (133 pages), and a Judges order directing
service by the U.S. Marshals were missing from my cell. The
civil complaint and judges order was not within a envelope,
however, these documents were the same exact contents of the
(15)  10x13 marked  "legal" envelopes I had mailed earlier
that morning. All the other envelopes taken from my cell
contained legal documents.

The following day, November 21, 2001 at approximately at
1:00 p.m. Sgt. Morelli said he needed to see me in his office.
The following dialogue took place as he placed a box with
"1 cubic foot" written on it containing what look like the
documents taken from my cell. The following dialogue took
place:

Consolidated appeal continued......6

> Sgt. Morelli:   "you were over the 1 cubic foot limit for
>                 legal documents."
>
> Inmate Ingram:  "who took legal documents from my cell?"
>
> Sgt. Morelli:   "I don't know."
>
> Inmate Ingram:  "what do you mean you don't know, you're the
>                 modular housing Sergeant, you should know."
>
> At approximately 1:05 p.m. I was given all the legal
> documents taken from my cell.

The nature of d-report, #01-0135 is my proof of purchase of a particular envelope. It is clear that I was detained (7 hours), ordered to have my cell searched, and (7) similar envelopes Capt. Donovan was concerned about, a civil complaint with its exhibits taken from my cell. Sgt. Glynn stated, "The Capt. wanted to get more information." Then Capt. Donovan stated, "I wasn't satisfied with your answers." Capt. Donovan's final statement made to me at the inner control holding cell surmise the extent of his satisfaction, "I'll see you in court."

Lastly, Sgt. Glynn wrote d-report,#01-0135. He should have recused himself from all aspects of d-report, #01-0135, he did not. See, 103 CMR 430.07 (1), Disciplinary Personnel:

### 430.07 Disciplinary Personnel

(1) The Superintendent at each institution shall appoint a disciplinary officer who is of supervisory rank or function, who will perform the functions of that office, as set forth in 103 CMR 430.00. The Superintendent may appoint a disciplinary officer for a definite or indefinite term and may in addition appoint a separate disciplinary officer for any disciplinary matter or class of disciplinary matters.

(2) The Superintendent shall appoint a hearing officer or officers to conduct disciplinary hearings as set forth in 103 CMR 430.00. Each Superintendent may appoint a hearing officer or officers for a definite or indefinite term and may in addition appoint a new hearing officer to hear and determine any disciplinary matter or class of disciplinary matters.

**Consolidated appeal continued......7**


      More specifically, Sgt. Glynn as the Disciplinary Officer requested two continuance concerning d-report, #01-0135, See, attachments **A** and **B**, also See, 103 CMR 430.11 (2), Notice and Scheduling of Hearing Before a Hearing Officer:


> **430.11  Proceedings in Major Matters:  Notice and Scheduling of Hearing Before a Hearing Officer**
>
> (1)  Within one weekday of the designation of the offense as a major matter, the disciplinary report, a notice of hearing, and a request for representation and/or witness form shall be served upon the inmate by the disciplinary officer or his designee.
>
> (2)  The disciplinary officer shall schedule a hearing before a hearing officer within a reasonable time, but not less than 24 hours after the inmate has been served with both the disciplinary report and the notice specifying the time of hearing.  The disciplinary officer or hearing officer may continue a hearing at his discretion.  The inmate shall be given written notice of such continuance and the new date for the hearing.  The inmate shall be entitled to one continuance for good cause provided that any request for a continuance must ordinarily be made at least 24 hours prior to the scheduled time of the hearing.


      Surely, this may be considered an innocuous error, but in the totality of the initiation involving the circumstances created solely by Capt. Donovan and Sgt. Glynn, he Sgt. Glynn should have recused himself from all aspects of d-report, #01-0135 to eliminate any appearance of impropriety.

Consolidated appeal continued......8

## II.

## Disciplinary Report, 01-0136

C.O. Todd Johnson was ordered to search me cell 30 minutes after I was detained at the inner control holding cell.

At the hearing for d-report, #01-0136, the hearing was tape recorded. I asked Officer Johnson several questions:

Inmate Ingram:    "Did you confiscate anything else from my cell besides the light bulb and a Hi-Liter?"

C.O. Johnson:    "Yes, excess legal papers."

Inmate Ingram:    "Was this a random search or were you ordered to search my cell?"

Note: The Hearing Officer R. Palmer stated that that question was immaterial and precluded C.O. Johnson from answering that question.

This question was very material and relative to what prompt C.O. Johnson to randomly search my cell on November 20, 2001, at 10:50 a.m. and confiscate the exact legal contents of (15) envelopes air marked for the U.S. Marshals office earlier that same morning.

Why would Capt. Donovan say to me at 2:00 p.m. at the inner control holding cell, "I'll see you in court." The only logical deduction, Capt. Donovan and/or Sgt. Glynn ordered my cell be searched, confiscate legal documents, documents had to have been read in order to know that they were legal, illegally possess my legal material, legal material directly relative to civil litigation against staff here at this institution and read or do as they wish with my legal documents. At no time have I said to Capt. Donovan or any other staff member that I was taking them to court.

The light bulb and the Hi-Liter are a diversion to obscure the real intent behind the clandestine actions of Capt. Donovan and Sgt. Glynn. Sgt. Glynn, as the Disciplinary Officer denied my

**Consolidated appeal continued......9**

my request to have property records that would have shown that light bulbs were at one time allowed to enter the institution, thus inmates could and still possess the right to retain them in their living quarters.

I have been a college student at this institution since April 1993. I have received numerous yellow hi-liters through the educational department, not the present educational staff. I have never been informed that I, nor inmates in general have been informed that if you are in possession of a    "yellow hi-liter" it is considered contraband and you would be receiving a d-report. The memo issued by Director of Security, Steven Fairley on November 7, 2000, is addressed to All Staff, not to inmates nor to be posted in the housing units. Nothing tells me that a yellow hi-liter in my possession is contraband, therefore, I have not knowingly violated the rules and regulations of this institution.

Finally, as to the regulations referred to in this appeal have the force of law. The disciplinary hearing is a quasi-judicial hearing which are afforded certain procedural rights. Some of those rights have been abridged. A regulation promulgated pursuant to Legislative Authority, as is 103 CMR 430.00 et seq. generally have the force of law and is binding on the agency that promulgated it. See: Kenny v. Commissioner, 393 Mass at 33 (1984). Once an agency has seen fit to promulgate a regulation, as the DOC has, it must comply with it, See: Royce v. Commissioner, 390 Mass 423, 427 (1983), also See: Dalomba's case, 352 Mass 598, 603 (1967), and Stokes v. Commissioner, 26 Mass. App. Ct. 585, 588 (1988).

**Consolidate appeal continue....10**


### III.

### <u>Conclusion</u>

      For the foregoing reasons disciplinary reports, ## 01-0135 and 01-0136, their Findings, Sanctions and Recommendations should be dismissed and expunged from my institutional record.


          Respectfully submitted,

          *Larry D. Ingram*

          Larry D. Ingram [W-38220]
          Bay State Correctional Center
          P.O. Box 73
          Norfolk,  Massachusetts. 02056


cc: **Attorney Rust**
      **file**

## AFFIDAVIT OF LARRY D. INGRAM

I, Larry D. Ingram [W-38220] hereby depose and state that the following description and testimony of the November 20, 2001 incident are accurate and true to the best of my knowledge and belief. I hereby state:

1. That, on November 20, 2001 at approximately 8:10 a.m. I went to mail (16) 10 x 13 manila envelopes to the United State Marshal Office, Massachusetts;

2. That once at the main one housing day room I proceeded to allow Tom Caulfield, Mail Officer to inspect each envelope individually;

3. That present were Capt. Chris Donovan, Sgt. Paul Glynn, Sgt. Chris Morelli, C.O. David Henault, C.O. Tom Caulfield, I.P.S. Officer Kennedy and inmate Arlis Evans;

4. That, after several envelopes were inspected Capt. Donovan asked me "where did you get those envelopes?" I stated, "from the law library." He next asked, "Where did I get all these copies from?" I again stated, "from the law library." He further asked, "Did you fill out a slip for those copies?" I said, "yes." Capt. Donovan replied, "there better be one.";

5. That Sgt. Glynn asked me,"hey Larry! are you going on a trip today?" I replied, "Not to my knowledge, and if so I'm not aware of such a trip.";

6. That Capt. Donovan then asked me about a particular enevlope. "Where did you get that envelope from?" I stated, "I brought it." He said, "do you have proof of that?" I said, "yes I do." Capt. Donovan said, come and see me at 10:00 a.m., no! no ! don't see me see Sgt. Glynn.";

7. That Sgt. Glynn said "I'11 see you at 10:00 a.m., right Larry," I stated, yeh, yeh O.K.";

**EXHIBIT**

**19-A**

**Affidavit of Larry D. Ingram continued...2**

8. That, after each envelope was inspected I sealed the box and left the main one housing day room and returned to my housing unit.;

9. That, at approximately 10:15 a.m. Sgt. Glynn and Sgt. Morelli entered the Modular two and called me from the day room. Sgt. Glynn asked me why didn't I come to his office at 10:00 a.m. . I simply stated, "I forgot.";

10. That, I was taken to the Modular two Sgt. office, pat searched and taken to the inner control holding cell from 10:20 a.m. to 5:15 p.m.;

11.   That, at or about 2:00 p.m. Capt. Donovan and Sgt. Glynn entered the inner control holding cell. Capt. Donovan began by stating,  "you can't beat the system. There are things we all have to do, even I have to do things I don't like, but in the end the system always wins.";

12. That, Capt. Donovan continued by stating, "Don't you like it here? You wouldn't want to be in 10 block with urine and feces all over the place." I said, "I like it here and No! , I wouldn't want to live in those conditions.;

13. That, Capt. Donovan stated,  "now, I know when someone is calling me a liar." I said, "I haven't called anyone a liar." He continued, "Now where did you get that envelope?" I stated, "Crow's Office Supplies , He asked, "Do you have proof of that?" I said, "I can provide proof for the envelope he was concerned about." Capt. Donovan ended the conversation by stating, "I'll see you in court." I remained quiet ;

14. That, when I went back to my living quarters it had been searched. I immediately realized that (7) manila envelopes, one clearly marked "Exhibit" (1) copy of my civil complaint #11804, Exhibits (133 pages) and a Judges order directing service by the U.S. Marshal was missing from my cell, (The same exact contents of the (15) envelopes I had mailed earlier that morning). All envelopes contained legal documents.;

**Affidavit of Larry D. Ingram continued...3**

15. That, the following day November 21, 2001 at approximately 1:00 p.m. Sgt. Morelli said he needed to see me in his office. Sgt. Morelli stated, "you were over the 1 cubic foot limit for legal documents." I asked Sgt. Morelli, "who took legal documents from my cell ?" Sgt. Morelli stated, "I don't know!" I asked Sgt. Morelli, what do you mean you don't know, you're the Modular Housing Sgt. you should know!";

16. That, on November 21, 2001 at approximately 1:05 p.m. I was handed (7) manila envelopes (the same envelope Capt. Donovan was concerned about); (1) civil complaint, #11804, with exhibits, 133 pages, all legal documents from Sgt. Chris Morelli..

    Wherefore, the above statements are true to the best of knowledge and belief.

**SWORN AND SUBSCRIBED TO UNDER THE PAINS AND PENALTIES OF PERJURY PURSUANT TO SUPERIOR COURT RULES, RULE 15.**

_Larry D. Ingram_
**Larry D. Ingram, Affiant**
**Bay State Correctional Center**
**P.O. Box 73**
**Norfolk, Massachusetts. 02056.**

**Dated: December 6, 2001.**

# Inter-Departmental Correspondence

| Name | Department | | Name | Department | Location |
|------|------------|---|------|------------|----------|
| | | EXHIBIT | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**EXHIBIT**

**19-B**

**Attachment A**

## DEPARTMENT OF CORRECTION
## NOTICE OF CONTINUANCE

To:  **LARRY  INGRAM**                                             #:   **W-38220**

RE:  **01-0135**                                              Date:  **11/20/2001**

As provided under the Disciplinary Regulations, 103 CMR 430.11 (2), at the request of the
Disciplinary Officer, a continuance has been granted for your disciplinary hearing.

Your hearing has been rescheduled for:     **12/05/2001** *                    **10:00 AM**
                                            (Date)                              (Time)

Notice Served By: _____                        _____
                    (Staff Person's Signature)                        (Title)

                    _____                        _____
                         (Date)                                        (Time)

                    _____
                    **(Disciplinary Chairman / Officer's Signature)**

* If an open date, you will be notified of the new date at least 24 hours prior to the hearing.

**Bay State Correctional Center**

# DEPARTMENT OF CORRECTION
# NOTICE OF CONTINUANCE

**Attachment B**

To: _Larry Ingrams_     #: _W 38220_

RE: _BS-01-0135_     Date: _12/5/01_

As provided under the Disciplinary Regulations, 103 CMR 430.11 (2), at the request of the Disciplinary Officer, a continuance has been granted for your disciplinary hearing.

Your hearing has been rescheduled for: _12/6/01_     _1:00 pm_
                                        (Date)          (Time)

Notice Served By: _Paul A Sly_     _Sgt._
                  (Staff Person's Signature)     (Title)

_12/5/01_     _1:00_
(Date)        (Time)

_Paul A Sly_
(Disciplinary Chairman / Officer's Signature)

\* If an open date, you will be notified of the new date at least 24 hours prior to the hearing.

Bay State Correctional Center

See: Exhibit #8, pg. 2 ,as part of this consolidated appeal.

See: Exhibit #10, pg. 2 ,as part of this consolidated appeal.

See: Exhibit #13 ,as part of this consolidated appeal.

See: Exhibit #14 ,as part of this consolidated appeal.

See: Exhibit#16, as part of this consolidated appeal.

## Certificate of Service

I, Larry D. Ingram, [W-38220] hereby certify that on December 22, 2001 at approximately 8:15 a.m. caused to be mailed a Consolidate Disciplinary Appeal to D-report, #01-0135 and #01-0136, (10) pages, with attachments (2) pages, and exhibits submitted to the hearings for the above mentioned d-reports (10) pages to James Matesanz, Superintendent here at the Bay State Correctional Center by placing said appeal in the institutional mail box located at Main One, BSCC AT , Norfolk, Massachusetts. 02056, addresses to:

**James Matesanz**
**Superintendent**

**Dated: December 22, 2001**

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Jones, Madesan z
Superintendent
Bay State Corr. Center
28 Clark Street
Norfolk, Massachusetts.
02054

UNITED STATES POSTAL SERVICE

PS Form 3811, July 1999

2. Article Number (Copy from service label)

7000 1530 0000 5686 6386

Domestic Return Receipt

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)    B. Date of Delivery

C. Signature
X _____  ☐ Agent  ☐ Addressee

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
   ☑ Certified Mail   ☐ Express Mail
   ☐ Registered       ☑ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

102595-00-M-0952

• Sender: Please print your name, address, and ZIP+4 in this box •

Larry D. Ingram
Bay State Correctional Center
P.O. Box 73
Norfolk, Massachusetts. 02056

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

---

**tabbies**

**EXHIBIT**

20

---

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

OFFICIAL USE

7000 1530 0000 5686 6386

| | |
|---|---|
| Postage | $ 1.26 |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | 1.50 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $4.86 |

Sent To  Jones, Madasanz, Superintendent

Street, Apt. No.; or PO Box No.  28 Clark Street

City, State, ZIP+4  Norfolk, Massachusetts. 02054

DEC 21 2001

PS Form 3800, May 2000    See Reverse for Instructions

 

# The Commonwealth of Massachusetts
## Executive Office of Public Safety
### Department of Correction
#### Bay State Correctional Center
28 Clark Street, P.O. Box 73
Norfolk, Massachusetts 02056

**Jane Swift**
*Governor*

**Jane Perlov**
*Secretary*

**Michael T. Maloney**
*Commissioner*

**Kathleen M. Dennehy**
*Deputy Commissioner*

**James Matesanz**
*Superintendent*

To:        Larry Ingram, W38220

From:      James Matesanz, Superintendent

Date:      February 11, 2002

Re:        **Appeal Results for BS-01-0135 and 0136**


I have reviewed your appeal and transcripts of the disciplinary
hearing for BS-01-0135 and 0136. I have decided to uphold the
findings and sanctions of the hearing officer. Therefore, the
findings and sanctions will stand. Your appeal is denied.

*Served*
*2/11/02*
*P.Gly*

cc:  File

**EXHIBIT**
**21**

To:    Larry Ingram, W 38220

From:    Sgt. Paul F Glynn, Disciplinary Officer *PFG*

Re:    **Room Detention**

Date:    2/14/02

    The sanction of ⑤ days room detention from disciplinary report #BS-01-0135 is effective as of 2-15-02 . Provided no further sanction of room detention is imposed you may resume normal activity as of 2-20-02 .

**Inmates receiving room detention as a disciplinary sanction are to be restricted to their room and will not have access to the following.**

    No congregating in the common areas, other inmate rooms of the unit or inmates congregating in your room.
    No personal phone calls, **exception attorney\legal.**
    Visits, **only exception attorney\legal**
    Work / Canteen / Programs / School
    Gym activities or other sporting events.
    Library, **exception law library (1pm to 3pm).**
    Showers (8:30am to 9:00am daily).

    **In general, inmates are restricted to their rooms with the exception of the following.**

    OPD\Med. line
    1 established religious service per week.
    Meals

**Note: Inmates on room detention must turn in tv, radio, walkman, headphones and electronic games, to the Property Officer the morning there room detention begins.**

    **Any inmate found in violation of any of the above room detention will be subject to further disciplinary action.**

EXHIBIT
22



*The Commonwealth of Massachusetts*

*Department of Correction*

*Bay State Correctional Center*

*28 Clark Street  P.O. Box 73*

*Norfolk, MA 02056*

James Matesanz
SUPERINTENDENT

To: Larry Ingram, W38720

From: Sgt. Paul F Glynn, Disciplinary Officer *PflG*

Re: **Suspended Canteen Privileges**

Date: 2-14-02

The sanction of ___(4)___ loss of canteen privileges from disciplinary report # BS-02-0136 is effective as of 2-18-02 . Provided no further suspension of canteen privileges occurs, your canteen privileges will be restored as of 3-17-02 .

The only exception to this suspension shall be cosmetics, with prior approval through the Deputy Superintendent.

cc: Deputy Superintendent
Director of Security
Canteen
Housing Unit\Sergeant
File

EXHIBIT
23