UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LARRY D. INGRAM                    CIVIL ACTION NO. 04-CV-12475-RCL

            Plaintiff,

vs.

CHRISTOPHER DONOVAN, ET AL.

            Defendants.

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS AND/OR MOTION FOR SUMMARY JUDGMENT**

    The plaintiff, Larry Ingram, ("Ingram"), is a state prisoner currently confined at the

Bay State Correctional Center ("Bay State") in Norfolk, Massachusetts.  The defendants are

former Superintendent of Bay State, James Matesanz, former Sergeant Christopher Morelli

and Sergeant Paul Glynn, former Captain Christopher Donovan, Officer Todd Johnson and

former Disciplinary Hearing Officer Russ Palmer.

    Plaintiff's Complaint alleges that certain defendants "vexed and threatened him."

He also claims that he received two disciplinary reports in retaliation for filing a lawsuit

(Ingram v. Canavan, et al., USDC 1:01-cv-11804-RCL) against certain defendants.  Finally,

he alleges that defendants conspired to deprive him of his constitutional rights.   The facts

set forth in this Complaint are similar to an amended Complaint plaintiff unsuccessfully

tried to file in Ingram v. Canavan, et al., USDC 1:01-cv-11804-RCL.  See entries 21, 22 and

30 of docket report attached as Exhibit A.  See also docket entries for March 15, 2002 and

April 26, 2002.  This court allowed Defendants' Motion to Dismiss and/or Motion for

Summary Judgment in Ingram v. Canavan, and the First Circuit Court of Appeals upheld the

judgment in favor of defendants.   Exhibit A, docket entry #96.

In the instant case, plaintiff has failed to make service on defendants Morelli, Matesanz, Palmer and Donovan.   See docket report, entries 9, 10, 11 and 12.  As such, the Complaint against these defendants should be dismissed.  Without waiving the requirement of proper service, however, this memorandum sets forth arguments in support of the dismissal of the Complaint on behalf of <u>all</u> defendants.  For the following reasons, plaintiff's Complaint should be dismissed.  In the alternative, Summary Judgment should be granted in favor of all defendants.

## STATEMENT OF UNDISPUTED FACTS

1.     At all times relevant herein, plaintiff Larry D. Ingram was an inmate lawfully incarcerated at Bay State Correctional Center ("BSCC") in Norfolk, Massachusetts. Complaint, paragraph 2.

2.     On November 20, 2001, Sergeant Paul Glynn issued disciplinary report number 01-0135 (DR 01-0135).  Plaintiff was charged with disciplinary offenses No. 1, "Disobeying an order of, lying to, or insolence toward a staff member," No. 2, "Violating any departmental rule or regulation," No. 8, "Conduct Which Disrupts" and No. 33, "Attempting to Commit any of the above offenses."   Exhibit B, page 1.

3.     Specifically, Sgt. Glynn stated that he ordered plaintiff to report to a certain location at a certain time.  Plaintiff failed to report to Sgt. Glynn and was eventually found in the day room reading a book.  When questioned about why he failed to obey Sgt. Glynn's order, he admitted that he "forgot." <u>Id.</u>

4.     On November 23, 2001, plaintiff was served with a copy of a Request for Representation form and a Request for Evidence form.  Complaint, paragraph 28.

5.     On December 6, 2001, Hearing Officer Russ Palmer conducted a disciplinary hearing. Exhibit B, page 3. Plaintiff testified on his own behalf. Id. at 4. The hearing officer also heard testimony from Sgt. Glynn and Captain Christopher Donovan (at plaintiff's request.) Id. at 4-5.

6.     After considering all the evidence before him, including the aforesaid testimony, an affidavit from plaintiff, and the disciplinary report, Hearing Officer Palmer found plaintiff guilty of the charges set forth in DR 01-0135 and imposed a sanction of a one-week room detention. Complaint, paragraph 32. See also Exhibit B, pages 5-6.

7.     On November 20, 2001, Officer Todd Johnson issued plaintiff disciplinary report number 01-0136 (DR 01-0136). Plaintiff was charged with disciplinary offenses No. 2, "Violating any departmental rule or regulation," No. 8, "Conduct Which Disrupts," No. 24, "Possession of items not authorized for retention or receipt by the inmate" and No. 33, "Attempting to Commit any of the above offenses." See Exhibit C, page 1. Specifically, Officer Johnson reported that he found contraband items during a search of plaintiff's room: a light bulb and a yellow hi-liter. Id.

8.     Plaintiff received notice of the disciplinary hearing, along with a Request for Representation form and a Request for Evidence form. Complaint, paragraph 30.

9.     On December 6, 2001, Hearing Officer Russ Palmer conducted the disciplinary hearing. Complaint, paragraph 31. Plaintiff testified on his own behalf. Exhibit C, page 4. Hearing Officer Palmer also heard testimony from Officer Todd Johnson. Id.

10.  After considering all the evidence before him, Hearing Officer Palmer found plaintiff guilty of disciplinary report 01-0136 and imposed a sanction of a one-month loss of canteen.  Complaint, paragraph 31.  See also Exhibit C, pages 5-7.

11.  On December 6, 2001, plaintiff appealed the decisions and sanctions resulting from DR 0135 and DR 01-0136.  Complaint, paragraph 33.  Superintendent Matesanz reviewed plaintiff's appeal and upheld the findings and sanctions on both disciplinary reports.  Complaint, paragraph 34.

12.  On November 20, 2001, plaintiff mailed sixteen manila envelopes marked legal mail to the US Marshall for service of process upon each defendant in Ingram v. Canavan, et al., Case No. 01-cv-11804 RCL.  Complaint, paragraph 15.

13.  Plaintiff's Complaint states that he "randomly selected C.O. Mail Officer Tom Caulfield to inspect each envelope individually prior to being sealed for delivery to the U.S. Post Office to be mailed."  Complaint, paragraph 17.

14.  Plaintiff's Complaint does not allege that defendants Donovan, Glynn and Morelli knew that the envelopes contained lawsuits filed against them.  In his Complaint, plaintiff claims that defendants Donovan, Glynn and Morelli "witnessed the required inspection of his mailing."  Complaint, paragraph 17.

15.  The docket report for Ingram v. Canavan, et al., Case No. 01-cv-11804 RCL reflects that service of process was not made on defendants Chris Donovan, James Matesanz or Chris Morelli until on or about December 21, 2001, several weeks after plaintiff alleges that they "conspired" against him for filing said lawsuit.  Exhibit A, docket entries 7, 12, and 14.

16.    Chris Morelli, Paul F. Glynn, Chris Donovan and James Matesanz were defendants in Ingram v. Canavan, et al., Case No. 01-cv-11804 RCL.  See Exhibit A.

17.    Defendants Todd Johnson and Russ Palmer were not defendants in Ingram v. Canavan, et al., Case No. 01-cv-11804 RCL.  Id.

18.    Plaintiff's Complaint does not allege that he filed a grievance pursuant to 103 CMR 491 regarding the alleged the alleged verbal harassment by defendants Donovan and Glynn referred to in paragraphs 21 and 22 of the Complaint, or the alleged conspiracy and retaliation by defendants.

19.    According to the Bay State Correctional Center Institutional Grievance Coordinator, plaintiff did not file a grievance regarding the alleged verbal harassment and the alleged conspiracy and retaliation by defendants.  See Kortes Affidavit, Exhibit E.

20.    Plaintiff's Complaint does not allege that he suffered any physical injury as a result of these alleged "verbal threats."

21.    Defendants' Motion to Dismiss and/or Motion for Summary Judgment in Ingram v. Canavan, et al., Case No. 01-cv-11804 RCL was allowed on March 24, 2004. Exhibit A, docket entry #84.   See also Memorandum and Order on the Defendants' Motion to Dismiss and/or Summary Judgment, attached as Exhibit D.

22.    The First Circuit Court of Appeals denied plaintiff's appeal and affirmed the judgment of the District Court on or about April 20, 2005.  Exhibit A, docket entry #96.

23.    Plaintiff filed his Complaint in the instant case on November 22, 2004.


**ARGUMENT**

A motion to dismiss the complaint must be construed in the light most favorable to plaintiff and its allegations taken as true. Hugh v. Rowe, 449 U.S. 5, 10 (1980). A complaint must fail if it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim which would be entitled to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). To withstand a motion to dismiss, plaintiff must "set forth minimal facts, not subjective characterizations, as to who did what to whom and why." Dewey v. University of New Hampshire, 694 F.2d 1, 3 (1st Cir. 1982), cert. denied 461 U.S. 944 (1983). Although the threshold for stating a claim may be low, it is real. Gooley v. Mobil Oil Corp., 851 F. 2d 513, 514 (1st Cir. 1988). Because plaintiff has not stated a valid claim under federal or state law or any constitutional claim against defendants, his complaint must be dismissed.

In the alternative, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A non-moving party cannot rest on mere allegations; the non-moving party must adduce specific, provable facts that establish that there is a triable issue. Rogers v. Fair, 902 F.2d 130, 143 (1st Cir. 1990). "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Celotex , 477 U.S. at 317 (quoting Fed. R. Civ. P. 56(c)). In addition, there must be "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely

colorable, or is not significantly probative, summary judgment may be granted." Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted).

For the reasons that follow, dismissal and/or summary judgment should enter for
the defendants on the claims identified below.

## I.    PLAINTIFF RECEIVED ALL OF THE PROCESS HE WAS DUE AT HIS DISCIPLINARY HEARINGS.

Plaintiff challenges the disciplinary convictions, alleging that defendants conspired
to falsely accuse him of various violations and that he was convicted of disciplinary offenses
without due process. He seeks an injunction ordering defendants to "expunge the
disciplinary convictions described in this complaint from plaintiff's. . . records." Complaint,
page 9.

### A.    Plaintiff has failed to demonstrate that a liberty interest was implicated.

The plaintiff claims that his procedural due process rights under the Constitution
were violated. It is now well established that an inmate is entitled to the protections of
procedural due process only when an existing liberty or property interest is at stake. Sandin
v. Conner, 515 U.S. 472, 484 (1995). (thirty days in segregated confinement with
insignificant differences from general confinement did not trigger liberty interest). A
liberty interest is infringed only if the punishment inflicted upon the inmate imposes an
"atypical and significant hardship on the inmate in relation to the ordinary incidents of
prison life." Sandin, 515 U.S. at 484.

In the instant case, the temporary loss of canteen privileges, and a five-day room
detention hardly rise to the level of atypical and significant hardship as required by Sandin.
Similarly, plaintiff's allegation that he was detained for several hours following his admitted
failure to obey Sergeant Glynn's order does not rise to the level of an atypical and

significant hardship.  See also Dominique v. Weld, 73 F.3d 1156 1st Cir.Mass. (1996);

Johnson v. Dubois, 1996 WL 1185052; Drayton v. Commissioner of Correction, 751 N.E.2d

916 9Mass App. Ct. 2001).   Because plaintiff has failed to establish that he was deprived of

a protected liberty interest, his claims must be dismissed.

**B.      Defendants complied with the requirements of Wolff v. McDonnell.**

        Additionally, the United States Supreme Court, in Wolff v. McDonnell, 418 U.S.

539, (1974), set forth a number of due process requirements for disciplinary proceedings.  A

review of said requirements reveal that the disciplinary hearings in this case did not violate

plaintiff's due process rights.  First, an inmate must be given advance written notice of the

charges against him within 24 hours before the hearing officer.  Wolff, 418 U.S. 539 (1974).

Wolff also requires that "there must be a written statement by the fact finders as to the

evidence relied on and reasons for the disciplinary action."  Id. at 563.   Finally, "[p]rison

officials must have the necessary discretion to keep the hearing within reasonable limits and

to refuse to call witnesses that may create a risk of reprisal or undermine authority . . ."

Wolff, 418 U.S. 539, 566 (1974).

**C.   Plaintiff Received The Requisite Notice of the Disciplinary Charges and
       Hearings.**

        The procedures contained in the DOC's disciplinary regulations, 103 CMR 430.00

et seq., comport with the requirements of the 14th Amendment, as set forth in Wolff v.

McDonnell, 418 U.S. 539 (1974).  See Torres v. Commissioner of Correction, 427 Mass.

611, 618 (1998).  The disciplinary procedures also adequately protect an inmate's due

process rights guaranteed by Article 12 of the Declaration of Rights of the Massachusetts

Constitution.  Torres, 427 Mass. at 619 n.11.  The administrative record establishes that each

of plaintiff's disciplinary hearings comported with 103 CMR 430.00 et seq. and the

requirements of <u>Wolff</u>.  Plaintiff does not dispute that he received the required notice of

each hearing and of the charges against him.

**D.     The hearing officer properly set forth written statements as to the evidence
relied upon and the reasons for the disciplinary action.**

In each of plaintiff's disciplinary hearings, defendants complied with the <u>Wolff</u>

requirement of a written statement by the fact finders as to the evidence relied on and the

reasons for the disciplinary action.

On page 7 of Exhibit B, Hearing Officer Russ Palmer states that,

The sanction is in line with the offense.  By inmate Ingram's own admission, he was
instructed by Sgt. Glynn to report to A211 at 10am.  It is irrelevant if the inmate was
paged or not.  He was aware that he was due in A211 at 10am and he did not show.

On page 7 of Exhibit C, Hearing Officer Russ Palmer states that,

Inmate Ingram is in violation of institutional rules, being in possession of these
items.  Orientation manual page 2, #29 states highlighters are considered contraband,
it does not specify colors.  On Nov. 7, 2000, DOS Fairly amended this ruling by
allowing pink highlighters only to school inmates.  This orientation manual is
issued/available to all inmates.  The light bulb is considered a breakable sharp object
which is also considered contraband at BSCC.

The hearing reports prepared by Hearing Officer Russ Palmer more than satisfy the

due process requirement set forth in <u>Wolff</u>.

**E.     The hearing officer properly denied Plaintiff's requests for witnesses.**

Plaintiff alleges that Hearing Officer Palmer violated his rights by preventing him

from asking Officer Johnson whether the search of his room was random or assigned.  His

allegations are without merit.

A prisoner's right to call witnesses and present evidence at a disciplinary hearing is

circumscribed by competing concerns of institutional safety and other correctional goals.

<u>Ponte v. Real</u>, 471 U.S. 491, 495 (1985); <u>Wolff</u>  at 566; <u>see</u> <u>also</u> <u>Baxter v. Palmigiano</u>, 425

U.S. 308, 321 (1976). When challenged, prison administrators bear the burden of showing that the reasons for the denial were not arbitrary. <u>Ponte</u> at 497. They may make their reasons known at the time of the disciplinary action or wait until the prisoner brings a legal action. <u>Id</u>. at 497. The court's task is not to substitute its judgment for that of the prison officials charged with conducting the disciplinary hearing, but to determine whether the proof offered to explain the refusal to call these witnesses satisfactorily carries defendants' burden of showing that the decision was not arbitrary. <u>Id</u>. at 497-99.

DOC disciplinary regulations permit the hearing officer to deny a witness request based upon the "[u]navailability of the reporting staff person or other staff person for a prolonged period of time due to illness, vacation or other authorized absence, or for other good cause." 103 CMR 430.14(4)(d). A hearing officer may also refuse to call a witness or present evidence on the ground of relevance. <u>See</u> 103 Code Mass. Regs. Section 430.14(4)(a). In this case, the question of whether the room search that led to DR 01-0136 was random or assigned was determined to be irrelevant. Accordingly, this was an appropriate basis for denial.

**F.      The hearing officers properly found Plaintiff guilty by a preponderance of the evidence, based on "some evidence."**

In prison discipline cases, "the requirements of due process are satisfied if <u>some evidence</u> supports the decision by the prison disciplinary board." <u>Superintendent, Massachusetts Correctional Inst. v. Hill</u>, 472 U.S. 445, 455 (1985) (emphasis added). This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced...." <u>Id</u>. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is

any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 446. "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." Id. at 457.

At each disciplinary hearing, Plaintiff was convicted by a preponderance of the evidence, based upon "some evidence" of disciplinary rule violations.

**G.    Since Plaintiff Received The Requisite Due Process At His Disciplinary Hearing, He Cannot Sustain A Cause Of Action Under § 1983 For Allegations Of False Discipline.**

Correction officers are precluded from disciplining prisoners for an improper purpose. Sires v. Berman, 834 F.2d 9, 13-14 (1st Cir. 1987); Gomes v. Fair, 738 F.2d 517, 525 (1st Cir. 1984). However, "deference is due prison administrators in their attempts to secure the safety of prison staff, and to preserve discipline in the prisons." Sires, 834 F.2d at 14 (citing Bell v. Wolfish, 441 U.S. 520, 547-48 (1979)). In this regard, allegations of false discipline do not entitle a prisoner to *de novo* trial of the charges by the federal court. Rather, where false disciplinary charges are alleged, the appropriate focus of the Court is whether the disciplinary hearing accorded the prisoner due process.

Prisoners have no constitutionally guaranteed immunity from false or fabricated disciplinary accusations. A prisoner's due process right with respect to the filing of a disciplinary report is subsumed within the procedures enunciated in Wolff at 539. If these procedures are followed, the prisoner's due process right is protected, regardless of the truth of the initial report. Chance v. Compton, 873 F. Supp. 82, 85 (W.D. Tenn. 1994).

In Freeman v. Rideout, the prisoner claimed his discipline was based on false charges that he had assaulted another prisoner. 808 F.2d 949, 950 (2d Cir. 1987), cert. denied, 485 U.S. 982 (1988). Freeman filed suit in the district court under § 1983, seeking

compensation for deprivation of liberty without due process.[1]  Id. at 949-51.  Following a

trial, the court entered judgment and awarded Freeman damages.  Id. at 950.  The Second

Circuit reversed, holding that "prison inmate[s] ha[ve] no constitutionally guaranteed

immunity from being falsely or wrongly accused of conduct which may result in the

deprivation of a protected liberty interest."  Id. at 951.  The Court held that the Constitution

merely guarantees that prison inmates will "not ... be deprived of a protected liberty interest

without due process of law."  Id.  As long as prison officials grant the inmate a hearing and

an opportunity to be heard, the "filing of unfounded charges d[oes] not give rise to a per se

constitutional violation actionable under section 1983."  Id. at 953.[2]

    The key inquiry in assessing an allegation that an inmate has been found guilty of

false disciplinary charges is whether or not the prison has provided the inmate with the

minimum procedural due process protections guaranteed by the 14th Amendment.  In

Freeman, the Court of Appeals held that the proper inquiry is whether the prisoner received

the elements of due process required by Wolff.  "An inmate charged with a violation must

be given (1) advance written notice of the charges at least 24 hours before the hearing; (2)

the opportunity to appear at the hearing, to call witnesses, and to present rebuttal evidence;

and (3) a written statement by the factfinders as to the evidence relied on for their decision,

and the reasons for the prison committee's action."  Freeman, 808 F.2d at 953 (citing Wolff

at 564-66).

    The rationale for the ruling is that the federal courts do not entertain de novo review

of a disciplinary board's factual findings.  See Glick v. Sargent, 696 F.2d 413, 415 (8th Cir.

---

[1] Freeman v. Rideout predated Sandin v. Conner, 115 S.Ct. 2293 (1995), which held that thirty days isolation
does not constitute an "atypical and significant" deprivation, giving rise to a liberty interest.

1983). "Once a court has decided that the procedural due process requirements have been met, its function is to determine whether there is some evidence which supports the decision of the prison disciplinary board." Freeman at 954-55 (citing Hill at 453-55). A court should not overturn a prison disciplinary board's finding of guilt if there is any evidence to support the board's conclusion. Hill at 455-56; Freeman at 955. "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." Hill at 457. Indeed, if an allegation of false discipline were sufficient to warrant de novo review, every prisoner would be entitled to a federal trial of his disciplinary charges.

The First Circuit has applied a malicious prosecution model to a Massachusetts prisoner's claim of false discipline and criminal prosecution. Smith v. Department of Correction, 936 F.2d 1390 (1st Cir. 1991). Smith alleged that officers falsely disciplined him and conspired to prosecute him maliciously. Id. at 1393. The Court of Appeals addressed the disciplinary charges by applying the Wolff standards. Id. With respect to the criminal prosecution, the court held that a § 1983 claim would lie for substantive due process purposes if the alleged prosecution was "conscience shocking," and for procedural due process purposes if "the alleged conduct deprived [the plaintiff] of liberty by a distortion and corruption of the processes of law; i.e., corruption of witnesses, falsification of evidence, or some other egregious conduct resulting in the denial of a fair trial." Id. at 1402. v. John Hancock Mutual Life Ins. Co., 81 F.3d 249, 256 (1st Cir. 1996).

Courts have also denied de novo review of prisoners' disciplinary convictions in situations where prisoners alleged that officers issued false disciplinary reports to justify

---

[2] In Dias v. Duval, 59 F.3d 164 (1st Cir. Mass.1995), the Court of Appeals for the First Circuit cited Freeman v. Rideout for the proposition that a "prison inmate has no constitutionally guaranteed immunity from being

excessive force.  In <u>Husbands v. McClellan</u>, 957 F. Supp. 403 (W.D.N.Y. 1997), for example, the district court held that an allegation that officers issued a false disciplinary report to prevent an inmate from seeking redress for an earlier assault by correction officers fails to state a claim and is barred by <u>Freeman</u>. In <u>Nelson v. Michalko</u>, 35 F. Supp. 2d 289 (W.D.N.Y. 1999), the prisoner alleged that officers sexually assaulted him during the course of a search in violation of the 8th Amendment and the 14th Amendment Substantive Due Process Clause, and then filed false disciplinary reports in violation of the 14th Amendment to cover up their own misconduct. The court held that the suit was barred where there is no evidence that the filing of the false reports actually hindered or prevented the prisoner from exercising his constitutional right to seek redress, either through the grievance procedure or by filing a lawsuit.  <u>Id</u>.

In this case, the disciplinary reports received by plaintiff were not "false."  In DR 01-0135, the reporting officer stated that he gave plaintiff an order to report to a certain room at a certain time.  Plaintiff admitted that he "forgot" to obey the officer's order.  At his disciplinary hearing plaintiff did not deny that he failed to report to A211, instead he challenged the fact that the order was given.  As a result of the undisputed failure to obey an order, plaintiff was found guilty of DR 01-0135 and sanctioned to a one-week room detention.

In DR 01-0136 plaintiff was found guilty of possessing a light bulb and a yellow highlighter.  It is undisputed that both items were found in his cell.  The hearing officer explained that highlighters of any color (except pink for student inmates) are prohibited in the inmate orientation manual and the light bulb was a breakable sharp object considered contraband at Bay State.

---

falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest."

Plaintiff does not and cannot claim that this so called "false" discipline in any way hindered his ability to litigate <u>Ingram v. Canavan</u>, et al., Case No. 01-cv-11804 RCL.  For the foregoing reasons, plaintiff has no claim under § 1983 for allegations of false discipline, and these claims should be dismissed.

### H.  Since Plaintiff Received The Requisite Due Process At His Disciplinary Hearing, He Cannot Sustain A Cause Of Action Under § 1983 For Allegations Of Conspiracy.

Since Ingram's disciplinary hearings afforded him the requisite due process, he was not deprived of any rights, and cannot maintain a § 1983 conspiracy claim which requires proof of an actual deprivation of rights.  <u>Landrigan</u> at 742.  Therefore, plaintiff's conspiracy causes of action should be dismissed.

### II.    <u>PLAINTIFF HAS NO CONSPIRACY CLAIM AGAINST THE DEFENDANTS.</u>

Plaintiff alleges that the defendants a conspiracy to violate his 1st and 14th Amendments.  His allegations lack merit and his Complaint contains <u>no</u> facts to support his claim that defendants entered into an agreement to retaliate against him.

Conspiracy claims are actionable under § 1983, however "it is necessary that there have been, besides the agreement, an actual deprivation of a right secured by the Constitution and laws."  <u>Landrigan v. City of Warwick</u>, 628 F.2d 736, 742 (1st Cir .1980).  "The gist of the [§ 1983] cause of action is the deprivation and not the conspiracy [itself]."  <u>Id</u>. at 742 (quoting <u>Lesser v. Braniff Airways, Inc.</u>, 518 F.2d 538, 540 n.2 (7th Cir.1975)).  Conspiracy merely provides the mechanism by which to plead or prove the constitutional or statutory violation.  <u>Id</u>.  Proof of conspiracy will not serve to impose liability for the underlying wrong on persons whose only involvement is in the cover-up, but not in the planning or execution of the alleged underlying wrongful act.  <u>Id</u>.

Moreover, conclusory allegations of a conspiracy in a § 1983 action cannot survive a motion to dismiss. Slotnick v. Staviskey, 560 F.2d 31, 33 (1st Cir. 1977); Gross v. Bohn, 782 F. Supp 173, 181 (D. Mass. 1992); see generally, Leonardo v. Moran, 611 F.2d 397 (1st Cir. 1979) (discussing pleading requirements of conspiracy claim). The complaint must contain the essential allegation of an agreement among the defendants in accomplishing the alleged objectives of the supposed cover-up conspiracy. Bemis v. Kelley, 617 F. Supp. 837, 843 (D. Mass. 1987); Gross v. Bohn, 782 F. Supp. 173, 182 (1991) (plaintiff alleging conspiracy may not be permitted to base his case on discovery if he has failed to satisfactorily allege the complaint in the initial stage).

At bar, Ingram makes only conclusory allegations of conspiracy. The Complaint does not allege facts to support the existence of an agreement among any defendants to deprive him of constitutional rights or to retaliate against him. In addition, none of plaintiff's constitutional rights were violated. As such, the defendants are entitled to dismissal and/or summary judgment on all conspiracy causes of action.

### III.    PLAINTIFF HAS NO CLAIM FOR RETALIATION.

Plaintiff claims that he was retaliated against because he filed a lawsuit against certain defendants. While correctional officials may not discipline inmates for an improper purpose, the courts impose stringent standards for prisoners' claims of retaliation for the exercise of grievances or litigation. First, courts recognize that "deference is due prison administrators in their attempts to secure the safety of prison staff, and to preserve discipline in the prisons." Sires v. Berman, 834 F.2d 9, 13-14. See also Gomes v. Fair, 738 F.2d 517, 525 (1st Cir. 1987).

Accordingly, in order to set forth a claim of retaliation, a prisoner must be able to demonstrate that the allegedly improper decisions would not have been made, "but for" the impermissible purpose of retaliation.  Layne v. Vincant, 657 F.2d 468, 475 (1st Cir. 1981); McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979);  Association for Reduction of Violence v. Hall, 558 F.Supp. 661, 662-663 (D. Mass 1983).  Conversely, a prisoner cannot sustain a claim of allegedly impermissible conduct where the actions of the prison officials were also supported by a permissible purpose.  In Scarpa v. Ponte, 638 F.Supp. 1019, 1029 (D. Mass 1986), the Court held that even if the defendants had an impermissible reason for disciplining the prisoner, they would still not be liable if they also had independent, permissible reasons for doing so.

Second, courts recognize that a retaliation charge carries a substantial potential for abuse.  Without close judicial scrutiny, any prisoner who has ever grieved a complaint or filed a lawsuit would be able to cry retaliation whenever correctional officials took any action not to his liking:

> We believe that in forma pauperis plaintiffs who claim that their constitutional rights have been violated by official retaliation must present more than naked allegations of reprisal to survive.  To hold otherwise would be to bring virtually every unpopular decision by state actors within the scope of a cause of action for retaliation.  This would pose particular problems in the context of prison administration.  Every act of discipline by prison officials is by definition "retaliatory" in the sense that it responds directly to prisoner misconduct.  The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties.  Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions.

Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994).

Plaintiff has failed to demonstrate that the alleged improper decisions to give him disciplinary reports would not have been made but for the purpose of retaliation.  On the

contrary, he admitted to "forgetting" to comply with an order given by defendant Sgt. Paul Glynn, the basis of disciplinary report 01-0135.  It is also undisputed that plaintiff was in possession of a light bulb and yellow highlighter in his room, (the basis of disciplinary report 01-0136) both of which are considered contraband.  Accordingly, plaintiff has failed to set forth a cause of action for retaliation and his Complaint must be dismissed.

## VI.     PLAINTIFF HAS NO ENTITLEMENT TO INJUNCTIVE RELIEF.

Plaintiff requests that this court "issue an injunction ordering the defendants or their agents to expunge the disciplinary convictions described in this complaint from Plaintiff's institutional and central office records."  Complaint, page 9.  Plaintiff is not entitled to injunctive relief in this case.

A plaintiff has standing to seek injunctive relief only when the possibility of future injury is particular and concrete.  O'Shea v. Littleton, 414 U.S. 488, 496-97 (1974).  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief .... if unaccompanied by any continuing, present adverse effects."  O'Shea, at 495-96.  Moreover, prospective relieve in prison cases is subject to § 802 of the Prison Litigation Reform Act of 1996:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

18 U.S.C.A. § 3626 (1985).

Plaintiff has produced no evidence that that he is likely to suffer future injury, and there is no showing of ongoing deprivation.  Accordingly, the court should deny his request for injunctive relief.

## V.    PLAINTIFF FAILED TO EXHAUST ALL ADMINISTRATIVE REMEDIES.

Plaintiff's claims should be dismissed where he failed to exhaust all available administrative remedies prior to commencing the instant litigation as required under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), Pub. L. No. 104-134, 110 Stat. 1321 (1996).[3]  The PLRA has placed limitations upon the availability of relief in actions brought by prisoners and specifically mandates that prisoners exhaust all administrative remedies prior to commencing a lawsuit against prison officials regarding prison conditions.  42 U.S.C. § 1997e(a).  In Porter v. Nussle, 534 U.S. 516, 532 (2002), The United States Supreme Court held that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, supra at 524. (emphasis added).   The Porter Court stated:

> [e]ven when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. And unlike the previous provision, which encompassed only § 1983 suits, exhaustion is now required for all 'action[s] . . . brought with respect to prison conditions,' whether under § 1983 'or any other Federal law.'

Porter, 534 U.S. at 524.    Thus, exhaustion of administrative remedies is a requirement, or condition precedent, under the PLRA, which must be met before a

---

[3]    42 U.S.C. § 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

prisoner's cause of action under § 1983 or other federal law can accrue. Id.  While the First Circuit Court of Appeals recently concluded that the exhaustion requirement is not jurisdictional, it did state, "the exhaustion requirement is nonetheless mandatory." Casanova v. DuBois, 289 F.3d. 142, 147 (1st Cir. 2002).

In Casanova, the First Circuit also addressed the consequences of failure to exhaust, stating quite clearly that "[u]nless appellants have satisfied the PLRA's exhaustion requirement, their case must be dismissed." Id. (remanding case for resolution of exhaustion issue prior to addressing other issues on appeal) (emphasis added).   The remedies available to a prisoner need not meet federal standards nor need they be "plain, speedy, or effective." Id.  The inmate's complaint must contain "particularized averments" showing that each claim asserted has been exhausted. Knuckles-El v. Toombs, 216 F.3d 640 (6th Cir. 2000), cert. denied, 531 U.S. 1040 (2000).  The First Circuit has held that a prisoner must affirmatively demonstrate that he has exhausted all available administrative remedies prior to initiating his complaint.  Casanova v. DuBois, 289 F.3d. at 147.

Here, plaintiff failed to demonstrate that he exhausted his available administrative remedies with regard to his claims brought pursuant to federal law, i.e., 42 U.S.C. § 1983.  See Exhibit E.  The PLRA was in effect at the time the plaintiff filed his Complaint.  The Department's general grievance policy, 103 CMR 491.00 (1996) et seq., was available to the plaintiff prior to initiating his Complaint.  The grievance policy provides that inmates may formally address their complaints by filing an institutional grievance form with the institutional grievance coordinator (IGC) within ten (10) working days of the incident of complaint. 103 CMR 491.09.

The grievance policy further provides that an inmate dissatisfied with the decision of the IGC may appeal the decision to the Superintendent within ten (10) days of receipt of the IGC's decision. 103 CMR 491.11.

Nowhere has plaintiff alleged that, prior to filing the instant action, he filed formal grievances alleging that defendants "vexed and threatened him, " conspired or retaliated against him. Accordingly, where plaintiff failed to exhaust his available administrative remedies as required under the PLRA, the defendants are entitled to the dismissal of his claims.

**B. PLRA Bars Recovery For Damages Where Plaintiff Has Not Alleged A Physical Injury.**

As discussed above, the PLRA has placed stringent limitations upon the availability of relief in civil rights actions brought by prisoners. Section 803(d) of the PLRA, codified at 42 U.S.C. § 1997e(e), entitled, "Limitation on Recovery," states:

> No federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

Accordingly, 42 U.S.C. § 1997e(e) prohibits a prisoner from recovering damages in a claim brought under federal law for an alleged mental or emotional injury suffered while in custody unless the prisoner can first demonstrate that the mental or emotional injury is the result of a "physical injury." See Thompson v. Carter, 284 F.3d 411, 41617 (2nd Cir. 2002) ("We agree with the majority of our sister circuits that Section 1997e(e) applies to claims in which a plaintiff alleges constitutional violations so that the plaintiff cannot recover damages for mental or emotional injury for a constitutional violation in the absence of a showing of actual physical injury."); Searles v. Van Bebber, 251 F.3d 869, 875-77 (10th Cir. 2001) (held that plain language of §1997e(e) applied to all prisoner actions regardless of

type of claim); <u>Zehner v. Trigg</u>, 133 F.3d 459 (7th Cir. 1997) (prisoners' failure to show a physical injury bars recovery under 42 U.S.C. § 1997e(e)); <u>Siglar v. Hightower</u>, 112 F.3d 191, 193 (5th Cir. 1997); <u>Davis v. District of Columbia</u>, 158 F.3d 1342, 1347 (D.C. Cir. 1998) (§ 1997e(e) restriction on prisoner's recovery for mental and emotional injuries does not offend the Constitution).

Plaintiff's complaint does <u>not</u> allege that he has suffered physical injury as a result of the alleged actions of the defendants.  Rather, he seeks damages for what he refers to as the "punishment and emotional injury." <u>See</u> Complaint, pages 9-10.   As a result, plaintiff's claims for compensatory damages under § 1983 are barred by § 1997e(e).

> **D.**    **<u>Defendants Are Immune From Official Liability.</u>**

Plaintiff's civil rights claims against the defendants, in their official capacities, must also fail because it is well-settled that a State, or in this case, a state agency, is not a "person" within the meaning of 42 U.S.C. §1983, the federal civil rights act.  As the Supreme Court has ruled:  "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants against a State for alleged deprivations of civil liberties."  <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58, 71 (1989); <u>O'Malley v. Sheriff of Worcester County</u>, 415 Mass. 132, 140-42 (1993). Accordingly, the defendants, in their official capacities, are immune from suit for any alleged deprivation of plaintiff's rights under 42 U.S.C. § 1983.

## XI.    <u>THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.</u>

The defendants are public officers, and are thus entitled to at least a qualified immunity from a suit for damages in their individual capacities.   The doctrine of qualified immunity was established to protect government officials from the burdens of vindictive and

harassing lawsuits which may inhibit them from properly exercising their powers, while, at the same time, protecting private citizens from oppressive or malicious government action. Knight v. Mills, 836 F.2d 659, 665 (1st Cir. 1987) (citing Scheuer v. Rhodes, 416 U.S. 232, 238 (1974).

The Supreme Court reasoned that, "officials can act without fear of harassing litigation only if they reasonably can anticipate when their conduct may give rise to liability for damages." Davis v. Scherer, 468 U.S. 182, 195 (1984). The official "is not expected to determine the manner in which the law's grey areas will be clarified and defined." Borucki v. Ryan, 827 F.2d 836, 839 (1st Cir. 1987). Officials will succeed in their defense "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated," Anderson v. Creighton, 483 U.S. 635, 646 (1987). "[A] court must determine whether an alleged right was established with sufficient particularity that a reasonable official could anticipate that his actions would violate that right." Borucki, supra at 383 (citing Anderson v. Creighton, supra at 646).

The defendants cannot be held liable for damages to the plaintiff as a result of discretionary acts in the performance of their official duties where the acts did not constitute violations of a clearly established law at the time they acted. The actions of all defendants in the instant case were objectively reasonable, entitling them to qualified immunity. As set forth above, plaintiff received all the process he was due during his disciplinary hearings. Because each defendant is entitled to qualified immunity, plaintiff's Complaint must be dismissed in its entirety.

## CONCLUSION

For the aforementioned reasons, the defendants are entitled to dismissal and/or

summary judgment on the counts and claims identified above.

Respectfully submitted,

NANCY ANKERS WHITE
Special Assistant Attorney General

DATED:  June 10, 2005          /s/ Jody T. Adams
_____

Jody T. Adams, Counsel
B.B.O. # 633795
Department of Correction
Legal Division
70 Franklin Street, Suite 600
Boston, MA  02110-1300
(617) 727-3300 ext. 169

## CERTIFICATE OF SERVICE

I hereby state under the pains and penalties of perjury that I did this day serve a photocopy of the above document upon plaintiff (pro se) via first class mail.

/s/ Jody T. Adams

Date: 6/10/05          _____

Jody T. Adams, Counsel

CLOSED

## United States District Court

## District of Massachusetts (Boston)

## CIVIL DOCKET FOR CASE #: 1:01-cv-11804-RCL

Ingram v. Canavan, et al
Assigned to: Judge Reginald C. Lindsay
Demand: $770000
Cause: 42:1983 Prisoner Civil Rights

Date Filed: 10/18/2001
Jury Demand: Plaintiff
Nature of Suit: 550 Prisoner: Civil Rights
Jurisdiction: Federal Question

**Plaintiff**

**Larry D. Ingram**          represented by   **Larry D. Ingram**
Bay State Correctional Center (BSCC)
P.O. Box 73
Norfolk, MA 02050-0073
PRO SE

**Kurt W. Hemr**
Skadden, Arps, Slate, Meagher & Flom LLP (BOS)
Suite 3100
One Beacon Street
Boston, MA 02108
617-573-4800
Fax: 617-573-4822
Email: khemr@skadden.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**James T. Canavan**          represented by   **Jody T. Adams**
*Individual and Official*
*Capacity*▓▓▓▓▓▓

Department of Correction
70 Franklin Street
Suite 600



EXHIBIT
A

Boston, MA 02110
617-727-3300
Fax: 617-727-7403
Email: jtadams@doc.state.ma.us
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Judy F. Sharpe**                      represented by    **Jody T. Adams**
*Individual and Official Capacity*                        (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*


**Defendant**

**Hassan Osman**                        represented by    **Jody T. Adams**
*Individual and Official Capacity*                        (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*


**Defendant**

**Chris Morelli**                       represented by    **Jody T. Adams**
*Individual and Official Capacity*                        (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*


**Defendant**

**Paul F. Glynn**                       represented by    **Jody T. Adams**
*Individual and Official Capacity*                        (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*


**Defendant**

**Eugene Benevides**                    represented by    **Jody T. Adams**
*Individual and Official Capacity*                        (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**Paul Labouliere**              represented by  **Jody T. Adams**
*Individual and Official Capacity*                (See above for address)
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*

**Defendant**

**James Grace**                 represented by  **Jody T. Adams**
*Individual and Official Capacity*                (See above for address)
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*

**Defendant**

**Peter Gaw**                   represented by  **Jody T. Adams**
*Individual and Official Capacity*                (See above for address)
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*

**Defendant**

**Robert White**                represented by  **Jody T. Adams**
*Individual and Official Capacity*                (See above for address)
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*

**Defendant**

**Chris Donovan**               represented by  **Jody T. Adams**
*Individual and Official Capacity*                (See above for address)
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*

**Defendant**

**Frank Murray**                represented by  **Jody T. Adams**
*Individual and Official Capacity*                (See above for address)
                                                 *LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Defendant**

**Joseph Casey**
*Individual and Official Capacity*

represented by **Jody T. Adams**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**James Matesanz**
*Individual and Official Capacity*

represented by **Jody T. Adams**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**David Henault**
*Individual and Official Capacity*

represented by **Jody T. Adams**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**dall**

**Interested Party**

**United States of America**

represented by **Jeffrey D. Kahn**
Trial Attorneys
Civil Division
United States Department of
Justice
P.O. Box 883
20 Massachusetts Ave., N.W.;
Room 7223
Washington, DC 20044
202-514-3716
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Theodore C. Hirt**
U.S. Department of Justice
Civil Division
901 E Street, N.W. Room 1030
P.O.Box 883
Washington, DC 20044
202-514-3378
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Intervenor**

**United States of America**                    represented by  **Jeffrey D. Kahn**
Trial Attorneys
United States Department of
Justice
P.O. Box 883
20 Massachusetts Ave., N.W.;
Room 7223
Washington, DC 20044
202-514-3716
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/18/2001 | 1 | Complaint filed. Case assigned to Judge: Lindsay. Receipt #: 34563 Amount:$ 150.00. Fee Status: paid (Exhibits were not scanned) (sat) Modified on 10/24/2001 (Entered: 10/24/2001) |
| 10/18/2001 | 2 | Motion by Larry D. Ingram for service by U.S. Marshalls without fees , filed. (sat) (Entered: 10/24/2001) |
| 10/18/2001 |  | Summons issued for James T. Canavan, Judy F. Sharpe, Hassan Osman, Chris Morelli, Paul F. Glynn, Eugene Benevides, Paul Labouliere, James Grace, Peter Gaw, Robert White, Chris Donovan, Frank Murray, Joseph Casey, James Matesanz, David Henault-mailed to plaintiff along with Rule 4.1, USM 285 forms and US marshal service information letter. (scj) (Entered: |

| | | 11/14/2001) |
|---|---|---|
| 11/13/2001 | 3 | Judge Reginald C. Lindsay. Order entered granting [2-1] motion for service by U.S. Marshalls without fees.... it is further ORDERED, the United States marshal serve a copy of the complaint, summons and this order upon the defendants as directed by the plaintiff with all costs of service to be advanced by the United States. [EOD Date 11/14/01]. Copy sent to counsel on 11/14/01. (sat) (Entered: 11/14/2001) |
| 12/04/2001 | 4 | Return of service executed as to Judy F. Sharpe with service on 12/1/01 filed. Answer due on 12/21/01 for Judy F. Sharpe (sat) (Entered: 12/07/2001) |
| 12/04/2001 | 5 | Return of service executed as to James T. Canavan with service on 12/1/01 filed. Answer due on 12/21/01 for James T. Canavan (sat) (Entered: 12/07/2001) |
| 12/04/2001 | 6 | Return of service executed as to Hassan Osman with service on 12/1/01 filed. Answer due on 12/21/01 for Hassan Osman (sat) (Entered: 12/07/2001) |
| 12/04/2001 | 7 | Return of service executed as to Chris Morelli with service on 12/1/01 filed. Answer due on 12/21/01 for Chris Morelli (sat) (Entered: 12/07/2001) |
| 12/04/2001 | 8 | Return of service executed as to Paul Labouliere with service on 12/1/01 filed. Answer due on 12/21/01 for Paul Labouliere (sat) (Entered: 12/07/2001) |
| 12/04/2001 | 9 | Return of service executed as to Robert White with service on 12/1/01 filed. Answer due on 12/21/01 for Robert White (sat) (Entered: 12/07/2001) |
| 12/04/2001 | 10 | Return of service executed as to Peter Gaw with service on 12/1/01 filed. Answer due on 12/21/01 for Peter Gaw (sat) (Entered: 12/07/2001) |
| 12/04/2001 | 11 | Return of service executed as to Frank Murray with service on 12/1/01 filed. Answer due on 12/21/01 for Frank Murray (sat) (Entered: 12/07/2001) |
| 12/04/2001 | 12 | Return of service executed as to Chris Donovan with service on 12/1/01 filed. Answer due on 12/21/01 for Chris Donovan (sat) (Entered: 12/07/2001) |
| 12/04/2001 | 13 | Return of service executed as to Joseph Casey with service on 12/1/01 filed. Answer due on 12/21/01 for Joseph Casey (sat) (Entered: 12/07/2001) |

| 12/04/2001 | 14 | Return of service executed as to James Matesanz with service on 12/1/01 filed. Answer due on 12/21/01 for James Matesanz (sat) (Entered: 12/07/2001) |
|---|---|---|
| 12/04/2001 | 15 | Return of service executed as to David Henault with service on 12/1/01 filed. Answer due on 12/21/01 for David Henault (sat) (Entered: 12/07/2001) |
| 12/07/2001 | 16 | Return of service executed as to James Grace with service on 12/5/01 filed. Answer due on 12/25/01 for James Grace (sat) (Entered: 12/10/2001) |
| 12/07/2001 | 17 | Return of service executed as to Eugene Benevides with service on 12/5/01 filed. Answer due on 12/25/01 for Eugene Benevides (sat) (Entered: 12/10/2001) |
| 12/28/2001 | 18 | Motion by James T. Canavan, Judy F. Sharpe, Hassan Osman, Chris Morelli, Paul F. Glynn, Eugene Benevides, Paul Labouliere, James Grace, Peter Gaw, Robert White, Chris Donovan, Frank Murray, Joseph Casey, James Matesanz, David Henault to waive Local Rule 7.1 (A)(2) , filed; c/s. (sat) (Entered: 12/28/2001) |
| 12/28/2001 | 19 | Motion by James T. Canavan, Judy F. Sharpe, Hassan Osman, Chris Morelli, Paul F. Glynn, Eugene Benevides, Paul Labouliere, James Grace, Peter Gaw, Robert White, Chris Donovan, Frank Murray, Joseph Casey, James Matesanz, David Henault to extend time to February 28, 2002 to file a responsive pleading , filed; c/s. (sat) (Entered: 12/28/2001) |
| 01/17/2002 | | Judge Reginald C. Lindsay . Endorsed Order entered granting [19-1] motion to extend time to February 28, 2002 to file a responsive pleading, RESET answer due for 2/28/02 for David Henault, for James Matesanz, for Joseph Casey, for Frank Murray, for Chris Donovan, for Robert White, for Peter Gaw, for James Grace, for Paul Labouliere, for Eugene Benevides, for Paul F. Glynn, for Chris Morelli, for Hassan Osman, for Judy F. Sharpe, for James T. Canavan . [EOD Date 1/17/02]. Copy sent to counsel on 1/17/02. (sat) (Entered: 01/17/2002) |
| 01/17/2002 | | Judge Reginald C. Lindsay. Endorsed Order entered granting [18-1] motion to waive Local Rule 7.1 (A)(2) . [EOD Date 1/17/02] Copy sent to counsel on 1/17/02. (sat) (Entered: 01/17/2002) |
| 01/23/2002 | 20 | Letter by Larry D. Ingram dated: January 15, 2002 to: Clerk Jenness re: service of summons, filed. (sat) (Entered: 01/28/2002) |

| 02/14/2002 | 21 | Judge Reginald C. Lindsay. Order entered returning Plaintiff's motion for leave to amend the complaint. to Larry D. Ingram, Pro Se. The certificate of service does not conform to L.R. 5.2(b)(2). Copy sent to counsel on 2/14/02. (sat) (Entered: 02/14/2002) |
| --- | --- | --- |
| 02/20/2002 | 22 | Motion by Larry D. Ingram for leave to file amended complaint to add two defendants , filed; c/s. (sat) (Entered: 02/20/2002) |
| 02/25/2002 | 23 | Letter by Larry D. Ingram dated: February 22, 2002 to: Larry D. Ingram re: requesting copy of docket sheet, filed. Copy sent to Larry Ingram on 2/26/02. (sat) Modified on 03/08/2002 (Entered: 02/26/2002) |
| 02/28/2002 | 24 | Motion by dall to waive Local Rule 7.1(A)(2) , filed; c/s. (sat) (Entered: 02/28/2002) |
| 02/28/2002 | 25 | Motion by dall to dismiss , and/or for summary judgment , filed; c/s. (sat) (Entered: 02/28/2002) |
| 02/28/2002 | 26 | Motion by dall for leave to file memorandum in excess of 20 pages , filed; c/s. (sat) (Entered: 02/28/2002) |
| 03/01/2002 | | Judge Reginald C. Lindsay. Endorsed Order entered granting [24-1] motion to waive Local Rule 7.1(A)(2) . [EOD Date 3/1/02]. Copy sent to counsel on 3/1/02. (sat) (Entered: 03/01/2002) |
| 03/07/2002 | 27 | Motion by Larry D. Ingram to strike [25-1] motion to dismiss, [25-2] motion for summary judgment, memorandum in support and exhibits , filed; c/s. (sat) (Entered: 03/07/2002) |
| 03/07/2002 | 28 | Motion by Larry D. Ingram to extend time to April 1, 2002 to respond to motion to dismiss and/or Summary Judgment , filed; c/s. (sat) (Entered: 03/07/2002) |
| 03/14/2002 | 29 | Response by dall in opposition to [27-1] motion to strike [25-1] motion to dismiss, [25-2] motion for summary judgment, memorandum in support and exhibits, filed; c/s. (sat) (Entered: 03/15/2002) |
| 03/15/2002 | | Judge Reginald C. Lindsay. Endorsed Order entered denying [22-1] motion for leave to file amended complaint to add two defendants....Motion denied without prejudice because the moving party did not comply with Local Rule 15.1. [EOD Date 3/15/02]. Copy sent to counsel on 3/15/02. (proposed supplemental complaint was returned with this endorsement to plaintiff). (sat) (Entered: 03/15/2002) |
| 03/20/2002 | | Judge Reginald C. Lindsay. Endorsed Order entered denying |

| | | |
|---|---|---|
| | | [27-1] motion to strike [25-1] motion to dismiss, [25-2] motion for summary judgment, memorandum in support and exhibits cc/cl. [EOD Date 3/20/02] (lmh) (Entered: 03/20/2002) |
| 03/27/2002 | | Judge Reginald C. Lindsay . Endorsed Order entered granting [28-1] motion to extend time to April 1, 2002 to respond to motion to dismiss and/or Summary Judgment, Response to motion reset to 4/1/02 for [25-1] motion to dismiss, reset to 4/1/02 for [25-2] motion for summary judgment . [EOD Date 3/27/02]. Copy sent to counsel on 3/27/02. (sat) (Entered: 03/27/2002) |
| 03/29/2002 | 30 | Motion by Larry D. Ingram for reconsideration for leave to file supplemental complaint , filed; c/s. (sat) (Entered: 04/03/2002) |
| 04/04/2002 | 32 | Motion by Larry D. Ingram to strike portions of proponents affidavit , filed; c/s. (sat) (Entered: 04/09/2002) |
| 04/04/2002 | 33 | Response by Larry D. Ingram in opposition to [25-1] motion to dismiss, filed; c/s. (sat) (Entered: 04/09/2002) |
| 04/04/2002 | 34 | Declaration of Larry D. Ingram in oppostion to [25-1] motion to dismiss, [25-2] motion for summary judgment , filed. (sat) Modified on 04/12/2002 (Entered: 04/09/2002) |
| 04/04/2002 | 35 | Motion by Larry D. Ingram for leave to file memorandum in excess of 20 pages in opposition to motion to dismiss and or summary judgment , filed; c/s. (sat) (Entered: 04/09/2002) |
| 04/08/2002 | | Judge Reginald C. Lindsay . Endorsed Order entered granting [26-1] motion for leave to file memorandum in excess of 20 pages. [EOD Date 4/9/02]. Copy sent to counsel on 4/9/02. (sat) (Entered: 04/09/2002) |
| 04/08/2002 | 31 | Memorandum by dall in support of [25-1] motion to dismiss, [25-2] motion for summary judgment, filed; c/s. (sat) (Entered: 04/09/2002) |
| 04/09/2002 | 36 | Copy of Letter by Larry D. Ingram dated: April 5, 2002 to: Marshal McGillivray re: Request for Service of Process of the one outstanding Summons and Complaint by April 11, 2002 which is the deadline for the 120 day deadline for service of process. (scj) (Entered: 04/09/2002) |
| 04/11/2002 | 37 | Certificate of service by Larry D. Ingram re: [34-1] affidavit, filed. (sat) (Entered: 04/12/2002) |
| 04/11/2002 | 38 | Motion by Larry D. Ingram to extend time show cause for failure to make service of process within the 120 day period , filed; c/s. (sat) (Entered: 04/12/2002) |

| 04/11/2002 | 39 | Affidavit of Larry D. Ingram re: [38-1] motion to extend time show cause for failure to make service of process within the 120 day period, filed; c/s. (sat) (Entered: 04/12/2002) |
|---|---|---|
| 04/17/2002 | 40 | Letter by Larry D. Ingram dated: April 15, 2002 to: Susan Jenness re: requesting copy of docket sheet, filed. (copy sent on 4/23/02) (sat) (Entered: 04/23/2002) |
| 04/23/2002 | | Terminated document: denying [25-1] motion to dismiss, denying [25-2] motion for summary judgment Requested by lmh. (lmh) (Entered: 04/23/2002) |
| 04/25/2002 | | Judge Reginald C. Lindsay . Endorsed Order entered granting [35-1] motion for leave to file memorandum in excess of 20 pages in opposition to motion to dismiss and or summary judgment. [EOD Date 4/26/02]. Copy sent to counsel on 4/26/02. (sat) (Entered: 04/26/2002) |
| 04/25/2002 | 41 | Memorandum by Larry D. Ingram in opposition to [25-1] motion to dismiss, [25-2] motion for summary judgment, filed; c/s. (sat) (Entered: 04/26/2002) |
| 04/26/2002 | | Judge Reginald C. Lindsay. Endorsed Order entered denying [30-1] motion for reconsideration for leave to file supplemental complaint. [EOD Date 4/26/02]. Copy sent to counsel on 4/26/02. (Supplemental complaint sent back to Mr. Ingram with endorsement) (sat) (Entered: 04/26/2002) |
| 05/03/2002 | | Judge Reginald C. Lindsay. Endorsed Order entered granting in part, denying in part [32-1] motion to strike portions of proponents affidavit. Motion allowed as to paragraphs 2, 3 and 4 of the affidavit cc/cl. [EOD Date 5/6/02] (lmh) (Entered: 05/06/2002) |
| 05/08/2002 | | Judge Reginald C. Lindsay. Endorsed Order entered granting [38-1] motion to extend time show cause for failure to make service of process within the 120 day period....Motion allowed. Time enlarged to May 28, 2002. [EOD Date 5/9/02]. Copy sent to counsel on 5/9/02. (sat) (Entered: 05/09/2002) |
| 05/24/2002 | 44 | Return of service executed as to Paul F. Glynn with service on 5/24/02 filed. Answer due on 6/13/02 for Paul F. Glynn (ms) (Entered: 05/30/2002) |
| 05/28/2002 | 42 | Motion by Larry D. Ingram to show cause , filed. c/s (kf) (Entered: 05/29/2002) |
| 05/28/2002 | 43 | Affidavit of Larry D. Ingram , re: [42-1] motion to show cause , filed. c/s (kf) (Entered: 05/29/2002) |

| | | |
|---|---|---|
| 05/30/2002 | | Judge Reginald C. Lindsay . Endorsed Order entered granting [42-1] motion to show cause. [EOD Date 6/4/02] Notice sent to counsel. (kf) (Entered: 06/04/2002) |
| 06/07/2002 | 45 | Notice of interlocutory appeal of [0-0] endorsed order filed by Larry D. Ingram. Appealing: [0-0] endorsed order re: denying motion for reconsideration for leave to file a supplemental complaint on 4/26/02. Appeal record due on 6/22/02 (sat) (Entered: 06/11/2002) |
| 06/07/2002 | 46 | Declaration of Larry D. Ingram re: timely notice of appeal, filed. (sat) (Entered: 06/11/2002) |
| 06/07/2002 | 47 | Letter by Larry D. Ingram by Larry D. Ingram dated: June 5, 2002 to: Susan Jenness re: enclising copy of process receipt and return form, questioning whether the form of process was legal, filed. (sat) (Entered: 06/11/2002) |
| 06/11/2002 | | Copy of Notice of Appeal mailed to all counsel of record. Transcript Notice and Order form provided to appellant's counsel. (sat) (Entered: 06/11/2002) |
| 06/11/2002 | | Certified copy of docket and record on appeal forwarded to U.S. Court of Appeals re: [45-1] interdistrict appeal. (jr) (Entered: 06/11/2002) |
| 06/12/2002 | 48 | Motion by Paul F. Glynn to dismiss , and/or for summary judgment , filed; c/s. (sat) (Entered: 06/12/2002) |
| 06/13/2002 | 50 | Judge Reginald C. Lindsay. Order terminating pending motions during the Interlocutory Appeal entered cc/cl. [EOD Date 6/18/02] (lmh) (Entered: 06/18/2002) |
| 06/13/2002 | | Terminated document: [48-1] motion to dismiss, [48-2] motion for summary judgment, [25-1] motion to dismiss, [25-2] motion for summary judgment (see docket #50) Requested by lmh. (lmh) (Entered: 06/18/2002) |
| 06/17/2002 | 49 | Response by Larry D. Ingram in opposition to [48-1] motion to dismiss, [48-2] motion for summary judgment, filed; c/s. (sat) (Entered: 06/18/2002) |
| 06/18/2002 | | US Court of Appeals Case Number assigned to [45-1] interdistrict appeal: USCA NUMBER: 02-1722. (jr) (Entered: 06/18/2002) |
| 08/01/2002 | 51 | Motion by Larry D. Ingram for leave to file appeal in forma pauperis , filed; c/s. (sat) (Entered: 08/01/2002) |
| 08/01/2002 | 52 | Motion by Larry D. Ingram for leave of court to file an appeal in |

| | | |
|---|---|---|
| | | forma pauperis , filed; c/s. (sat) (Entered: 08/01/2002) |
| 08/01/2002 | 53 | Affidavit of Larry D. Ingram re: [51-1] motion for leave to file appeal in forma pauperis, filed; c/s. (sat) (Entered: 08/01/2002) |
| 08/28/2002 | 54 | Order of the US Court of Appeals re: [45-1] interdistrict appeal; The appellant listed above is a prisoner seeking to appeal in forma pauperis and has applied to proceed without payment of the $105 filing fee under the Prison Litigation Reform Act (PLRA), 28 U.S.C. 1915(a)(2). Appellant has completed and filed a consent form permitting appropriate prison officials to calculate and collect in installments the $105 filing fee from appellant's prison trust account in accordance with the terms of 28 U.S.C. 1915 (b)(1) and (2). See Order #54 for further details. (jr) (Entered: 08/28/2002) |
| 09/04/2002 | | Judge Reginald C. Lindsay. Endorsed Order entered mooting [52-1] motion for leave of court to file an appeal in forma pauperis.....Motion terminated as Moot. See Order of Court issued by Court of Appeals on August 28, 2002. [EOD Date 9/4/02]. Copy sent to counsel on 9/4/02. (sat) (Entered: 09/04/2002) |
| 09/04/2002 | | Judge Reginald C. Lindsay. Endorsed Order entered mooting [51-1] motion for leave to file appeal in forma pauperis.....Motion terminated as Moot. See Order of Court issued by Court of Appeals on August 28, 2002. [EOD Date 9/4/02]. Copy sent to counsel on 9/4/02. (sat) (Entered: 09/04/2002) |
| 09/24/2002 | 55 | Order of the US Court of Appeals re: [45-1] interdistrict appeal; We have considered the appellant's response to our order to show cause. For the reasons stated in that order, dated August 7, 2002, we dismiss for lack of jurisdiction. (jr) Modified on 09/26/2002 (Entered: 09/26/2002) |
| 10/01/2002 | 56 | RENEWED Motion by James T. Canavan, dall to dismiss , and/or for summary judgment , filed; c/s. (sat) (Entered: 10/01/2002) |
| 10/02/2002 | | PARTIAL Filing Fee Paid. Receipt #: 42243; Amount:$ 28.20. (sat) (Entered: 10/02/2002) |
| 10/03/2002 | | Transmitted supplemental record on appeal: re: appeal. Document numbers: filing fee paid receipt (jr) (Entered: 10/03/2002) |
| 10/09/2002 | 57 | RENEWED Response by Larry D. Ingram in opposition to [56-1] motion to dismiss, [56-2] motion for summary judgment, |

| | | |
|---|---|---|
| | | filed; c/s. (sat) (Entered: 10/10/2002) |
| 10/29/2002 | 58 | Mandate of US Court of Appeals re: [45-1] interdistrict appeal dismissing [45-1] interdistrict appeal. (jr) (Entered: 10/29/2002) |
| 10/29/2002 | | Record on appeal returned from U.S. Court of Appeals, re: Interlocutory appeal. (jr) (Entered: 10/29/2002) |
| 01/15/2003 | 59 | Letter by Larry D. Ingram dated: 1/13/03 to: Clerk re: copy of docket filed. (seh) (Entered: 01/15/2003) |
| 01/15/2003 | | Docket sheet sent to Larry D. Ingram. (sat) (Entered: 01/15/2003) |
| 10/07/2003 | 60 | Judge Reginald C. Lindsay : ORDER entered Under the Provisions of Title 28, U.S.C. Sec. 1915 Appointing Kurt W. Hemr Counsel for the Plaintiff re: Motion to Dismiss. Copy sent to counsel on 10/9/03.(Tebo, Susan) (Entered: 10/09/2003) |
| 10/28/2003 | 61 | MOTION For Copy of Brief filed by Larry D. Ingram; c/s.(Tebo, Susan) (Entered: 10/28/2003) |
| 10/29/2003 | 62 | Judge Reginald C. Lindsay : Court's Certificate to Attorney General that Constitutionality of Act of Congress Questioned entered. Copy sent to counsel on 10/29/03.(Tebo, Susan) (Entered: 10/29/2003) |
| 10/29/2003 | 63 | Copy of Letter from Honorable Reginald C. Lindsay to Hon. John Ashcroft, Attorney General enclosing with this letter the certification. (Tebo, Susan) (Entered: 10/29/2003) |
| 10/29/2003 | 64 | Copy of Letter from Honorable Reginald C. Lindsay to Hon. Michael J. Sullivan, United States Attorney enclosing with this letter the certification. (Tebo, Susan) (Entered: 10/29/2003) |
| 11/03/2003 | 65 | MOTION for Extension of Time to 11/7/03 to file memorandum in opposition to defendants' motion to dismiss by Larry D. Ingram.(Hourihan, Lisa) (Entered: 11/04/2003) |
| 11/04/2003 | | Judge Reginald C. Lindsay : Electronic ORDER entered granting 65 Motion for Extension of Time to 11/7/03 to file opposition to defendants' motion to dismiss (Hourihan, Lisa) (Entered: 11/04/2003) |
| 11/07/2003 | 66 | MEMORANDUM in Opposition re [56] Motion to Dismiss Motion for Summary Judgment filed by Larry D. Ingram (Exhibits Not Scanned). (Hourihan, Lisa) (Entered: 11/12/2003) |
| 11/13/2003 | 67 | Defendants' Supplement to Their Motion to Dismiss and/or Motion for Summary Judgment (Hourihan, Lisa) (Entered: |

| | | 11/17/2003) |
|---|---|---|
| 12/08/2003 | 68 | NOTICE of Hearing on Motion [56] Motion to DismissMotion for Summary Judgment: Motion Hearing set for 1/26/2004 03:00 PM in Courtroom 11 before Judge Reginald C. Lindsay. (Hourihan, Lisa) (Entered: 12/08/2003) |
| 12/31/2003 | 69 | Acknowledgment by the Attorney General of Challenge to the Constitutionality of an Act of Congress, filed; c/s. (Tebo, Susan) (Entered: 01/07/2004) |
| 01/16/2004 | | Judge Reginald C. Lindsay : ORDER entered regarding acknowledgment by the Attorney General of the United States of a challenge to an act of Congress. The hearing on the motion to dismiss the complaint or for summary judgment is continued to 2:00 p.m. Monday, March 8, 2004 in courtroom 11. Any brief or other paper of the Attorney general of the United States on the constitutionality of the Religious Land Use and Institutionalized Persons Act must be filed not later than January 23, 2004.(Lindsay, Reginald) (Entered: 01/16/2004) |
| 01/20/2004 | | Set/Reset Deadlines as to [56] Motion to Dismiss Motion for Summary Judgment. Motion Hearing set for 3/8/2004 02:00 PM in Courtroom 11 before Judge Reginald C. Lindsay. (Hourihan, Lisa) (Entered: 01/20/2004) |
| 01/23/2004 | 70 | UNOPPOSED MOTION to Intervene filed by United States of America.(Tebo, Susan) (Entered: 01/27/2004) |
| 01/23/2004 | 71 | UNOPPOSED MOTION for Leave to File a Memorandum of Law in Excess of Twenty Pages filed by United States of America.(Tebo, Susan) Additional attachment(s) added on 2/13/2004 (Tebo, Susan). (Entered: 01/27/2004) |
| 02/19/2004 | 72 | Judge Reginald C. Lindsay : ORDER entered granting 70 Motion to Intervene filed by United States of America, granting 71 Motion for Leave to File a Memorandum in Excess of Twenty Pages filed by United States of America (RCL, law3) (Entered: 02/19/2004) |
| 02/19/2004 | 73 | Judge Reginald C. Lindsay : PROCEDURAL ORDER entered To Invite All Parties to File Briefs on the Issue of Retroactivity(Losco, Marie) (Entered: 02/19/2004) |
| 02/19/2004 | 75 | MEMORANDUM in Support of the Constitutionality of the Religious Land Use and Institutionalized Persons Act of 2000 filed by United States of America. (Attachments: # 1 Part Two of Memorandum)(Tebo, Susan) (Entered: 02/27/2004) |

| | | |
|---|---|---|
| 02/19/2004 | 76 | APPENDIX re 75 Memorandum in Support of the Constitutionality of the Religious Land Use and Instituuionalized Persons Act of 2000 filed by United States of America. (Attachments: # 1 Unpublished Opinions and Legislative History - NOT SCANNED)(Tebo, Susan) (Entered: 02/27/2004) |
| 02/20/2004 | | Notice of correction to docket made by Court staff. Correction: Document #72 corrected because: Should not have received a number-it is an electronic order (Tebo, Susan) (Entered: 02/20/2004) |
| 02/26/2004 | 74 | BRIEF on the Retroactivity of the Religious Land Use and Institutionalized Persons Act of 2000 filed by James T. Canavan, dall; c/s. (Attachments: # 1 Exhibit 1 & 2 (NOT SCANNED))(Tebo, Susan) (Entered: 02/26/2004) |
| 03/01/2004 | 77 | UNOPPOSED MOTION for Leave to File Additional Authority filed by Larry D. Ingram; c/s. (Attachments: # 1 Exhibit A thru C (NOT SCANNED))(Tebo, Susan) (Entered: 03/02/2004) |
| 03/01/2004 | 78 | Submission on Retroactivity in Opposition to Defendants' Motion to Dismiss filed by Larry D. Ingram; c/s. (Tebo, Susan) (Entered: 03/02/2004) |
| 03/01/2004 | 79 | BRIEF by United States of America in Response to the Court's Invitation for Briefs on the Issue of Retroactivity, filed; c/s. (Tebo, Susan) (Entered: 03/02/2004) |
| 03/03/2004 | 80 | Plaintiff's AFFIDAVIT in Support of the Issue of Retroactivity of the Religious Land Use and Institutionalized Persons Act, filed; c/s. (Tebo, Susan) (Entered: 03/03/2004) |
| 03/04/2004 | 81 | Judge Reginald C. Lindsay : ORDER entered ORDER entered returning Defendants' Reply to Plaintiff's Submission on Retroactivity in Opposition to Defendants' Motion to Dismiss to Jody T. Adams. cc/cl.(Tebo, Susan) (Entered: 03/04/2004) |
| 03/04/2004 | 82 | UNOPPOSED MOTION for Leave to File Reply to Plaintiff's Submission on Retroactivity in Opposition to Defendants' Motion to Dismiss filed by Eugene Benevides, James T. Canavan, Joseph Casey, Chris Donovan, Peter Gaw, Paul F. Glynn, James Grace, David Henault, Paul Labouliere, James Matesanz, Chris Morelli, Frank Murray, Hassan Osman, Judy F. Sharpe, Robert White; c/s. (Attachments: # 1 Reply - Exhibit 1 thru 4 - NOT SCANNED)(Tebo, Susan) (Entered: 03/04/2004) |
| 03/04/2004 | | Judge Reginald C. Lindsay : ELECTRONIC ORDER entered granting 82 Motion for Leave to File Reply to Plaintiff's |

| | | |
|---|---|---|
| | | Submission on Retroactivity in Opposition to Defendants' Motion to Dismiss. cc/cl. (Tebo, Susan) (Entered: 03/04/2004) |
| 03/04/2004 | 83 | REPLY by Eugene Benevides, James T. Canavan, Joseph Casey, Chris Donovan, Peter Gaw, Paul F. Glynn, James Grace, David Henault, Paul Labouliere, James Matesanz, Chris Morelli, Frank Murray, Hassan Osman, Judy F. Sharpe, Robert White to 78 Brief - Plaintiff's Submission on Retroactivity in Opposition to Defendants' Motion to Dismiss; c/s.. (Attachments: # 1 Exhibit 1 thru 4 - NOT SCANNED)(Tebo, Susan) (Entered: 03/04/2004) |
| 03/24/2004 | 84 | Judge Reginald C. Lindsay : ORDER entered granting [56] Motion to Dismiss and/or Summary Judgment. Because I have granted summary judgment on all of the plaintiff's claims, I direct the clerk to enter judgment for the defendants, dismissing this action for reasons stated in the accompanying memorandum. (Losco, Marie) (Entered: 03/24/2004) |
| 03/29/2004 | 85 | Judge Reginald C. Lindsay : ORDER entered JUDGMENT in favor of defendants against plaintiff(Hourihan, Lisa) (Entered: 03/29/2004) |
| 03/29/2004 | | Civil Case Terminated. (Hourihan, Lisa) (Entered: 03/29/2004) |
| 04/23/2004 | 86 | NOTICE of Appeal by Larry D. Ingram (Stanhope, Don) (Entered: 04/29/2004) |
| 04/23/2004 | 87 | DECLARATION OF TIMELY NOTICE OF APPEAL re 86 Notice (Other) by Larry D. Ingram. (Stanhope, Don) (Entered: 04/30/2004) |
| 04/23/2004 | 91 | NOTICE OF APPEAL by Larry D. Ingram. $ 255, receipt number 55758 NOTICE TO COUNSEL: A Transcript Report/Order Form, which can be downloaded from the First Circuit Court of Appeals web site at http://www.ca1.uscourts.gov/clerks/transcript.htm MUST be completed and submitted to the Court of Appeals. Appeal Record due by 5/13/2004. (Stanhope, Don) (Entered: 06/16/2004) |
| 04/30/2004 | 88 | Certified and Transmitted Record on Appeal to US Court of Appeals re 45 Notice of Interlocutory Appeal (Ramos, Jeanette) (Entered: 04/30/2004) |
| 05/03/2004 | 89 | USCA Case Number 04-1804 for 86 Notice of Appeal filed by Larry D. Ingram. (Ramos, Jeanette). (Entered: 05/06/2004) |
| 05/10/2004 | | Filing fee: $ 255.00, receipt number 55758 regarding Notice of |

| | | |
|---|---|---|
| | | Appeal (Stanhope, Don) (Entered: 05/11/2004) |
| 06/03/2004 | 90 | Letter to Clerk Donovan from Larry D. Ingram. (Stanhope, Don) (Entered: 06/07/2004) |
| 06/16/2004 | | Notice of correction to docket made by Court staff. Correction: Document #86 corrected because: Notice of Appeal was improperly linked, therefore entry was re-docketed and the correct entry is now Document #91 (Stanhope, Don) (Entered: 06/16/2004) |
| 06/21/2004 | 92 | Certified and Transmitted Record on Appeal to US Court of Appeals re 91 Notice of Appeal, (Ramos, Jeanette) (Entered: 06/21/2004) |
| 06/21/2004 | 93 | USCA Case Number 04-1575 for 91 Notice of Appeal, filed by Larry D. Ingram. (Ramos, Jeanette). (Entered: 06/21/2004) |
| 07/23/2004 | 94 | MANDATE of USCA as to 86 Notice of Appeal filed by Larry D. Ingram. Appeal No. 04-1575 having been also docketed under Appeal No. 04-1804, It is hereby ordered that Appeal No. 04-1804 be administratively closed. SO ORDERED. (Ramos, Jeanette) (Entered: 07/28/2004) |
| 07/29/2004 | 95 | Supplemental Record on Appeal transmitted to US Court of Appeals re 91 Notice of Appeal, documents numbered 33, 34, 37, 41, 66, 77 (Ramos, Jeanette) (Entered: 07/29/2004) |
| 04/20/2005 | 96 | MANDATE of USCA as to 91 Notice of Appeal, filed by Larry D. Ingram. We have reviewed the parties' briefs and the record on appeal. Upon de novo review, essentially for the reasons stated in the district court's memorandum and order of March 24, 2004, we AFFIRM the district court judgment of March 29, 2004, granting summary judgment in favor of the defendants. (Ramos, Jeanette) (Entered: 04/20/2005) |
| 04/20/2005 | | Appeal Record Returned: 91 Notice of Appeal, (Ramos, Jeanette) (Entered: 04/20/2005) |

11-20-01

**BAY STATE CORRECTIONAL CENTER**
**MASSACHUSETTS DEPARTMENT OF CORRECTION**
**DISCIPLINARY REPORT**

Inmate: Larry Ingram    Commit #: W38220    Housing Unit: Mod 221A

Date: November 20, 2001    D-Report #: BS-01-0135

Offense: _____    Code #: #1.2.8.33

Reviewed by Disciplinary Officer on ____11/23/01____

Disciplinary Report Designated as Minor ____ Major X on 11/23/01

**Referred to District Attorney:**    Yes _____    No _____

**Referred to DDU Special Hearing Officer:**    Yes _____    No _____

**DESCRIPTION OF OFFENSE:**
On November 20, 2001 at approximately 8:10 am, I, Sgt. Paul F. Glynn, while doing the mail, spoke with inmate Larry Ingram W38220 and instructed him to report to room A211 at 10:00 am.

At approximately 8:10 am I instructed inmate Ingram twice to report to room A211 at 10:00 am. I informed inmate Ingram that he should not be late or early, but should arrive at 10:00 am. At this time he stated "ok". As inmate Ingram walked away he stated "Sgt. Glynn, 10:00" and I said "Yes, 10:00".

Inmate Ingram did not show up at A211 at 10:00 am, as instructed. At approximately 10:20 am I called Mod 2 and spoke with Officer Johnson who informed me that inmate Ingram had not signed out of his unit. At that time I informed Captain Donovan that the inmate had not shown up. I was instructed by Captain Donovan to escort the inmate to the Inner Control holding cell.

Myself and Sgt. Morelli entered Mod 2. Inmate Ingram was sitting in the day room reading a book. We called inmate Ingram into the Mod 2 Sergeant's office. I asked inmate Ingram why he did not report to room A211 at 10:00 am, as instructed. He replied in a surly tone "Oh, I forgot". Inmate was placed in restraints by myself and Sgt. Morelli and escorted to the Inner Control holding cell.

Has the Inmate been placed on Awaiting Action Status? Yes:____ No:____

Reporting Staff Persons's Signature: _Paul F. Glynn_

Date: 11/20/01    Shift: 7X3    Days Off: S, S

Shift Commander's Signature: _____ Date: 11/20/01

Disciplinary Officer's Signature: _Nancy Hall_ Date: 11/23/01

Finding and Sanction, If Any: Guilty 5 days room detention
(Transcribed from disciplinary hearing if major matter)

Appeal Results appeal denied

Reviewing Authority: _James Matesanz_ Date: 1/3/01

August, 2000    ATTACHMENT A - BSCC 430

EXHIBIT B

## DEPARTMENT OF CORRECTION
## CODE OF OFFENSES

1. Disobeying an order of, lying to, or insolence toward a staff member.
2. Violating any departmental rule or regulation, or any other rule, regulation, or condition of an institution or community based program.
3. Failure to keep one's person or one's quarters in accordance with institutional rules.
4. Being out of place.
5. Unexcused absence from, willful failure to properly perform, or refusal to accept a work assignment, housing assignment or program.
6. Counterfeiting, forging, misrepresentation on or unauthorized reproduction of any document, article of identification, money, security or official paper.
7. Tampering with or blocking any locking device, door, gate or window.
8. Conduct which disrupts or interferes with the security or orderly running of the institution.
9. Escape or possession of escape tools.
10. Manufacture, possession, introduction, or use of any unauthorized controlled substance, alcohol beverage or associated paraphernalia.
11. Misuse of unauthorized medication, for example, the unauthorized accumulation of prescribed medication.
12. Refusal to take a breathalizer test or to provide a urine specimen.
13. Gambling.
14. Participating in or encouraging a riot, work stoppage, hostage taking, or unauthorized group demonstration.
15. Possession, manufacture, or introduction of a gun, firearm, explosive, ammunition, weapon, sharpened instrument, knife or tool.
16. Killing.
17. Self mutilation.
18. Fighting with, assaulting, or threatening another person with any offense against his person or property.
19. Use of obscene, abusive or threatening language, action, or gesture to any inmate, staff member or visitor.
20. Engaging in unauthorized sexual acts with others.
21. Setting fires.
22. Willfully destroying or damaging state property or the property of anther person.
23. Unauthorized possession of property belonging to another person.
24. Possession of items, including money or currency, not authorized for retention or receipt by the inmate.
25. Giving money or any item of value to, or accepting money or any item of value from another inmate, a member of his family or his friend without authorization.
26. Stealing.
27. Giving or offering any official or staff member a bribe.
28. Giving or offering any official or staff member any item or service of value.
29. Extortion, blackmail, protection, demanding or receiving money or anything of value in return for any reason.
30. Charging or receiving money or anything of value, either directly or indirectly from another inmate, or member of his family, or any other person for rendering legal assistance.
31. Wearing or displaying colors or any type of emblem, insignia or logo suggesting possible membership or affiliation with a gang, group, party or other association whenever such wearing or display may, in the opinion of the superintendent, pose a threat to the security, good order and safety of the institution.
32. Violating any law of the Commonwealth of Massachusetts or the U.S.
33. Attempting to commit any of the above offenses, making plans to commit any of the above offenses or aiding another person to commit any of the above offenses shall be considered the same as the commission of the offenses itself.

## MASSACHUSETTS DEPARTMENT OF CORRECTION

### DISCIPLINARY HEARING

### BAYSTATE CORRECTIONAL CENTER

INMATE: _Larry Ingram_    COMMIT #: _W 38220_

D-REPORT #: _BS.01.0138_    DATE OF REPORT: _11. 20. 01_

DATE OF HEARING: _12- 6- 01_    HEARING OFFICER: _Russ Norma_

HEARING HELD AT: _BSCC_

1) THE INMATE WAS GIVEN AT LEAST 24 HOURS NOTICE OF THE HEARING (IF NO, ATTACH 24 HR WAIVER).    YES: _✓_ NO: ____

2) THE INMATE IS PRESENT BEFORE THE HEARING OFFICER (IF NOT, ATTACH REFUSAL TO APPEAR FORM)    YES: _✓_ NO: ____

3) THE INMATE HAS BEEN ADVISED OF HIS RIGHT TO REMAIN SILENT, SINCE THE OFFENSE CHARGED HAS, OR MAY BE REFERRED TO THE DISTRICT ATTORNEY.  THE INMATE HAS FURTHER BEEN ADVISED THAT HIS SILENCE MAY BE USED TO DRAW AN ADVERSE INFERENCE AGAINST HIM, BUT HIS SILENCE ALONE MAY NOT BE USED TO SUPPORT A GUILTY FINDING.    YES: _✓_ NO: ____

4) THE INMATE REQUESTED REPRESENTATION.    YES: ____ NO: _✓_

   THE INMATE IS REPRESENTED BY AN ATTORNEY/LAW STUDENT.    YES: ____ NO: _✓_

   NAME OF LEGAL REPRESENTATIVE: _____

5) THE INMATE REQUESTED THE PRESENCE OF THE REPORTING STAFF    YES: _✓_ NO: ____

   THE REPORTING STAFF PERSON IS PRESENT.    YES: _✓_ NO: ____
   IF THE INMATES REQUEST IS DENIED, INDICATE THE REASON:

   _____

6) INMATE CHALLENGES IMPARTIALITY OF THE HEARING OFFICER.    YES: ____ NO: _✓_

   IF YES, STATE REASONS WHY: _____

   _____

   _____

PAGE 2

INMATE: _Ingram_ COMMIT#: 38220 D-REPORT: _BS 01 0175_

7. WITNESS:          IF NONE REQUESTED, CHECK HERE:_____

A. REQUESTED BY INMATE:    (IF ANY WITNESS REQUEST IS DENIED, A
                          WRITTEN EXPLANATION OF THE REASONS
                          MUST BE INCLUDED AS PART OF THE
                          RECORD)

    (1) _Capt Donovan_____

    (2) _____

    (3) _____

B. REQUESTED BY HEARING OFFICER:

    (1) _____

    (2) _____

    (3) _____
**********************************************************

8. PRESENTATION OF EVIDENCE:

    A. INMATE STATEMENT

    PLEA: _Not Guilty_____

    STATEMENT IN DEFENSE (SUMMARY): _Inmate, Ingram claims he_
    _was told to report to A211 at 10 am but forgot. He states_
    _that he was not paged to report to that area. Inmate also_
    _questioned on why he was being told to report to that area_
    _to both, Capt Donovan & Sgt Glynn._____
    _____
    _____
    _____

    B. REPORTING STAFF PERSON'S STATEMENT:
    _Sgt Glynn stated that he told inmate, Ingram to report to_
    _A211 at 10am and inmate Ingram acknowledged this. This was_
    _done at 8:15am._____
    _____
    _____

PAGE 2A

INMATE: *Ingram*     COMMIT#: 38220     D-REPORT: 135 01 0135

INMATE TESTIMONY CONTINUED:

N/A

REPORTING STAFF PERSON'S TESTIMONY CONTINUED:

N/A

Witness #1: *Captain Donovan*

STATEMENT: *Captain Donovan stated that he did question inmate Ingram on where he obtained said envelopes, and did want him to report to Sgt Glynn for a more indepth interview on the situation.*

Page #3

INMATE: _INGRAM_    COMMIT# _38220_ D-REPORT: _BS U1 0135_

C:    OTHER WITNESS STATEMENTS:(IF WITNESS HAS BEEN DENIED,
                                INDICATE REASON(S) FOR DENIAL
                                IN THIS SPACE)

WITNESS-# 2 NAME: _____ N/A _____

STATEMENT: _____
_____
_____
_____
_____
_____

WITNESS # 3 NAME: _____ N/A _____

STATEMENT: _____
_____
_____
_____
_____
_____

WITNESS # 4 NAME: _____ N/A _____

STATEMENT: _____
_____
_____
_____
_____
_____

*********************************************************

C:    DOCUMENTARY EVIDENCE:

      IN ADDITION TO THE DISCIPLINARY REPORT, THE HEARING OFFICER
ACCEPTED INTO EVIDENCE THE FOLLOWING DOCUMENTS, PHYSICAL
EVIDENCE, PHOTOGRAPHS/VIDEO TAPES:
_AFFIDAVIT SUBMITTED BY INMATE INGRAM_
_COPY OF ENVELOPE SUBMITTED BY INMATE INGRAM_
_(BOTH ACCEPTED AT HEARING)_
_____

PAGE 4

INMATE: _INGRAM_    COMMIT#: _W 38220_    D-REPORT: _135 01 0135_

FINDINGS: _Guilty_

STATEMENT OF EVIDENCE RELIED UPON TO SUPPORT FINDINGS:  (CONTINUE ON PAGE 4A, IF NECESSARY)

_THE EVIDENCE USED TO SUPPORT THE FINDING WAS BASED ON THE D-REPORT, SGT GLYNN'S TESTIMONY, CAPT DONOVAN'S TESTIMONY, INMATE INGRAMS AFFADAVIT._

SANCTIONS AND RECOMMENDATIONS:

_5 DAYS ROOM DETENTION_

REASON FOR SANCTIONS (CONTINUE ON PAGE 4A, IF NECESSARY):

_THE SANCTION IS IN LINE WITH THE OFFENSE. BY INMATE INGRAMS OWN ADMISSION HE WAS INSTRUCTED BY SGT GLYNN TO REPORT TO A-211 AT 10 AM. IT IS IRRELEVANT IF THE INMATE WAS PROVED OR NOT HE WAS AWARE THAT HE WAS DUE IN A-211 AT 10 AM, AND DID NOT SHOW._

THE INMATE HAS BEEN ADVISED OF HIS RIGHT TO APPEAL THIS DECISION WITHIN 15 DAYS OF HIS RECEIPT; TO THE SUPERINTENDENT: _YES_

HEARING OFFICER: _Russ Palmer_

THE INMATE HAS BEEN ADVISED OF THE HEARING OFFICER'S DECISION AND A COPY OF THIS DOCUMENT HAS BEEN DELIVERED TO THE INMATE: _yes_

STAFF SIGNATURE: _Paul H Glynn_    DATE: _12/7/01_    TIME: _11:00_

## DEPARTMENT OF CORRECTION
### REQUEST FOR REPRESENTATION AND/OR WITNESSES

Inmate: **LARRY INGRAM**                    I.D.#: **W-38220**

Report #: **01-0135**                    Date of Hearing: _11/29/01_

You must complete this form and return it to the Disciplinary Officer within twenty-four (24) hours of receiving it.  Failure to do so may be considered as a waiver for representation and/or witnesses pursuant to 103 CMR 430.11 (5).

1. If you wish to be represented by an attorney or a law student at the disciplinary hearing regarding the attached disciplinary report, fill in the representative's name, address and phone number.

   YOU ARE RESPONSIBLE FOR CONTACTING THIS PERSON AND ARRANGING FOR REPRESENTATION (See 103 CMR 430.12)

   Name:_____

   Address:_____

   Telephone:_____

2. If you do not speak English, or do not understand the charges pending against you, you may request the assistance of a staff person.  Please check here_____.

3. Do you wish to have the Reporting Staff Person present at the Disciplinary Hearing?
                         Yes_**xxx**_____  No_____

4. Do you wish to call other witnesses at the Disciplinary Hearing?
                         Yes_**xxx**_____  No_____

   If yes, please list the names of the witnesses You wish to call and provide a brief statement of the expected testimony as required by 103 CMR 430.14 (4) (e)  (Use additional paper if necessary).

Witness:_Captain Chris Donovan_____

Testimony:_That he originally instructed me to see him, then said_ for me
           to see Sgt. Glynn.
Witness:_____

Testimony:_____

Received by:_____  Date:_____

(*)  I wish to have this hearing recorded!!!
Bay State Correctional Center

## DEPARTMENT OF CORRECTION
## REQUEST FOR EVIDENCE FORM

TO:  **LARRY INGRAM** _____     #:   **W-38220**

RE:  **01-0135** _____     Date:   **11/20/2001**

I understand that I will be served at a reasonable time prior to my disciplinary hearing with any
documents which may be used against me.  In addition to any such documents, I wish to request access
to the following document(s) prior to my hearing which I believe will show me not guilty of the alleged
infraction(s) contained in the D-Report.  I understand that, in the event the Disciplinary Officer at the
institution where the alleged disciplinary infraction(s) occurred denies my request for these documents(s),
it will be up to the Hearing Officer to decide if I am entitled to the document(s) for the reason(s) I have
stated.  The Hearing Officer will determine if the requested document(s) are relevant and not merely
repetitive and whether they are central to the preparation of my defense.  The Hearing Officer may deny
my request for documents if he/she determines that producing them would be hazardous in the
particular situation.  If the Hearing Officer decides that the document(s) need not be provided, his/her
reason(s) will be included in the final report.

I am requesting the following specific document(s):_____

_____

_____

Each document is central to my defense for the following reasons: _____

_____

_____

_____

_____

_____

Please be advised that failure to return this form to the Disciplinary Officer within 24 hours of receiving
it will be considered as a waiver of request for any evidence.

**Bay State Correctional Center**

## DEPARTMENT OF CORRECTION
## NOTICE OF DISCIPLINARY HEARING

TO:  **LARRY INGRAM**                                    I.D. #:  **W-38220**

Re: Disciplinary Report #:          **01-0135**          Date:  **11/20/2001**

You have been charged with a disciplinary offense(s) which has been referred to the Hearing
Officer for a hearing.  A description of the offense(s) is contained in the attached Disciplinary
Report.  Your disciplinary hearing has been scheduled for:

**11/29/2001**

(Date of Hearing)

If you wish to be represented, request the presence of the reporting staff person, request
other witnesses, and/or request a taped hearing, please fill out the attached Request for
Representation/Witness Form.  If you wish to request evidence, please fill out the attached
Request for Evidence Form.

Notice Served By: _____  Date: _11-24-01_  Time: _12:29 pm_

Inmate's Signature: _____  Date: _12-29-01_  Time: _12:29_

***When an inmate has been given copies of the above enumerated documents, but refuses to sign this
acknowledgement, the staff person who delivered the documents shall complete the following:

I personally delivered copies of this Notice, Disciplinary Report, Request for Representation/
Witness Form, and Request for Evidence Form to:          **LARRY INGRAM**

(Inmate's Name)

and he refused to sign.

Staff Person's Signature:_____Date:_____

Print Name:_____Time:_____

**The actual scheduling of the hearing may be delayed if circumstances require; however, you will be
notified of the actual date of the re-scheduled hearing at least twenty-four (24) hours in advance of that
date.

**Bay State Correctional Center**

DEPARTMENT OF CORRECTION
REQUEST FOR REPRESENTATION AND/OR WITNESSES

Inmate: **LARRY INGRAM**                            I.D.#: **W-38220**

Report #: **01-0135**                              Date of Hearing: _11/29/01_

You must complete this form and return it to the Disciplinary Officer within twenty-four (24) hours of
receiving it.  Failure to do so may be considered as a waiver for representation and/or witnesses
pursuant to 103 CMR 430.11 (5).

1. If you wish to be represented by an attorney or a law student at the disciplinary hearing regarding
   the attached disciplinary report, fill in the representative's name, address and phone number.

   YOU ARE RESPONSIBLE FOR CONTACTING THIS PERSON AND ARRANGING FOR
   REPRESENTATION (See 103 CMR 430.12)

   Name:_____

   Address:_____

   Telephone:_____

2. If you do not speak English, or do not understand the charges pending against you, you
   may request the assistance of a staff person.  Please check here_____.

3. Do you wish to have the Reporting Staff Person present at the Disciplinary Hearing?
                          Yes_____  No_____

4. Do you wish to call other witnesses at the Disciplinary Hearing?
                          Yes_____  No_____

   If yes, please list the names of the witnesses You wish to call and provide a brief statement of the
   expected testimony as required by 103 CMR 430.14 (4) (e)  (Use additional paper if necessary).

Witness:_____

Testimony:_____

Witness:_____

Testimony:_____

Received by:_____  Date:_____

Bay State Correctional Center

## AFFIDAVIT OF LARRY D. INGRAM

I, Larry D. Ingram [W-38220] hereby depose and state that the following description and testimony of the November 20, 2001 incident are accurate and true to the best of my knowledge and belief. I hereby state:

1. That, on November 20, 2001 at approximately 8:10 a.m. I went to mail (16) 10 x 13 manila envelopes to the United States Marshal Office, Massachusetts;

2. That once at the main one housing day room I proceeded to all Tom Caulfied, Mail Officer to inspect each envelope individually;

3. That, present were Capt. Chris Donovan, Sgt. Paul Glynn, Sgt. Chris Morelli, C.O. David Henault, C.O. Tom Caulfield, I.P.S. Officer Kennedy and inmate Arlis Evans;

4. That, after several envelopes were inspected Capt. Donovan asked me "Where did you get those envelopes?" I stated, "from the law library." He next asked, "Where did you get all these copies from?" I again stated, "from the law library?" He further asked, "Did you fill out a slip for those copies?" I said, "yes." Capt. Donovan replied, "There better be one.";

5. That Sgt. Glynn asked me, "hey Larry! are you going on a trip today?" I replied, "Not to my knowledge, and if so I'm not aware of such a trip.";

6. That Capt. Donovan then asked me about a particular envelope. "Where did you get that envelope from?" I stated, "I brought it." He said, "do you have proof of that?" I said, "yes I do." Capt. Donovan said, "come and see me at 10:00 a.m., no! no! don't see me, see Sgt. Glynn.";

7. That, Sgt. Glynn said, "I'll see you at 10:00 a.m., right Larry." I stated, "yeh yeh O.K.";

**Affidavit of Larry D. Ingram continued....2**

8. That, after each envelope was inspected I sealed the box and left the main one housing day room and returned to my housing unit.;

9. That, at approximately 10:15 a.m. Sgt. Glynn and Sgt. Morelli entered Modular two and called me from the dayroom. Sgt. Glynn asked me why didn't I come to his office at 10:00 a.m.. I simply stated, "I forgot."

10. That, I was taken to the Modular two Sgt. office, pat searched and taken to the inner control holding cell from 10:20 a.m. to 5:15 p.m..;

11. That, at or about 2:00 p.m. Capt. Donovan and Sgt. Glynn entered the inner control holding cell. Capt. Donovan began by stating, " you can't beat the system. There are things we all have to do, even I have to do things I don't like, but in the end the system always wins." ;

12. That, Capt. Donovan continued by stating, " Don't you like it here ? You wouldn't want to be in 10 block with urine and feces all over the place." I said, "I like it here and No!, I wouldn't want to live in those conditions.";

13. That, Capt. Donovan stated, " Now, I know when someone is calling me a liar." I said, "I haven't called anyone a liar." He continued, "Now where did you get that envelope?" I stated, "Crow's Office Supplies", He asked, "Do you have proof of that?" I said, "I can provide proof that the envelope he was concerned about." Capt. Donovan ended the conversation by stating, "I'll see you in court." I remained quite. ;

14. That, when I went back to my living quarters it had been searched. I immediately realized that (7) manila envelopes, one clearly marked "Exhibit" (1) copy of my civil complaint #11804, Exhibits (133 pages) and a Judges Order directing service by the U.S. Marshal was missing from my cell, (The same exact contents of the (15) envelopes I had mailed earlier that morning). All envelopes contained legal documents.;

**Affidavit of Larry D. Ingram continued...3**

15. That, the following day November 21, 2001 at approximately 1:00 p.m. Sgt. Morelli said he needed to see me in his office. Sgt. Morelli stated, "you were over the 1 cubic foot limit for legal documents." I asked Sgt. Morelli, " who took legal documents from my cell?" Sgt. Morelli stated, " I don't know!" I asked Sgt. Morelli, "what do you mean you don't know, you're the Modular Housing Sgt. you should know!";

16. That, on November 21, 2001 at approximately 1:05 p.m. I was handed (7) manila envelopes (the same envelope Capt. Donovan was concerned about); (1) civil complaint, #11804, with exhibits, 133 pages, all legal documents from Sgt. Chris Morelli.

Wherefore the above statements are true to the best of my knowledge and belief.

SWORN AND SUBSCRIBED TO UNDER THE PAINS AND PENALTIES OF PERJURY PURSUANT TO SUPERIOR COURT RULES, RULE 15.

Larry D. Ingram, Affiant
Bay State Correctional Center
P.O. Box 73
Norfolk, Massachusetts. 02056

Dated: December 6, 2001.



*The Commonwealth of Massachusetts*
*Executive Office of Public Safety*
*Department of Correction*
*Bay State Correctional Center*
*28 Clark Street, P.O. Box 73*
*Norfolk, Massachusetts 02056*

**Jane Swift**
*Governor*

**Jane Perlov**
*Secretary*

**Michael T. Maloney**
*Commissioner*

**Kathleen M. Dennehy**
*Deputy Commissioner*

**James Matesanz**
*Superintendent*

To:      Larry Ingram, W38270

From:    James Matesanz, Superintendent

Date:    February 11, 2002

Re:      **Appeal Results for BS-01-0135 and 0136**

I have reviewed your appeal and transcripts of the disciplinary
hearing for BS-01-0135 and 0136. I have decided to uphold the
findings and sanctions of the hearing officer. Therefore, the
findings and sanctions will stand.  Your appeal is denied.

*Served*
*2/11/02*

cc:  File

# DEPARTMENT OF CORRECTION
## APPEAL FORM

Inmate: _Larry Ingram_          #: _W38220_

D-Report #: _BS-01-0135_          Housing Unit: _Mod 2_

**(1) MINOR MATTERS:** (103 CMR 430.10 (#5)) "An inmate aggrieved by the finding and/or sanction of the Disciplinary Officer on a minor matter may request a hearing before a Hearing Officer on the Disciplinary Report within two days of the receipt of the finding. The appeal hearing before the Hearing Officer shall be scheduled within a reasonable time and shall be conducted in accordance with the procedures governing hearings before a Hearing Officer on major matters, except the provisions of 103 CMR 430.12 (#1) and 430.12 (#3) shall not apply."

**(2) MAJOR MATTERS:** (103 CMR 430.18 (#1)) "All inmates may appeal the finding or sanction(s) of the Hearing Officer regarding a major matter or the appeal of a minor matter, to the Superintendent within five days following the inmate's receipt of the Hearing Officer's written decision. The Superintendent, at his discretion, may consider an appeal filed after the expiration of the five day period, but no later than fifteen days after the inmate has received the Hearing Officer's decision."

**(3)** The Commissioner or his designee shall serve as the Appellate Authority in any Disciplinary matter in which an inmate is sentenced to the Departmental Detention Unit (DDU). The Commissioner reviews all forfeitures of Good Time matters. Except as noted above, the Commissioner IS NOT an Appellate Authority in other Disciplinary matters.

**Please indicate the specific grounds of your appeal in the space below. (Use additional paper if necessary.)**

_____

_____

_____

_____

_____ **(See: Attached hereto)** _____

_Larry D. Ingram_                    _Dec. 21, 2001_
(Inmate's Signature)                    (Date)

Bay State Correctional Center

DEPARTMENT OF CORRECTION
APPEAL FORM

Inmate: _Larry Ingram_                    #: _W38220_
D-Report #: _BS-01-0136_             Housing Unit: _Mod 2_

(1)  MINOR MATTERS:  (103 CMR 430.10 (#5)) "An inmate aggrieved by the finding and/or sanction of the Disciplinary Officer on a minor matter may request a hearing before a Hearing Officer on the Disciplinary Report within two days of the receipt of the finding.  The appeal hearing before the Hearing Officer shall be scheduled within a reasonable time and shall be conducted in accordance with the procedures governing hearings before a Hearing Officer on major matters, except the provisions of 103 CMR 430.12 (#1) and 430.12 (#3) shall not apply."

(2)  MAJOR MATTERS:  (103 CMR 430.18 (#1))  "All inmates may appeal the finding or sanction(s) of the Hearing Officer regarding a major matter or the appeal of a minor matter, to the Superintendent within five days following the inmate's receipt of the Hearing Officer's written decision.  The Superintendent, at his discretion, may consider an appeal filed after the expiration of the five day period, but no later than fifteen days after the inmate has received the Hearing Officer's decision."

(3)  The Commissioner or his designee shall serve as the Appellate Authority in any Disciplinary matter in which an inmate is sentenced to the Departmental Detention Unit (DDU).  The Commissioner reviews all forfeitures of Good Time matters.  Except as noted above, the Commissioner IS NOT an Appellate Authority in other Disciplinary matters.

Please indicate the specific grounds of your appeal in the space below.  (Use additional paper if necessary.)

_____

_____

_____**(See: Attached hereto)**_____

_____

_____

_____

_Larry D. Ingram_                         _Dec. 21, 2001_
(Inmate's Signature)                         (Date)

Bay State Correctional Center

James Matesanz, Superintendent
Bay State Correctional Center (BSCC)
28 Clark Street
Norfolk, Massachusetts. 02056

Larry D. Ingram, [W-38220] Mod.2. #221 A
Bay State Correctional Center
P.O. Box 73
Norfolk, Massachusetts. 02056

Return
Receipt
Requested

U.S. First Class Mail [7000 1530 0000 5686 6386] ########

Re: <u>Consolidated Disciplinary Appeal</u>
     D-Reports,##01-0135 & 01-0136

Supt. Matesanz,

Please find before you my consolidate appeal to d-reports,#
01-0135 and 01-0136. Each disciplinary report is written by a different
officer, yet stem from a single incident.

The specific grounds for dismissal to d-report, #01-0135
are as follows: 1) Harassment and retaliatory actions relative to
outgoing legal mail by Capt. Donovan and Sgt. Glynn; 2) D-report, # 01-
0135 was written by Sgt. Glynn as an abuse of authority of Sgt. Glynn
and Capt. Donovan; and 3) Violation of existing CMR's, i.e. 103 CMR
430.07 and 430.11 (2). Sgt. Glynn wrote d-report, #01-0135, he should
have recused himself from all aspects of d-report, #01-0135, he did
not.

As to d-report, #01-0136 C.O. Todd Johnson was ordered,
(Respondeat Superior) by Capt. Donovan and/or Sgt. Glynn to search my
living quarters at 10:50 a.m. to find and confiscate contraband and
any excess property, etc., thus, a d-report. However, legal documents
were taken from my living quarters while I was detained in the inner
control holding cell for (7) hours. This action was retaliatory and
abuse of authority by Capt. Donovan and Sgt. Glynn. C.O. Johnson's
ordered room search produced an extra light bulb and a yellow Hi-Liter.
These items were allowed for retention by inmates (light bulbs still

Consolidate appeal continued......2

allowed for retention if you possess a lamp). I have never been
informed by notice or otherwise that I could no longer be in possession
of a yellow hi-liter or light bulbs.

For these reasons, independently and accumulative the
Findings, Sanctions and Recommendations to d-reports, #01-0135 and
#01-0136 should be dismissed and expunged from my institutional record.


I.

Disciplinary Report, 01-0135


I have attached my affidavit of the accuracy of the
circumstances which give rise and produced d-report, #01-0135. The
following is a more detailed description of what took place:


On November 20, 2001 at approximately 8:05 a.m. I
went to mail (16) 10 x 13 manila envelopes to the
United States Marshals Office, Massachusetts. (I
requested that an unnamed inmate witness the contents
of each envelope prior to leaving Mod. 2 for mail out).

Once in the main one housing dayroom the following staff
members were present, Capt. Chris Donovan, Sgt. Paul Glynn,
Sgt. Chris Morelli, I.P.S. Kennedy, C.O. David Heanult and
Tom Caulfield, mail Officer, and inmate Arlis Evans.

I announced to C.O. Tom Calufield that the destination
of my mail out was to the United States Marshals Office.
I proceeded to allow C.O. Caulfield to inspect each
envelope individually. After several envelopes were inspected
Capt. Donovan began questioning me.

Capt. Donovan: "where did you get those envelopes?"
Inmate Ingram: "from the law library."
Capt. Donovan: "where did you get all those copies from?"
Inmate Ingram: "from the law library."

Consolidated appeal continued......3

Capt. Donovan:  "Did you fill out a slip for those copies?"
Inmate Ingram:  "yes."
Capt. Donovan:  "there better be one."

   While still allowing C.O Caulfield to inspect the
envelopes Sgt. Glynn began questioning me:

Sgt. Glynn:  "Hey Larry, are you going on a trip today?"
Inmate Ingram:  "not to my knowledge, and if so, I'm not
                 aware of such a trip."

Capt. Donovan:  "where did you get that envelope from?"
Inmate Ingram:  "I brought it."

Capt. Donovan:  "do you have proof of that?"
Inmate Ingram:  "yes I do."
Capt. Donovan:  "come and see me at 10:00 a.m., No! No! don't
                 see me, see Sgt. Glynn."

Sgt. Glynn:  "I'll see you at 10:00 a.m. right Larry?"
Inmate Ingram:  "yeah, yeah, O.K."


   It is evident that d-report, #01-0135 says nothing about
why I was instructed to report to A211 . It (d-report, #01-0135) does
not describe nor identify the envelope in question, (See: d-report,#
01-0135 ¶¶ one and two). A photostat copy of the envelope has been
submitted into evidence at both hearings to show relevancy and a
continuum of the intentions of Capt. Donovan and Sgt. Glynn.

   I reasoned that I was suppose to report to A211 with proof
that I purchased the envelope in question. D-report, #01-0135 says
absolutely nothing about why I was instructed to report to A211. I
requested that the reporting officer, Sgt. Glynn be at the hearing,
and that the hearing be tape recorded. I asked Sgt. Glynn one question,

Inmate Ingram:  "why was I instructed to report to A211 ?"
Sgt. Glynn:  "the Captain wanted to get more information."

**Consolidated appeal continued......4**

Before I left the main one housing dayroom I clearly told Capt. Donovan that I had proof of purchase for the envelope he was concerned about. What more information could he have been looking for? At the hearing for d-report, #01-0135 I requested that Capt. Donovan be a witness. I asked Capt. Donovan several questions:

Inmate Ingram:  "why was I instructed to report to A211?"

Capt. Donovan:  "I wasn't satisfied with your answers."


At or about 10:15 a.m. Sergeants Glynn and Morelli entered Mod. two. Sgt. Glynn motioned for me to come to the officers station. Sgt. Glynn asked why didn't I report to A211 as instructed. I simply stated, "I forgot."
As a result of said reply I was escorted to the modular Sgt. office, over aggressively pat searched by Sgt. Glynn and taken to the inner control holding cell from 10:20 a.m. to 5:15 p.m. (7 hours) per order Capt. Donovan. (See: D-report, #01-0135, ¶3.)


According to d-report, #01-0136 a room search was conducted (per order Capt. Donovan and/or Sgt. Glynn) at 10:50 a.m. (30) minutes after I was detained at the inner control holding cell by C.O. Todd Johnson. C.O. Johnson considered the following item contraband, (1) 40 watt light bulb and (1) Avery yellow Hi-Liter and confiscated these items. (See: D-report, #01-0136).

He also confiscated (7) manila envelopes, one clearly marked "Exhibit", (the same type of envelope Capt. Donovan instructed me to report to A211 with proof of purchase), (1) Civil Complaint, #11804 (20 pages), 44 exhibits (133 pages), and a Judges order directing service upon the defendants by U.S. Marshals.

Consolidated appeal continued......5

At or about 2:00 p.m. 11/20/01 Capt. Donovan and
Sgt. Glynn entered the inner control holding cell.
The following is a summary of the conversation that
ensued:

Capt. Donovan:   "You can't beat the system. There are things
                 we all have to do, even I have to do things
                 I don't like, but in the end the system
                 always win."
                 "Don't you like it here? You wouldn't want
                 to be in 10 block with urine and feces all
                 over the place?"

Inmate Ingram:   "I like it here, and No! I wouldn't want to
                 live in those conditions."

Capt. Donovan:   "Now, I know when someone is calling me a liar."

Inmate Ingram:   "I haven't called anyone a liar."

Capt. Donovan:   "Now, where did you get that envelope?"

Inmate Ingram:   "Crow's Office Supplies."

Capt. Donovan:   "Do you have proof of that?"

Inmate Ingram:   "I can provide proof for the envelope you are
                 concerned about."

Capt. Donovan:   "I'll see you in court."


When I was released from the inner control holding cell
at 5:15 p.m. I returned to my living quarters. I immediately
realized that, as previously described, (7) manila envelopes,
one clearly marked "exhibit", (1) Civil complaint, #11804 (20
pages), Exhibits (133 pages), and a Judges order directing
service by the U.S. Marshals were missing from my cell. The
civil complaint and judges order was not within a envelope,
however, these documents were the same exact contents of the
(15)  10x13 marked  "legal" envelopes I had mailed earlier
that morning. All the other envelopes taken from my cell
contained legal documents.

The following day, November 21, 2001 at approximately at
1:00 p.m. Sgt. Morelli said he needed to see me in his office.
The following dialogue took place as he placed a box with
"1 cubic foot" written on it containing what look like the
documents taken from my cell. The following dialogue took
place:

Consolidated appeal continued......6

> Sgt. Morelli: "you were over the 1 cubic foot limit for legal documents."
>
> Inmate Ingram: "who took legal documents from my cell?"
>
> Sgt. Morelli: "I don't know."
>
> Inmate Ingram: "what do you mean you don't know, you're the modular housing Sergeant, you should know."
>
> At approximately 1:05 p.m. I was given all the legal documents taken from my cell.

The nature of d-report, #01-0135 is my proof of purchase of a particular envelope. It is clear that I was detained (7 hours), ordered to have my cell searched, and (7) similar envelopes Capt. Donovan was concerned about, a civil complaint with its exhibits taken from my cell. Sgt. Glynn stated, "The Capt. wanted to get more information." Then Capt. Donovan stated, "I wasn't satisfied with your answers." Capt. Donovan's final statement made to me at the inner control holding cell surmise the extent of his satisfaction, "I'll see you in court."

Lastly, Sgt. Glynn wrote d-report, #01-0135. He should have recused himself from all aspects of d-report, #01-0135, he did not. See, 103 CMR 430.07 (1), Disciplinary Personnel:

### 430.07 Disciplinary Personnel

(1) The Superintendent at each institution shall appoint a disciplinary officer who is of supervisory rank or function, who will perform the functions of that office, as set forth in 103 CMR 430.00. The Superintendent may appoint a disciplinary officer for a definite or indefinite term and may in addition appoint a separate disciplinary officer for any disciplinary matter or class of disciplinary matters.

(2) The Superintendent shall appoint a hearing officer or officers to conduct disciplinary hearings as set forth in 103 CMR 430.00. Each Superintendent may appoint a hearing officer or officers for a definite or indefinite term and may in addition appoint a new hearing officer to hear and determine any disciplinary matter or class of disciplinary matters.

**Consolidated appeal continued......7**

More specifically, Sgt. Glynn as the Disciplinary Officer requested two continuance concerning d-report, #01-0135, See, attachments **A** and **B**, also See, 103 CMR 430.11 (2), Notice and Scheduling of Hearing Before a Hearing Officer:

**430.11  Proceedings in Major Matters:  Notice and Scheduling of Hearing Before a Hearing Officer**

(1)  Within one weekday of the designation of the offense as a major matter, the disciplinary report, a notice of hearing, and a request for representation and/or witness form shall be served upon the inmate by the disciplinary officer or his designee.

(2)  The disciplinary officer shall schedule a hearing before a hearing officer within a reasonable time, but not less than 24 hours after the inmate has been served with both the disciplinary report and the notice specifying the time of hearing.  The disciplinary officer or hearing officer may continue a hearing at his discretion.  The inmate shall be given written notice of such continuance and the new date for the hearing.  The inmate shall be entitled to one continuance for good cause provided that any request for a continuance must ordinarily be made at least 24 hours prior to the scheduled time of the hearing.

Surely, this may be considered an innocuous error, but in the totality of the initiation involving the circumstances created solely by Capt. Donovan and Sgt. Glynn, he Sgt. Glynn should have recused himself from all aspects of d-report, #01-0135 to eliminate any appearance of impropriety.

Consolidated appeal continued......8

## II.
### Disciplinary Report, 01-0136

       C.O. Todd Johnson was ordered to search me cell 30 minutes after I was detained at the inner control holding cell.

       At the hearing for d-report, #01-0136, the hearing was tape recorded. I asked Officer Johnson several questions:

> Inmate Ingram:  "Did you confiscate anything else from my cell besides the light bulb and a Hi-Liter?"
>
> C.O. Johnson:  "Yes, excess legal papers."
>
> Inmate Ingram:  "Was this a random search or were you ordered to search my cell?"

> Note: The Hearing Officer R. Palmer stated that that question was immaterial and precluded C.O. Johnson from answering that question.

       This question was very material and relative to what prompt C.O. Johnson to randomly search my cell on November 20, 2001, at 10:50 a.m. and confiscate the exact legal contents of (15) envelopes air marked for the U.S. Marshals office earlier that same morning.

       Why would Capt. Donovan say to me at 2:00 p.m. at the inner control holding cell, "I'll see you in court." The only logical deduction, Capt. Donovan and/or Sgt. Glynn ordered my cell be searched, confiscate legal documents, documents had to have been read in order to know that they were legal, illegally possess my legal material, legal material directly relative to civil litigation against staff here at this institution and read or do as they wish with my legal documents. At no time have I said to Capt. Donovan or any other staff member that I was taking them to court.

       The light bulb and the Hi-Liter are a diversion to obscure the real intent behind the clandestine actions of Capt. Donovan and Sgt. Glynn. Sgt. Glynn, as the Disciplinary Officer denied my

Consolidated appeal continued......9

my request to have property records that would have shown that light
bulbs were at one time allowed to enter the institution, thus inmates
could and still possess the right to retain them in their living
quarters.

I have been a college student at this institution since
April 1993. I have received numerous yellow hi-liters through the
educational department, not the present educational staff. I have never
been informed that I, nor inmates in general have been informed that if
you are in possession of a "yellow hi-liter" it is considered contraband
and you would be receiving a d-report. The memo issued by Director of
Security, Steven Fairley on November 7, 2000, is addressed to All Staff,
not to inmates nor to be posted in the housing units. Nothing tells me
that a yellow hi-liter in my possession is contraband, therefore, I have
not knowingly violated the rules and regulations of this institution.

Finally, as to the regulations referred to in this appeal
have the force of law. The disciplinary hearing is a quasi-judicial
hearing which are afforded certain procedural rights. Some of those
rights have been abridged. A regulation promulgated pursuant to
Legislative Authority, as is 103 CMR 430.00 et seq. generally have
the force of law and is binding on the agency that promulgated it.
See: Kenny v. Commissioner, 393 Mass at 33 (1984). Once an agency has
seen fit to promulgate a regulation, as the DOC has, it must comply with
it, See: Royce v. Commissioner, 390 Mass 423, 427 (1983), also See:
Dalomba's case, 352 Mass 598, 603 (1967), and Stokes v. Commissioner,
26 Mass. App. Ct. 585, 588 (1988).

Consolidate appeal continue....10

III.

<u>Conclusion</u>

For the foregoing reasons disciplinary reports, ##
01-0135 and 01-0136, their Findings, Sanctions and Recommendations
should be dismissed and expunged from my institutional record.


Respectfully submitted,


Larry D. /Ingram [W-38220]
Bay State Correctional Center
P.O. Box 73
Norfolk, Massachusetts. 02056


cc: Attorney Rust
    file

DEPARTMENT OF CORRECTION
NOTICE OF CONTINUANCE

To:   **LARRY INGRAM**                                    #:    **W-38220**

RE:   **01-0135**                                   Date:   **11/20/2001**

As provided under the Disciplinary Regulations, 103 CMR 430.11 (2), at the request of the
Disciplinary Officer, a continuance has been granted for your disciplinary hearing.

Your hearing has been rescheduled for:    **12/05/2001**  *                    **10:00 AM**

                                          (Date)                              (Time)

Notice Served By: _____            _____

                  (Staff Person's Signature)                      (Title)

                  _____            _____

                  (Date)                                          (Time)

                                          _____

                                          (Disciplinary Chairman / Officer's Signature)

* If an open date, you will be notified of the new date at least 24 hours prior to the hearing.

Bay State Correctional Center

# DEPARTMENT OF CORRECTION
## NOTICE OF CONTINUANCE

To: Larry Ingrams                          #: W38220

RE: BS-01-0135                             Date: 12/5/01

As provided under the Disciplinary Regulations, 103 CMR 430.11 (2), at the request of the Disciplinary Officer, a continuance has been granted for your disciplinary hearing.

Your hearing has been rescheduled for:  12/6/01                    1:00 pm
                                        (Date)                    (Time)

Notice Served By: Paul A Gly             Sgt.
                 (Staff Person's Signature)        (Title)

                 12/5/01                  1:00
                 (Date)                    (Time)

                 Paul A Gly
                 (Disciplinary Chairman / Officer's Signature)

* If an open date, you will be notified of the new date at least 24 hours prior to the hearing.

**Bay State Correctional Center**

EXHIBIT
C

### BAY STATE CORRECTIONAL CENTER
### MASSACHUSETTS DEPARTMENT OF CORRECTION
### DISCIPLINARY REPORT

Inmate: Ingram Lanny           Commit # W38220   Housing Unit: MOD-2

Date: 11/20/01           D-Report #: BS-01-0136

Offense: _____ Code #: 2, 8, 24, 33

Reviewed by Disciplinary Officer on _____ 11/23/01

Disciplinary Report Designated as Minor ____ Major X on 11/23/01

Referred to District Attorney:        Yes _____    No X

Referred to DDU Special Hearing Officer:    Yes _____    No X

DESCRIPTION OF OFFENSE:

On 11/20/01 At Approximently 10:50 AM
I CO Todd Johnson conducted A Room
Search of Rm #221.
The following Items were found in
Inmates Ingram, Lanny # W38220 property
① Sylvania 40w light Bulb
① Avery yellow Hi-Liter
These Item Are considered Contrabaud.
Sgt Morrelli Notified.

MAY 11 22 2005

Has the Inmate been placed on Awaiting Action Status? Yes:_____ No:_____

Reporting Staff Persons's Signature: CO Todd Johnson

Date: 11/20/01        Shift: 7x3        Days Off: F/S

Shift Commander's Signature: _____ Date: 11/20/01

Disciplinary Officer's Signature: Paul F. H. Date: 11/23/01

Finding and Sanction, If Any: Guilly
1 mmth loss of cantem
(Transcribed from disciplinary hearing if major matter)

Appeal Results: Appeal denied

Reviewing Authority: James Niot Date: 2/4/0

August, 2000                ATTACHMENT A - BSCC 430

## DEPARTMENT OF CORRECTION
## CODE OF OFFENSES

1.  Disobeying an order of, lying to, or insolence toward a staff member.
2.  Violating any departmental rule or regulation, or any other rule, regulation, or condition of an institution or community based program.
3.  Failure to keep one's person or one's quarters in accordance with institutional rules.
4.  Being out of place.
5.  Unexcused absence from, willful failure to properly perform, or refusal to accept a work assignment, housing assignment or program.
6.  Counterfeiting, forging, misrepresentation on or unauthorized reproduction of any document, article of identification, money, security or official paper.
7.  Tampering with or blocking any locking device, door, gate or window.
8.  Conduct which disrupts or interferes with the security or orderly running of the institution.
9.  Escape or possession of escape tools.
10. Manufacture, possession, introduction, or use of any unauthorized controlled substance, alcohol beverage or associated paraphernalia.
11. Misuse of unauthorized medication, for example, the unauthorized accumulation of prescribed medication.
12. Refusal to take a breathalizer test or to provide a urine specimen.
13. Gambling.
14. Participating in or encouraging a riot, work stoppage, hostage taking, or unauthorized group demonstration.
15. Possession, manufacture, or introduction of a gun, firearm, explosive, ammunition, weapon, sharpened instrument, knife or tool.
16. Killing.
17. Self mutilation.
18. Fighting with, assaulting, or threatening another person with any offense against his person or property.
19. Use of obscene, abusive or threatening language, action, or gesture to any inmate, staff member or visitor.
20. Engaging in unauthorized sexual acts with others.
21. Setting fires.
22. Willfully destroying or damaging state property or the property of anther person.
23. Unauthorized possession of property belonging to another person.
24. Possession of items, including money or currency, not authorized for retention or receipt by the inmate.
25. Giving money or any item of value to, or accepting money or any item of value from another inmate, a member of his family or his friend without authorization.
26. Stealing.
27. Giving or offering any official or staff member a bribe.
28. Giving or offering any official or staff member any item or service of value.
29. Extortion, blackmail, protection, demanding or receiving money or anything of value in return for any reason.
30. Charging or receiving money or anything of value, either directly or indirectly from another inmate, or member of his family, or any other person for rendering legal assistance.
31. Wearing or displaying colors or any type of emblem, insignia or logo suggesting possible membership or affiliation with a gang, group, party or other association whenever such wearing or display may, in the opinion of the superintendent, pose a threat to the security, good order and safety of the institution.
32. Violating any law of the Commonwealth of Massachusetts or the U.S.
33. Attempting to commit any of the above offenses, making plans to commit any of the above offenses or aiding another person to commit any of the above offenses shall be considered the same as the commission of the offenses itself.

# MASSACHUSETTS DEPARTMENT OF CORRECTION

## DISCIPLINARY HEARING

### BAYSTATE CORRECTIONAL CENTER

INMATE: _Conroy Norman_          COMMIT #: _W 38220_

D-REPORT #: _BS-01-0156_          DATE OF REPORT: _11-20-01_

DATE OF HEARING: _12-6-01_ HEARING OFFICER: _Russ Palmer_

HEARING HELD AT: _BSCC_

1)    THE INMATE WAS GIVEN AT LEAST 24 HOURS NOTICE OF THE HEARING
   (IF NO, ATTACH 24 HR WAIVER).          YES: _✓_ NO: ___

2)    THE INMATE IS PRESENT BEFORE THE HEARING OFFICER (IF NOT,
   ATTACH REFUSAL TO APPEAR FORM).       YES: _✓_ NO: ___

3)    THE INMATE HAS BEEN ADVISED OF HIS RIGHT TO REMAIN SILENT,
   SINCE THE OFFENSE CHARGED HAS, OF MAY BE REFERRED TO THE
   DISTRICT ATTORNEY. THE INMATE HAS FURTHER BEEN ADVISED THAT
   HIS SILENCE MAY BE USED TO DRAW AN ADVERSE INFERENCE AGAINST
   HIM, BUT HIS SILENCE ALONE MAY NOT BE USED TO SUPPORT A
   GUILTY FINDING.              YES: _✓_ NO: ___

4)    THE INMATE REQUESTED REPRESENTATION.      YES: ___ NO: _✓_

   THE INMATE IS REPRESENTED BY AN ATTORNEY/LAW STUDENT.
                                  YES: ___ NO: _✓_

   NAME OF LEGAL REPRESENTATIVE: _____

5)    THE INMATE REQUESTED THE PRESENCE OF THE REPORTING STAFF
                                  YES: _✓_ NO: ___

   THE REPORTING STAFF PERSON IS PRESENT.     YES: _✓_ NO: ___
   IF THE INMATES REQUEST IS DENIED, INDICATE THE REASON:
   _____

6)    INMATE CHALLENGES IMPARTIALITY OF THE HEARING OFFICER.
                                  YES: ___ NO: _✓_

   IF YES, STATE REASONS WHY: _____
   _____
   _____

PAGE 2

INMATE: *Ingram*    COMMIT#: 38220    D-REPORT: *BS 01. 0186*

7.  WITNESS:    IF NONE REQUESTED, CHECK HERE: ___ ✓

A.  REQUESTED BY INMATE:   (IF ANY WITNESS REQUEST IS DENIED, A
                            WRITTEN EXPLANATION OF THE REASONS
                            MUST BE INCLUDED AS PART OF THE
                            RECORD)

        (1) _____

        (2) _____

        (3) _____

B.  REQUESTED BY HEARING OFFICER:

        (1) _____ *N / A* _____

        (2) _____

        (3) _____

    ****************************************************************

8.  PRESENTATION OF EVIDENCE:

    A.  INMATE STATEMENT

    PLEA: *Not Guilty*

    STATEMENT IN DEFENSE (SUMMARY): *Inmate Ingram contends that
    he was issued the light bulb thru property. He does have a lamp
    on his tool sheet, and this is a replacement bulb. On the issue of
    the highliter "Yellow", Inmate Ingram stated that the memo issued by
    DOS Farley was addressed to all staff and not to the inmates.
    He stated that he was issued this highliter prior to this memo
    anyway and had no idea it was contraband.*

    _____

    B.  REPORTING STAFF PERSON'S STATEMENT:
    *Officer Todd Johnson stated that he did do a room search and
    confiscated items. The only items in serious violation were
    the bulb and the yellow highliter.
    When Ingram asked officer Johnson if this was a random
    search the hearing officer instructed officer Johnson not to
    answer and that it doesn't matter if it was random or assigned.*

PAGE 2A

INMATE: _Norman_    COMMIT#: _30220_    D-REPORT: _BS-01-0136_

INMATE TESTIMONY CONTINUED: _____

_N/A_

REPORTING STAFF PERSON'S TESTIMONY CONTINUED:

_N/A_

Witness #1: _____    _N/A_

STATEMENT: _____

Page #3

INMATE: *Ingram*        COMMIT# 38220    D-REPORT: 01-0136

C:    OTHER WITNESS STATEMENTS:(IF WITNESS HAS BEEN DENIED,
                                INDICATE REASON(S) FOR DENIAL
                                IN THIS SPACE)

WITNESS-# 2 NAME: _____ N/A _____

STATEMENT: _____
_____
_____
_____
_____
_____

WITNESS # 3 NAME: _____ N/A _____

STATEMENT: _____
_____
_____
_____
_____
_____

WITNESS # 4 NAME: _____ N/A _____

STATEMENT: HEARING OFFICER CONCURRED W/ D-OFFICERS DECISION
ON EVIDENCE.
✻ EVEN THOUGH MOST EVIDENCE WAS DENIED BY INMATE'S
REQUEST, (IT WAS NOT SPECIFIED ON HOW IT WAS ESSENTIAL TO
DEFENSE). THIS EVIDENCE WAS PRESENTED TO THE INMATE BECAUSE
IT WAS USED BY THE D-OFFICE.

**********************************************************

C:    DOCUMENTARY EVIDENCE:

    IN ADDITION TO THE DISCIPLINARY REPORT, THE HEARING OFFICER
ACCEPTED INTO EVIDENCE THE FOLLOWING DOCUMENTS, PHYSICAL
EVIDENCE, PHOTOGRAPHS/VIDEO TAPES:
ORIENTATION MANUAL "ATT D."
DOS FAMILY MEMO
EDUCATIONAL SHEET
TOOL SHEET
COPY OF INTER OFFICE CORRESPONDANCE ENVELOPE

PAGE 4

INMATE: _Ingram_ COMMIT#: _38220_ D-REPORT: _BS 01 0136_

FINDINGS: _Guilty_

STATEMENT OF EVIDENCE RELIED UPON TO SUPPORT FINDINGS: (CONTINUE ON PAGE 4A, IF NECESSARY)

_The evidence used to support the finding was based on the D-Report, CO Johnson' testimony, DOS' memo, Tool sheet._

SANCTIONS AND RECOMMENDATIONS:

_1 month loss of canteen_

REASON FOR SANCTIONS (CONTINUE ON PAGE 4A, IF NECESSARY):

_Inmate Ingram is in violation of institutional rules, being in posession of these items. Orientation manual page 2 #29 states highlighters are considered contraband, it does not specify colors. On Nov 7, 2000 DOS fairly amended this ruling by allowing pink highlighters' only to school inmates. The orientation manual is issued/available to all inmates._
_The light bulb is considered a breakable sharp object which is also considered contraband at BSCC._ (cont.)

THE INMATE HAS BEEN ADVISED OF HIS RIGHT TO APPEAL THIS DECISION WITHIN 15 DAYS OF HIS RECEIPT; TO THE SUPERINTENDENT: _Yes_

HEARING OFFICER: _Russ Palma_

THE INMATE HAS BEEN ADVISED OF THE HEARING OFFICER'S DECISION AND A COPY OF THIS DOCUMENT HAS BEEN DELIVERED TO THE INMATE: _Yes_

STAFF SIGNATURE: _Paul Kelly_ DATE: _12/7/01_ TIME: _11:00_

PAGE 4A

INMATE: _INGRAM_                COMMIT#: _38220_   D-REPORT: _BS 01 0136_

STATEMENT OF EVIDENCE RELIED UPON (CONTINUED):

_N/A_

REASON FOR SANCTIONS (CONTINUED):

IT IS UNVERIFIED WHERE INGRAM OBTAINED THIS SPARE BULB, BUT
IF IT WAS NOT IN USE IT SHOULD NOT HAVE BEEN STORED IN
HIS ROOM.

## DEPARTMENT OF CORRECTION
## NOTICE OF DISCIPLINARY HEARING

TO:  **LARRY INGRAM**                                   I.D. #:  **W-38220**

Re: Disciplinary Report #:            **01-0136**                Date:  **11/20/2001**

You have been charged with a disciplinary offense(s) which has been referred to the Hearing Officer for a hearing.  A description of the offense(s) is contained in the attached Disciplinary Report.  Your disciplinary hearing has been scheduled for:

**11/29/2001**

(Date of Hearing)

If you wish to be represented, request the presence of the reporting staff person, request other witnesses, and/or request a taped hearing, please fill out the attached Request for Representation/Witness Form.  If you wish to request evidence, please fill out the attached Request for Evidence Form.

Notice Served By: _Paul F. _____        Date: _11/23/01_  Time: _10:46_

Inmate's Signature: _Carey D. Ingram_    Date: _11/23/01_  Time: _10:46_

\*\*\*When an inmate has been given copies of the above enumerated documents, but refuses to sign this acknowledgement, the staff person who delivered the documents shall complete the following:

I personally delivered copies of this Notice, Disciplinary Report, Request for Representation/ Witness Form, and Request for Evidence Form to:        **LARRY INGRAM**

(Inmate's Name)

and he refused to sign.

Staff Person's Signature: _____Date:_____

Print Name: _____Time:_____

\*\*The actual scheduling of the hearing may be delayed if circumstances require; however, you will be notified of the actual date of the re-scheduled hearing at least twenty-four (24) hours in advance of that date.

**Bay State Correctional Center**

## DEPARTMENT OF CORRECTION
### REQUEST FOR REPRESENTATION AND/OR WITNESSES

Inmate:     **LARRY INGRAM**                                I.D.#:     **W-38220**

Report #:   **01-0136**                                Date of Hearing:   _11/29/01_

You must complete this form and return it to the Disciplinary Officer within twenty-four (24) hours of
receiving it.  Failure to do so may be considered as a waiver for representation and/or witnesses
pursuant to 103 CMR 430.11 (5).

1.  If you wish to be represented by an attorney or a law student at the disciplinary hearing regarding
    the attached disciplinary report, fill in the representative's name, address and phone number.

    YOU ARE RESPONSIBLE FOR CONTACTING THIS PERSON AND ARRANGING FOR
    REPRESENTATION (See 103 CMR 430.12)

    Name:_____

    Address:_____

    Telephone:_____

2.  If you do not speak English, or do not understand the charges pending against you, you
    may request the assistance of a staff person.  Please check here_____.

3.  Do you wish to have the Reporting Staff Person present at the Disciplinary Hearing?
                        Yes_____  No_____

4.  Do you wish to call other witnesses at the Disciplinary Hearing?
                        Yes_____  No_____

    If yes, please list the names of the witnesses You wish to call and provide a brief statement of the
    expected testimony as required by 103 CMR 430.14 (4) (e)  (Use additional paper if necessary).

Witness:_____

Testimony:_____

Witness:_____

Testimony:_____

Received by:_____  Date:_____

**Bay State Correctional Center**

DEPARTMENT OF CORRECTION
REQUEST FOR EVIDENCE FORM

TO:  **LARRY  INGRAM** _____  #:  **W-38220**

RE:  **01-0136** _____  Date:  **11/20/2001**

I understand that I will be served at a reasonable time prior to my disciplinary hearing with any documents which may be used against me.  In addition to any such documents, I wish to request access to the following document(s) prior to my hearing which I believe will show me not guilty of the alleged infraction(s) contained in the D-Report.  I understand that, in the event the Disciplinary Officer at the institution where the alleged disciplinary infraction(s) occurred denies my request for these documents(s), it will be up to the Hearing Officer to decide if I am entitled to the document(s) for the reason(s) I have stated.  The Hearing Officer will determine if the requested document(s) are relevant and not merely repetitive and whether they are central to the preparation of my defense.  The Hearing Officer may deny my request for documents if he/she determines that producing them would be hazardous in the particular situation.  If the Hearing Officer decides that the document(s) need not be provided, his/her reason(s) will be included in the final report.

I am requesting the following specific document(s):_____

_____

_____

Each document is central to my defense for the following reasons: _____

_____

_____

_____

_____

_____

Please be advised that failure to return this form to the Disciplinary Officer within 24 hours of receiving it will be considered as a waiver of request for any evidence.

**Bay State Correctional Center**

DEPARTMENT OF CORRECTION
EVIDENCE PRODUCED TO INMATE FORM

TO:     **INGRAM  LARRY, W38220**

Inmate Name

FROM:   **PAUL F. GLYNN**

Disciplinary Officer

RE:     Disciplinary Report #:        **01-0136**        *Hearing to be taped*
                                                         *$2.50 per tape ② tapes*
A.      EVIDENCE PRODUCED TO INMATE (ATTACHED)          *$5.00*

        1.  *Orientation manual " Attachment 1"*
        2.  *Memo "Inmate Contraband item"*
        3.  *Educational Summary Sheet.*
        4.  (Use additional pages if necessary) *Personal Appliance Sheet.*

B.      DENIAL OF REQUESTED EVIDENCE AND REASON FOR DENIAL

        1.  *Request for evidence denied, Inmate did*
            REASON FOR DENIAL:
        2.  *not state how each document is central*
            REASON FOR DENIAL:                                    (PFG)
        3.  *to his defense. for the following reasons.*
            REASON FOR DENIAL:
            (Use additional pages if necessary)
                                                    *11/27/01*
Served By: *Paul F. Glynn*          Date: ~~11/30/01~~ Time: *1:00*

Inmate's Signature: *Larry Ingram*     Date: *11/27/01* Time: *1:00*

***When an inmate has been given copies of the above enumerated documents, but refuses to sign this ac-
knowledgement, the staff person who delivered the documents shall complete the following:

I personally delivered copies of this  EVIDENCE PRODUCED TO INMATE FORM  with the identified docu-
ments to        **LARRY INGRAM**
                (Inmate's Name)

Staff Person's Signature:_____ Date:_____

Print Name:_____Time:_____

Bay State Correctional Center

## PERSONAL APPLIANCE & ACCESSORIES INVENTORY CARD

| SOURCE | DATE REC. | DISCRIPTION OF ITEMS | TOT | SEAL # | | DISPOSITION | DATE |
|--------|-----------|----------------------|-----|--------|--------|-------------|------|
| OCCC | 05/05/93 | Lakewood fan (white) | 1 | 159229 | 159230 | | |
| OCCC | 05/08/93 | Realistic Nova 40 headphones | 1 | | | | |
| mail | 08/11/93 | Sanyo 1.7 cf refrigerator | 1 | | | Stored in Property | |
| visit | 09/20/93 | Gooseneck clip on lamp | 1 | 159231 | | | |
| mail | 01/26/94 | Regal poly hot pot | 1 | | | | |
| REPAIRED | 06/09/95 | GE Super II radio (no speaker) | 1 | 157150 | 157151 | | |
| VISIT | 06/09/95 | Magnavox 13" color tv (no speak | 1 | 70511 | 156873 | | |
| mail | 11/08/95 | Smith Corona 345 DLE typewriter | 1 | 159232 | 155174 | | |
| MAIL | 08/12/97 | WESTCLOX ALARM CLOCK | 1 | 156310 | | | |
| CANTEEN | 03/12/97 | AIWA AM/FM WALKMAN | 1 | 159233 | NAME / CON# | | |
| CANTEEN | 03/12/97 | AIWA HEADPHONES | 1 | NAME | CON# | | |

Inmate Signature:                    Officer:    SGT.O.        Date:    10/23/01

...ense of any kind including burning, electrically controlled, or ...nging type deodorizers.

...Jewelry in excess of 103 CMR 403 - Inmate Property Policy.

Any type of currency, checks, or money orders.

16. Matches.

17. Boxes that have been opened prior to processing shipped from the factory.

18. Personal towels, wash cloths, and bedding.

19. Possession of property not accounted for on the Property Inventory Form.

20. Plants/animals.

21. Glass mirrors.

22. Metal silverware or kitchen utensils.

23. Unauthorized medical supplies to include, band-aids, gauze, medical equipment/tools.

24. Metal hot pots.

25. Personal pots and pans or unit pots and pans in rooms.

26. Metal hair accessories (ie. bobby pins and hair clips).

27. Refillable lighters and lighter fluid.

28. Radios larger than 12x10x5.

29. State or employee personal office equipment/supplies to include: white out, paper clips, paper cups, tape, staples, staple remover, stapler, thumb tacks, "post- its", high lighters, metal three ring binders, spiral bound notebooks, telephone books, or scissors.

30. Tools.

31. Tin foil.

32. Toxic, caustic, flammable substances to include possession of unit cleaning supplies without authorization, gasoline, lacquer, paint, paint thinner, motor oil, kerosine, anti-freeze, acid.

33. Typewriters with memory banks.




*The Commonwealth of Massachusetts*
*Executive Office of Public Safety*
*Department of Correction*
*Bay State Correctional Center*
*28 Clark Street, P.O. Box 73*
*Norfolk, Massachusetts 02056*

**Argeo Paul Cellucci**
*Governor*

**Jane Swift**
*Lieutenant Governor*

**Jane Perlov**
*Secretary*

**Michael T. Maloney**
*Commissioner*

**Kathleen M. Dennehy**
*Deputy Commissioner*

**James Matesanz**
*Superintendent*

TO:         All Staff

FROM:       Steven Fairley, Director of Security

DATE:       November 7, 2000

RE:         **Inmate Contraband Item**

Be advised that employee state issued highlighters are considered to be inmate contraband.

However, the Education Department has been allowed to issue non-flourescent <u>pink</u> highlighters to the educational inmate population that are not considered contraband.

SF/jeb

cc:    James Matesanz, Superintendent
       Judy Sharpe, Deputy Superintendent
       Property
       Roll Call
       File

# Bay State C.C. —

## EDUCATIONAL SUMMARY SHEET

| NAME OF STUDENT | INMATE # | UNIT | DOB | SOCIAL SECURITY # |
|---|---|---|---|---|
| INGRAM, Larry | W-38220 | *(handwritten)* | 7/24/60 | 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 |

**TITLE OF CLASS:** Introduction to Management (BU)
**ENTRY DATE:** 9/03/98  **TERMINATION DATE:**
**REASON TERMINATED:**
**ABSENCES:**
**COMMENTS:**

**TITLE OF CLASS:** BU IS 304
**ENTRY DATE:** 1/1/00  **TERMINATION DATE:** 12/31/2000
**REASON TERMINATED:** EOC
**ABSENCES:**
**COMMENTS:**

**TITLE OF CLASS:** BU 50/00
**ENTRY DATE:** 1/1/00  **TERMINATION DATE:** 5/9/01
**REASON TERMINATED:** EOC
**ABSENCES:**
**COMMENTS:**

**TITLE OF CLASS:** BU 46363
**ENTRY DATE:** 9/1/06  **TERMINATION DATE:**
**REASON TERMINATED:**
**ABSENCES:**
**COMMENTS:**

**TITLE OF CLASS:**
**ENTRY DATE:**  **TERMINATION DATE:**
**REASON TERMINATED:**
**ABSENCES:**
**COMMENTS:**

**TITLE OF CLASS:**
**ENTRY DATE:**  **TERMINATION DATE:**
**REASON TERMINATED:**
**ABSENCES:**
**COMMENTS:**

**TITLE OF CLASS:**
**ENTRY DATE:**  **TERMINATION DATE:**
**REASON TERMINATED:**
**ABSENCES:**
**COMMENTS:**

**TITLE OF CLASS:**
**ENTRY DATE:**  **TERMINATION DATE:**
**REASON TERMINATED:**
**ABSENCES:**
**COMMENTS:**

**TITLE OF CLASS:**
**ENTRY DATE:**  **TERMINATION DATE:**
**REASON TERMINATED:**
**ABSENCES:**
**COMMENTS:**

MASSACHUSETTS DEPARTMENT OF CORRECTION          403-8

CONTRABAND NOTIFICATION

(✓) 1st Notice

( ) FINAL NOTICE

INMATE: _Ingram, Lanny    #W/38220_

The following articles have been held at the property area.  These articles are not allowed in this institution.
These articles **MUST** be picked up by a **VISIT**, or **MAILED** out within thirty (30) days, or will be disposed of
in accordance with 103 CMR 403.20.

1) Avey yellow Hi-Liter
2) Sylvania 40 W Light bulb
3) Cans Kiwi Brown
Shoe Polish 90% Empty

DATE: _11/20/01_

DATE DISPOSED: _____     PROPERTY OFFICER _____

SIGN AND RETURN TO PROPERTY OFFICER _____

White  -  Property Office          Canary  -  Inmate

Larry D. Ingram  Mod.2-221 A
W-38220

    I am requesting to have access to the tape recording for
d-reports #01-0135 and #01-0136  as soon as possible in preparation
of an appeal. Thank you.

*Reviewed tape cassettes on 12/13/01 9:00 Am*

## DEPARTMENT OF CORRECTION
## NOTICE OF CONTINUANCE

To: _Larry Ingraus_                    #: _W38220_

RE: _BS-01-0136_                  Date: _12/5/01_

As provided under the Disciplinary Regulations, 103 CMR 430.11 (2), at the request of the Disciplinary Officer, a continuance has been granted for your disciplinary hearing.

Your hearing has been rescheduled for:  _12/6/01_              _1:00 pm_
                                          (Date)                    (Time)

Notice Served By: _Paul D. Gly_                          _Sgt_
                  (Staff Person's Signature)            (Title)

            _12/5/01_                         _1:00_
            (Date)                            (Time)



                              _Paul D. Gly_
                    (Disciplinary Chairman / Officer's Signature)

* If an open date, you will be notified of the new date at least 24 hours prior to the hearing.

Bay State Correctional Center

## DEPARTMENT OF CORRECTION
## NOTICE OF CONTINUANCE

To:  **LARRY INGRAM**                                    #:   **W-38220**

RE:  **01-0136**                                  Date:   **11/20/2001**

As provided under the Disciplinary Regulations, 103 CMR 430.11 (2), at the request of the Disciplinary Officer, a continuance has been granted for your disciplinary hearing.

Your hearing has been rescheduled for:     **12/05/2001** *              **10:30 AM**
                                              (Date)                         (Time)

Notice Served By: _____          _____
                   (Staff Person's Signature)                    (Title)

                  _____11/28/01_____                  _____2:30_____
                       (Date)                              (Time)

                  _____
                  (Disciplinary Chairman / Officer's Signature)

* If an open date, you will be notified of the new date at least 24 hours prior to the hearing.

Bay State Correctional Center

## DEPARTMENT OF CORRECTION
## APPEAL FORM

Inmate: _Larry Ingram_                    #: _W38220_

D-Report #: _BS-01-0135_                   Housing Unit: _Mod 2_

**(1) MINOR MATTERS:** (103 CMR 430.10 (#5)) "An inmate aggrieved by the finding and/or sanction of the Disciplinary Officer on a minor matter may request a hearing before a Hearing Officer on the Disciplinary Report within two days of the receipt of the finding. The appeal hearing before the Hearing Officer shall be scheduled within a reasonable time and shall be conducted in accordance with the procedures governing hearings before a Hearing Officer on major matters, except the provisions of 103 CMR 430.12 (#1) and 430.12 (#3) shall not apply."

**(2) MAJOR MATTERS:** (103 CMR 430.18 (#1)) "All inmates may appeal the finding or sanction(s) of the Hearing Officer regarding a major matter or the appeal of a minor matter, to the Superintendent within five days following the inmate's receipt of the Hearing Officer's written decision. The Superintendent, at his discretion, may consider an appeal filed after the expiration of the five day period, but no later than fifteen days after the inmate has received the Hearing Officer's decision."

**(3)** The Commissioner or his designee shall serve as the Appellate Authority in any Disciplinary matter in which an inmate is sentenced to the Departmental Detention Unit (DDU). The Commissioner reviews all forfeitures of Good Time matters. Except as noted above, the Commissioner IS NOT an Appellate Authority in other Disciplinary matters.

**Please indicate the specific grounds of your appeal in the space below. (Use additional paper if necessary.)**

_____

_____

_____

_____

_____

**(See: Attached hereto)**

_Larry D. Ingram_                          _Dec. 21, 2001_
(Inmate's Signature)                        (Date)

**Bay State Correctional Center**

# DEPARTMENT OF CORRECTION
## APPEAL FORM

Inmate: **Larry Ingram**                    #: **W38220**

D-Report #: **BS-01-0136**          Housing Unit: **Mod 2**

**(1) MINOR MATTERS:** (103 CMR 430.10 (#5)) "An inmate aggrieved by the finding and/or sanction of the Disciplinary Officer on a minor matter may request a hearing before a Hearing Officer on the Disciplinary Report within two days of the receipt of the finding. The appeal hearing before the Hearing Officer shall be scheduled within a reasonable time and shall be conducted in accordance with the procedures governing hearings before a Hearing Officer on major matters, except the provisions of 103 CMR 430.12 (#1) and 430.12 (#3) shall not apply."

**(2) MAJOR MATTERS:** (103 CMR 430.18 (#1)) "All inmates may appeal the finding or sanction(s) of the Hearing Officer regarding a major matter or the appeal of a minor matter, to the Superintendent within five days following the inmate's receipt of the Hearing Officer's written decision. The Superintendent, at his discretion, may consider an appeal filed after the expiration of the five day period, but no later than fifteen days after the inmate has received the Hearing Officer's decision."

**(3)** The Commissioner or his designee shall serve as the Appellate Authority in any Disciplinary matter in which an inmate is sentenced to the Departmental Detention Unit (DDU). The Commissioner reviews all forfeitures of Good Time matters. Except as noted above, the Commissioner IS NOT an Appellate Authority in other Disciplinary matters.

**Please indicate the specific grounds of your appeal in the space below. (Use additional paper if necessary.)**

_____

_____

_____**(See: Attached hereto)**_____

_____

_____

_____

**Larry D. Ingram**                              **Dec. 21, 2001**
(Inmate's Signature)                                      (Date)

Bay State Correctional Center

James Matesanz, Superintendent
Bay State Correctional Center (BSCC)
28 Clark Street
Norfolk, Massachusetts. 02056

Larry D. Ingram, [W-38220] Mod.2. #221 A
Bay State Correctional Center
P.O. Box 73
Norfolk, Massachusetts. 02056

**Return
Receipt
Requested**

U.S. First Class Mail [7000 1530 0000 5686 6386] #########

Re: <u>Consolidated Disciplinary Appeal</u>
D-Reports,##01-0135 & 01-0136

Supt. Matesanz,

Please find before you my consolidate appeal to d-reports,#
01-0135 and 01-0136. Each disciplinary report is written by a different
officer, yet stem from a single incident.

The specific grounds for dismissal to d-report, #01-0135
are as follows: 1) Harassment and retaliatory actions relative to
outgoing legal mail by Capt. Donovan and Sgt. Glynn; 2) D-report, # 01-
0135 was written by Sgt. Glynn as an abuse of authority of Sgt. Glynn
and Capt. Donovan; and 3) Violation of existing CMR's, i.e. 103 CMR
430.07 and 430.11 (2). Sgt. Glynn wrote d-report, #01-0135, he should
have recused himself from all aspects of d-report, #01-0135, he did
not.

As to d-report, #01-0136 C.O. Todd Johnson was ordered,
(Respondeat Superior) by Capt. Donovan and/or Sgt. Glynn to search my
living quarters at 10:50 a.m. to find and confiscate contraband and
any excess property, etc., thus, a d-report. However, legal documents
were taken from my living quarters while I was detained in the inner
control holding cell for (7) hours. This action was retaliatory and
abuse of authority by Capt. Donovan and Sgt. Glynn. C.O. Johnson's
ordered room search produced an extra light bulb and a yellow Hi-Liter.
These items were allowed for retention by inmates (light bulbs still

**Consolidate appeal continued......2**

allowed for retention if you possess a lamp). I have never been
informed by notice or otherwise that I could no longer be in possession
of a yellow hi-liter or light bulbs.

    For these reasons, independently and accumulative the
Findings, Sanctions and Recommendations to d-reports, #01-0135 and
#01-0136 should be dismissed and expunged from my institutional record.


I.

**Disciplinary Report, 01-0135**


    I have attached my affidavit of the accuracy of the
circumstances which give rise and produced d-report, #01-0135. The
following is a more detailed description of what took place:


    On November 20, 2001 at approximately 8:05 a.m. I
went to mail (16)  10 x 13 manila envelopes to the
United States Marshals Office, Massachusetts. (I
requested that an unnamed inmate witness the contents
of each envelope prior to leaving Mod. 2 for mail out).

    Once in the main one housing dayroom the following staff
members were present, Capt. Chris Donovan, Sgt. Paul Glynn,
Sgt. Chris Morelli, I.P.S. Kennedy, C.O. David Heanult and
Tom Caulfield, mail Officer, and inmate Arlis Evans.

    I announced to C.O. Tom Calufield that the destination
of my mail out was to the United States Marshals Office.
I proceeded to allow C.O. Caulfield to inspect each
envelope individually. After several envelopes were inspected
Capt. Donovan began questioning me.

    Capt. Donovan: "where did you get those envelopes?"
    Inmate Ingram: "from the law library."

    Capt. Donovan: "where did you get all those copies from?"
    Inmate Ingram: "from the law library."

Consolidated appeal continued......3

    Capt. Donovan: "Did you fill out a slip for those copies?"
    Inmate Ingram: "yes."
    Capt. Donovan: "there better be one."

While still allowing C.O Caulfield to inspect the
envelopes Sgt. Glynn began questioning me:

    Sgt. Glynn: "Hey Larry, are you going on a trip today?"
    Inmate Ingram: "not to my knowledge, and if so, I'm not
                aware of such a trip."

    Capt. Donovan: "where did you get that envelope from?"
    Inmate Ingram: "I brought it."
    Capt. Donovan: "do you have proof of that?"
    Inmate Ingram: "yes I do."
    Capt. Donovan: "come and see me at 10:00 a.m., No! No! don't
                see me, see Sgt. Glynn."

    Sgt. Glynn: "I'll see you at 10:00 a.m. right Larry?"
    Inmate Ingram: "yeah, yeah, O.K."

It is evident that d-report, #01-0135 says nothing about
why I was instructed to report to A211 . It (d-report, #01-0135) does
not describe nor identify the envelope in question, (See: d-report,#
01-0135 ¶¶:one and two). A photostat copy of the envelope has been
submitted into evidence at both hearings to show relevancy and a
continuum of the intentions of Capt. Donovan and Sgt. Glynn.

I reasoned that I was suppose to report to A211 with proof
that I purchased the envelope in question. D-report, #01-0135 says
absolutely nothing about why I was instructed to report to A211. I
requested that the reporting officer, Sgt. Glynn be at the hearing,
and that the hearing be tape recorded. I asked Sgt. Glynn one question,

    Inmate Ingram: "why was I instructed to report to A211 ?"
    Sgt. Glynn: "the Captain wanted to get more information."

Consolidated appeal continued......4

Before I left the main one housing dayroom I clearly told Capt. Donovan that I had proof of purchase for the envelope he was concerned about. What more information could he have been looking for? At the hearing for d-report, #01-0135 I requested that Capt. Donovan be a witness. I asked Capt. Donovan several questions:

Inmate Ingram:    "why was I instructed to report to A211?"
Capt. Donovan:    "I wasn't satisfied with your answers."


At or about 10:15 a.m. Sergeants Glynn and Morelli entered Mod. two. Sgt. Glynn motioned for me to come to the officers station. Sgt. Glynn asked why didn't I report to A211 as instructed. I simply stated, "I forgot."
As a result of said reply I was escorted to the modular Sgt. office, over aggressively pat searched by Sgt. Glynn and taken to the inner control holding cell from 10:20 a.m. to 5:15 p.m. (7 hours) per order Capt. Donovan. (See: D-report, #01-0135, ¶3.)


According to d-report, #01-0136 a room search was conducted (per order Capt. Donovan and/or Sgt. Glynn) at 10:50 a.m. (30) minutes after I was detained at the inner control holding cell by C.O. Todd Johnson. C.O. Johnson considered the following item contraband, (1) 40 watt light bulb and (1) Avery yellow Hi-Liter and confiscated these items. (See: D-report, #01-0136).

He also confiscated (7) manila envelopes, one clearly marked "Exhibit", (the same type of envelope Capt. Donovan instructed me to report to A211 with proof of purchase), (1) Civil Complaint, #11804 (20 pages), 44 exhibits (133 pages), and a Judges order directing service upon the defendants by U.S. Marshals.

Consolidated appeal continued......5

At or about 2:00 p.m. 11/20/01 Capt. Donovan and
Sgt. Glynn entered the inner control holding cell.
The following is a summary of the conversation that
ensued:

Capt. Donovan: "You can't beat the system. There are things
                we all have to do, even I have to do things
                I don't like, but in the end the system
                always win."
                "Don't you like it here? You wouldn't want
                to be in 10 block with urine and feces all
                over the place?"

Inmate Ingram: "I like it here, and No! I wouldn't want to
                live in those conditions."

Capt. Donovan: "Now, I know when someone is calling me a liar."

Inmate Ingram: "I haven't called anyone a liar."

Capt. Donovan: "Now, where did you get that envelope?"

Inmate Ingram: "Crow's Office Supplies."

Capt. Donovan: "Do you have proof of that?"

Inmate Ingram: "I can provide proof for the envelope you are
                concerned about."

Capt. Donovan: "I'll see you in court."


When I was released from the inner control holding cell
at 5:15 p.m. I returned to my living quarters. I immediately
realized that, as previously described, (7) manila envelopes,
one clearly marked "exhibit", (1) Civil complaint, #11804 (20
pages), Exhibits (133 pages), and a Judges order directing
service by the U.S. Marshals were missing from my cell. The
civil complaint and judges order was not within a envelope,
however, these documents were the same exact contents of the
(15) 10x13 marked "legal" envelopes I had mailed earlier
that morning. All the other envelopes taken from my cell
contained legal documents.

The following day, November 21, 2001 at approximately at
1:00 p.m. Sgt. Morelli said he needed to see me in his office.
The following dialogue took place as he placed a box with
"1 cubic foot" written on it containing what look like the
documents taken from my cell. The following dialogue took
place:

Consolidated appeal continued......6

Sgt. Morelli:    "you were over the 1 cubic foot limit for
                 legal documents."

Inmate Ingram: "who took legal documents from my cell?"

Sgt. Morelli:    "I don't know."

Inmate Ingram: "what do you mean you don't know, you're the
                 modular housing Sergeant, you should know."

At approximately 1:05 p.m. I was given all the legal
documents taken from my cell.

    The nature of d-report, #01-0135 is my proof of purchase
of a particular envelope. It is clear that I was detained (7 hours),
ordered to have my cell searched, and (7) similar envelopes Capt.
Donovan was concerned about, a civil complaint with its exhibits
taken from my cell. Sgt. Glynn stated, "The Capt. wanted to get more
information." Then Capt. Donovan stated, "I wasn't satisfied with
your answers." Capt. Donovan's final statement made to me at the
inner control holding cell surmise the extent of his satisfaction,
"I'll see you in court."

    Lastly, Sgt. Glynn wrote d-report,#01-0135. He should have
recused himself from all aspects of d-report, #01-0135, he did not.
See, 103 CMR 430.07 (1), Disciplinary Personnel:

430.07  Disciplinary Personnel

(1)  The Superintendent at each institution shall appoint a
     disciplinary officer who is of supervisory rank or function,
     who will perform the functions of that office, as set forth in
     103 CMR 430.00. The Superintendent may appoint a disciplinary
     officer for a definite or indefinite term and may in addition
     appoint a separate disciplinary officer for any disciplinary
     matter or class of disciplinary matters.

(2)  The Superintendent shall appoint a hearing officer or officers
     to conduct disciplinary hearings as set forth in 103 CMR
     430.00. Each Superintendent may appoint a hearing officer or
     officers for a definite or indefinite term and may in addition
     appoint a new hearing officer to hear and determine any
     disciplinary matter or class of disciplinary matters.

**Consolidated appeal continued......7**

More specifically, Sgt. Glynn as the Disciplinary Officer requested two continuance concerning d-report, #01-0135, See, attachments <u>A</u> and <u>B</u>, also See, 103 CMR 430.11 (2), Notice and Scheduling of Hearing Before a Hearing Officer:

> **430.11  Proceedings in Major Matters:  Notice and Scheduling of Hearing Before a Hearing Officer**
>
> (1)  Within one weekday of the designation of the offense as a major matter, the disciplinary report, a notice of hearing, and a request for representation and/or witness form shall be served upon the inmate by the disciplinary officer or his designee.
>
> (2)  The disciplinary officer shall schedule a hearing before a hearing officer within a reasonable time, but not less than 24 hours after the inmate has been served with both the disciplinary report and the notice specifying the time of hearing.  The disciplinary officer or hearing officer may continue a hearing at his discretion.  The inmate shall be given written notice of such continuance and the new date for the hearing.  The inmate shall be entitled to one continuance for good cause provided that any request for a continuance must ordinarily be made at least 24 hours prior to the scheduled time of the hearing.

Surely, this may be considered an innocuous error, but in the totality of the initiation involving the circumstances created solely by Capt. Donovan and Sgt. Glynn, he Sgt. Glynn should have recused himself from all aspects of d-report, #01-0135 to eliminate any appearance of impropriety.

Consolidated appeal continued......8

## II.
### Disciplinary Report, 01-0136

C.O. Todd Johnson was ordered to search me cell 30 minutes after I was detained at the inner control holding cell.

At the hearing for d-report, #01-0136, the hearing was tape recorded. I asked Officer Johnson several questions:

Inmate Ingram:   "Did you confiscate anything else from my cell besides the light bulb and a Hi-Liter?"

C.O. Johnson:   "Yes, excess legal papers."

Inmate Ingram:   "Was this a random search or were you ordered to search my cell?"

Note: The Hearing Officer R. Palmer stated that that question was immaterial and precluded C.O. Johnson from answering that question.

This question was very material and relative to what prompt C.O. Johnson to randomly search my cell on November 20, 2001, at 10:50 a.m. and confiscate the exact legal contents of (15) envelopes air marked for the U.S. Marshals office earlier that same morning.

Why would Capt. Donovan say to me at 2:00 p.m. at the inner control holding cell, "I'll see you in court." The only logical deduction,Capt. Donovan and/or Sgt. Glynn ordered my cell be searched, confiscate legal documents, documents had to have been read in order to know that they were legal, illegally possess my legal material, legal material directly relative to civil litigation against staff here at this institution and read or do as they wish with my legal documents. At no time have I said to Capt. Donovan or any other staff member that I was taking them to court.

The light bulb and the Hi-Liter are a diversion to obscure the real intent behind the clandestine actions of Capt. Donovan and Sgt. Glynn. Sgt. Glynn, as the Disciplinary Officer denied my

**Consolidated appeal continued......9**

my request to have property records that would have shown that light
bulbs were at one time allowed to enter the institution, thus inmates
could and still possess the right to retain them in their living
quarters.

      I have been a college student at this institution since
April 1993. I have received numerous yellow hi-liters through the
educational department, not the present educational staff. I have never
been informed that I, nor inmates in general have been informed that if
you are in possession of a    "yellow hi-liter" it is considered contraband
and you would be receiving a d-report. The memo issued by Director of
Security, Steven Fairley on November 7, 2000, is addressed to All Staff,
not to inmates nor to be posted in the housing units. Nothing tells me
that a yellow hi-liter in my possession is contraband, therefore, I have
not knowingly violated the rules and regulations of this institution.

      Finally, as to the regulations referred to in this appeal
have the force of law. The disciplinary hearing is a quasi-judicial
hearing which are afforded certain procedural rights. Some of those
rights have been abridged. A regulation promulgated pursuant to
Legislative Authority, as is 103 CMR 430.00 et seq. generally have
the force of law and is binding on the agency that promulgated it.
See: Kenny v. Commissioner, 393 Mass at 33 (1984). Once an agency has
seen fit to promulgate a regulation, as the DOC has, it must comply with
it, See: Royce v. Commissioner, 390 Mass 423, 427 (1983), also See:
Dalomba's case, 352 Mass 598, 603 (1967), and Stokes v. Commissioner,
26 Mass. App. Ct. 585, 588 (1988).

Consolidate appeal continue....10

III.

Conclusion

For the foregoing reasons disciplinary reports, ##
01-0135 and 01-0136, their Findings, Sanctions and Recommendations
should be dismissed and expunged from my institutional record.

Respectfully submitted,

Larry D. Ingram [W-38220]
Bay State Correctional Center
P.O. Box 73
Norfolk, Massachusetts. 02056

cc: Attorney Rust
    file




*The Commonwealth of Massachusetts*
*Executive Office of Public Safety*
*Department of Correction*
*Bay State Correctional Center*
*28 Clark Street, P.O. Box 73*
*Norfolk, Massachusetts 02056*

**Jane Swift**
*Governor*

**Jane Perlov**
*Secretary*

**Michael T. Maloney**
*Commissioner*

**Kathleen M. Dennehy**
*Deputy Commissioner*

**James Matesanz**
*Superintendent*

To:        Larry Ingram, W38270

From:      James Matesanz, Superintendent

Date:      February 11, 2002

Re:        **Appeal Results for BS-01-0135 and 0136**

I have reviewed your appeal and transcripts of the disciplinary
hearing for BS-01-0135 and 0136. I have decided to uphold the
findings and sanctions of the hearing officer. Therefore, the
findings and sanctions will stand.  Your appeal is denied.

*Served*
*2/11/02*

cc:  File

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

```
                                              )
LARRY D. INGRAM,                              )
                                              )
              Plaintiff,                      )
                                              )
       v.                                     )      Case No. 01 CV 11804-RCL
                                              )
JAMES T. CANAVAN, et al.,                     )
                                              )
              Defendants.                     )
                                              )
UNITED STATES OF AMERICA,                     )
                                              )
              Intervenor.                     )
                                              )
```

---

<u>MEMORANDUM AND ORDER ON THE DEFENDANTS'
MOTION TO DISMISS AND/OR SUMMARY JUDGMENT</u>

LINDSAY, District Judge.

The plaintiff, Larry D. Ingram, is a Massachusetts state prisoner currently confined at the

Bay State Correctional Center ("Bay State") in Norfolk, Massachusetts.  The defendants are:

James Matesanz, Superintendent of Bay State; Judy Sharpe, Deputy Superintendent of Bay State;

James Grace, David Henault, Paul Labouliere, Joseph Casey, Eugene Benevides, Frank Murray

and James Canavan, correctional officers at Bay State; Hassan Osman, Bay State's Muslim

Chaplain; and Captain Christopher Donovan, lieutenants Peter Gaw and Robert White, and

sergeants Christopher Morelli and Paul Glynn, all of whom are employed in various capacities at

Bay State.

The complaint seeks declaratory and injunctive relief, as well as monetary damages with

respect to claims brought under 42 U.S.C. § 1983, for alleged deprivations of federal



constitutional rights. The plaintiff has also brought claims for violations of various rights under Massachusetts law. The defendants have moved to dismiss the complaint, or, in the alternative for summary judgment on each of the plaintiff's claims.[1] Because the motion is cast in the alternative and the issues it raises require resort to matter outside of the pleadings, I will treat this motion as one for summary judgment. *See* Fed. R. Civ. P. 12(b)(6); *Smith v. Massachusetts Dep't of Correction*, 936 F.2d 1390, 1394 (1st Cir. 1991).[2]

## I. THE FACTS

The following events are a summary of the material, undisputed facts:

On March 9, 1999, Officer Canavan conducted a search of the plaintiff's cell and issued disciplinary report number 99-0054 ("DR 99-0054"), in which Canavan alleged four infractions of prison regulations. On March 10, 1999, Canavan made the following statement, referring to the search of March 9, 1999 and to an earlier, similar search when, both times, Canavan found books in excess of the number the plaintiff was permitted: "That's twice you burned me. I see I cannot afford you the opportunity to dispose of violations on your own. The next time I will make sure we deal with this properly. I'm going to make sure that there are no misunderstandings this time about what I want." Also on March 10, 1999, the plaintiff was found not guilty of the infractions

---

[1]In their papers, the parties refer to the plaintiff's supplementary complaint. On March 15, 2002, subsequent to the filing of this motion, I denied, without prejudice, the plaintiff's motion to file a supplementary complaint. The plaintiff's motion for reconsideration was denied on April 26, 2004, and his interlocutory appeal was dismissed by the First Circuit for lack of jurisdiction. Accordingly, I consider only the allegations contained in the plaintiff's original complaint, filed on December 18, 2001.

[2] In their papers, filed in connection with this motion, the parties have referred to matters outside the pleadings. Under these circumstances, the notice I give here of my treatment of the motion as one for summary judgment is sufficient. *See Collier v. Chicopee,* 158 F.3d 601, 603 (1st Cir. 1998).

alleged in DR-99-0054, and the disciplinary report was dismissed without a hearing. On March 11, 1999, the plaintiff filed his first grievance with Bay State's internal grievance coordinator, alleging that Canavan had abused his discretion by conducting an unofficial search of his cell. The grievance was based in part on Canavan's statement on March 10, 1999, quoted above. This first grievance was denied on March 19, 1999, and affirmed on appeal by Superintendent Matesanz on March 31, 1999.

On July 30, 2000, Canavan entered the plaintiff's cell on a routine security check and found three infractions. Canavan informed the plaintiff of the infractions in what the plaintiff found to be a hostile manner and threatened the plaintiff with a disciplinary report. The threatened report, however, was never filed.

On August 10, 2000, the plaintiff filed his second grievance against Canavan, complaining that DR 99-0054 and the July 30, 2000, search of his cell were retaliatory, in response to his filing of grievances. This second grievance was denied on October 4, 2000 and affirmed on appeal by Matesanz on November 29, 2000.

On December 13, 2000, Canavan issued DR 00-0234 against the plaintiff, charging him with five offenses arising out of a confrontation between the two in a hallway. The offenses charged were disobeying an order of, lying to, or insolence toward a staff member; violating a departmental rule or regulation, being out of place; disruptive conduct; and attempting to commit the foregoing offenses. The events giving rise to the disciplinary report were witnessed by Sergeant Morelli, who wrote a witness report.

The plaintiff filed his third grievance against Canavan on December 15, 2000, complaining that DR 00-0234 was false and was issued in retaliation for Canavan's use of the grievance

3

system. This grievance was denied by Deputy Superintendent Sharpe on December 18, 2000. A formal hearing on DR 00-0234 was held on December 21, 2000, and Officer Benevides, who presided as the hearing officer, found the plaintiff guilty of the infractions and issued the following sanctions: a return of the plaintiff to a modular unit at the bottom of seniority list C bunk (meaning that the plaintiff was transferred from a single cell to a triple) and a recommendation for "custody status review."[3]

Officer Grace issued DR 00-0240 on December 24, 2001, charging the plaintiff with four infractions. On December 26, 2000, the plaintiff filed a fourth grievance, seeking relief from the filing of false disciplinary reports in retaliation for using the grievance system.

On December 27, 2000, the plaintiff was informed by Officer Kristie Ladouceur, who is not a defendant in this case, that his fourth grievance and the appeal of his third grievance were referred to Matesanz, who denied them on January 9, 2001. A formal hearing was held on DR 00-0240 on January 8, 2001, and the plaintiff was found guilty after a hearing by Officer Benevides, who imposed the following sanctions: one month loss of canteen privileges, one month loss of phone privileges, and a recommendation for a custody status review. On January 30, 2001, Matesanz reviewed the decisions as to both DR 00-0234 and DR 00-0240, the plaintiff having appealed the hearing officer's decisions as to both. Matesanz denied the plaintiff's appeal, but restored him to fifth on the housing seniority list and suspended, for six months, the transfer of the plaintiff from a single to a triple cell ordered by Benevides with respect to DR 00-0234.

On April 23, 2001, Officer Casey conducted a search of the plaintiff's cell and found

---

[3] The parties do not explain the concept of "custody status review" in their papers.

4

several prohibited items.  The plaintiff was placed in restraints by Officers Morelli, Henault, Canavan, and Casey and confined to a holding cell for approximately four hours.  Casey issued DR 01-0050, charging the plaintiff with eight infractions.  The next day, April 24, 2001, Officers Gaw, Donovan, and White escorted the plaintiff to a triple cell in the modular housing unit.

A formal hearing on DR 01-0050 was held on May 1, 2001.  The plaintiff was found guilty of the infractions charged by Hearing Officer Murray and was placed at the bottom of the housing seniority list.  The plaintiff appealed this finding twice, once on May 15, 2001, and again on May 18, 2001.  On May 31, 2001, Matesanz responded to the plaintiff's appeals, explaining that the plaintiff's immediate move to the modular housing unit took place because he had been found guilty of several recent disciplinary reports, and that Matesanz found it appropriate to impose the transfer sanction that he had originally suspended on January 30, 2001.

From October 27, 1999 to December 10, 1999, Islamic Arabic classes that the plaintiff had been attending were cancelled.  At least initially, the reason given to the plaintiff by Officer Glynn was that "inmates can not teach other inmates."  The classes were allowed to resume, however, on December 11, 1999, once a proposal for the classes had been approved by the officer in charge of programs.

From some time in 1998 the plaintiff has held a paid position as the clerk for Muslim Chaplain Hassan Osman at Bay State.  Up to May 2001, the plaintiff earned between $45 and $55 a month as a clerk.  In late May or early June of 2001, the plaintiff began receiving less pay for his job as clerk, either because his hours were reduced or because his pay rate was reduced.[4]  By the end of June 2001, the plaintiff's pay increased slightly, but never returned to the pre-May level.

_____

[4]The parties dispute how long the plaintiff has held his job and why he began receiving less pay.

As of July 2001, the plaintiff earned $4.50 per week as the clerk.

## II. DISCUSSION

Summary judgment is appropriate when, "based upon the pleadings, affidavits, and depositions, 'there is no genuine issue as to any material fact,' and where 'the moving party is entitled to judgment as a matter of law.'" *FDIC v. Anchor Properties*, 13 F.3d 27, 30 (1ˢᵗ Cir. 1994) (quoting Fed. R. Civ. P. 56(c) and citing *Gaskell v. Harvard Co-Op Soc'y*, 3 F.3d 495, 497 (1ˢᵗ Cir. 1993)). The moving party has the burden to establish the lack of a genuine, material factual issue. *See Snow v. Harnischfeger Corp.*, 12 F.3d 1154, 1157 (1ˢᵗ Cir. 1993).

The plaintiff claims that he was deprived of rights under the First and Fourteenth amendments to the Constitution of the United States; the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc. *et seq.*; the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. Laws ch. 12, §§ 11H & 11I; Mass. Gen. Laws ch. 127, § 38E; and Mass. Regs. Code tit. 103 § 491:00 *et seq.* I will discuss each in turn.

### A. Due Process Claims

In ¶¶ 113-115, 118, and 119 of his complaint, the plaintiff alleges that he was denied due process of law guaranteed to him by the Fourteenth Amendment when he was sanctioned following procedurally deficient disciplinary hearings. The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. The Supreme Court has held that there are two steps to any procedural due process analysis: "the first asks whether there exists a liberty or property interest which has been interfered with by [state actors]; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corrections v. Thompson*, 490

6

U.S. 454, 460 (1989) (internal citations omitted).

Thus, before the plaintiff may claim a deprivation of due process, he must establish that a protected liberty interest has been implicated. A cognizable liberty interest may derive from either the Due Process Clause itself or from state statutes or regulations. *See Sandin v. Conner*, 515 U.S. 472, 483 (1995). The Due Process Clause typically protects against the extension or modification of a prisoner's confinement beyond that contemplated by a sentence imposed following a fair trial. *See, e.g., Washington v. Harper*, 494 U.S. 210 (1990) (finding a constitutionally-derived liberty interest implicated in the involuntary administration of antipsychotic drugs); *Vitek v. Jones*, 445 U.S. 480 (1980) (finding a constitutionally-derived liberty interest implicated in the involuntary commitment to a mental hospital); *Morrisey v. Brewer*, 408 U.S. 471 (1972) (finding a constitutionally-derived liberty interest implicated in the revocation of parole). Generally, however, "prisoners under confinement do not have [] constitutionally-derived liberty interest[s]." *See Dominique v. Weld*, 73 F.3d 1156, 1158n.4 (1st Cir. 1996). State created liberty interests, as the Supreme Court has explained:

> will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . ., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin*, 515 U.S. at 483-84.

The disciplinary sanctions imposed on the plaintiff – placement at the bottom of the housing seniority list, one month loss of canteen and phone privileges, placement in restraints, and confinement for up to four hours in a holding cell – do not interfere with any liberty interests derived from either source. Such punishments are not the kind of restraint on liberty that so

7

affects the length or conditions of confinement as to command protection under the Due Process Clause itself. *See Hewitt v. Helms*, 459 U.S. 460, 468 (1983) (reiterating that as long as the conditions or degree of confinement is within the sentence imposed, it does not violate the Due Process Clause itself), *overruled on other grounds by Sandin*, 515 U.S. 472 (1995). The plaintiff has offered no argument that a state statute or regulation is a source of a potential state-created liberty interest. *See Hamm v. Latessa*, 72 F.3d 947, 956 (1995) (holding that the state administrative scheme did not mandate that an inmate receive a parole hearing after fifteen years, and therefore refusal to give him such a hearing did not violate the Due Process Clause). Furthermore, assuming that Massachusetts, by statute or regulation, has established protective procedures for the imposition of sanctions on inmates, such established procedures did not create a liberty interest here, because the sanctions imposed on the plaintiff inflicted no "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" commanding constitutional protection. *See Dominique*, 73 F.3d at 1160 (holding that *Sandin's* "atypical and significant hardship" test was not met because an inmate's removal from a work release program did not change the conditions or duration of his confinement).

　　　　Because I conclude, on the undisputed facts, that the plaintiff has failed to establish that he was deprived of a protected liberty interest, I need not address the question of whether the challenged disciplinary hearings comported with the dictates of due process. I GRANT the defendants' motion for summary judgment on the plaintiff's due process claims asserted in ¶¶ 113-115, 118, and 119 of the complaint.

## B. Retaliation and Conspiracy Claims

The plaintiff has also alleged in ¶¶ 109-117, 119, and 122-123 of his complaint, that he was the victim of retaliation and a conspiracy to retaliate for the exercise of his First Amendment right to file grievances. The alleged retaliation took various forms, including, the plaintiff claims, the filing of false disciplinary and witness reports against him, deliberate indifference to his appeals and grievances, threats to rotate his job to another inmate, and the reduction of his wages as a clerk.

Although the plaintiff has no right to a prison job, to be paid wages, or to be protected against the filing of false disciplinary reports, "he may nevertheless establish a claim under § 1983" if the actions complained of were taken "by reason of his exercise of constitutionally protected First Amendment freedoms." *McDonald v. Hall*, 610 F.2d 16, 18 (1ˢᵗ Cir. 1979); *see also Buise v. Hudkins*, 584 F.2d 223, 229 (7th Cir. 1978), *cert. denied*, 440 U.S. 916 (1979) ("[A]n act in retaliation for the exercise of a constitutional right is actionable under [s]ection 1983 even if the act, when taken for different reasons, would have been proper.").

To defeat summary judgment, the plaintiff must first establish that he was engaged in activity protected by the First Amendment. *See Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996); *Garcia v. District of Columbia*, 56 F. Supp. 2d 1, 5-6 (D.D.C. 1999). In addition, he must establish that the alleged retaliatory purpose was the "actual motivating factor" in each defendant's decision to take the actions that the plaintiff finds injurious. *See McDonald*, 610 F.2d at 18.

The plaintiff first alleges in ¶¶ 109 and 110, that Canavan, Morelli, Labouliere, Grace, and Casey filed false disciplinary and witness reports in retaliation for inmate grievances the plaintiff filed against Canavan. While a "prison inmate has no constitutionally guaranteed immunity from

9

being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest," *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986), an inmate is constitutionally protected against the filing of false disciplinary reports in retaliation for exercising First Amendment rights. *See Graham*, 89 F.3d at 80 (holding that an inmate's pursuit of a grievance is protected by the First and Fourteenth Amendments, and that prison officials may not retaliate against an inmate for exercise of that right); *Garcia v. District of Columbia*, 56 F. Supp. 2d at 6.

The right to petition the government for redress of grievances is "among the most precious of the liberties safeguarded by the Bill of Rights," *United Mine Workers v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967), regardless which branch of government an individual petitions. *See California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). The First Amendment right to petition the government for redress of grievances includes the right of an inmate to file grievances under an established prison grievance procedure. *See Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989); *Franco v. Kelly*, 854 F.2d 584, 589-90 (2d Cir. 1988). The right of an inmate to file a grievance is protected by the Constitution because of the close relationship between grievance procedures and access to the courts. *See Franco*, 854 F.2d 589-90; *see also Garcia*, 56 F. Supp. 2d at 6 (holding that the filing of an inmate grievance is protected by the First Amendment because exhaustion of administrative remedies is a prerequisite to filing a § 1983 action). The record demonstrates in this case that, in filing grievances, the plaintiff was engaged in an constitutionally-protected activity.

The plaintiff must next establish that each of the defendants acted with the motivation to

10

retaliate for grievances he filed against Canavan, and that the particular defendant in question would not have filed disciplinary reports "but for" the alleged retaliatory reason.  *See McDonald*, 610 F.2d at 18 (citing *Mount Healthy City Board of Ed. v. Doyle*, 429 U.S. 274 (1977)).  The plaintiff may show a defendant's state of mind by establishing facts tending to support an inference of retaliation.  *Id.*

        The plaintiff offers a chronology of events as factual support for at least a temporal connection between the filing of his grievances and the issuance of disciplinary reports.  The gist of the plaintiff's contention is that the temporal connection between his filing of grievances and the issuance of disciplinary reports makes triable his claim of retaliation.  The difficulty is, however, that the chronology does not support an inference of retaliation.

        The plaintiff's first grievance against Canavan was filed on March 11, 1999, and was resolved on March 31, 1999.  It was not until July 30, 2000, one year and two months later, that the plaintiff alleges that Canavan entered his cell on a "routine security check" and threatened him with a disciplinary report for three "minor infractions."  The threatened issuance of a disciplinary report in July 2000 is simply too remote from the date of the filing of the grievance to reasonably support an claim of retaliation.  Moreover, in this instance, the disciplinary report was never filed – a fact which further militates against an inference of retaliation.

        On August 10, 2000, the plaintiff filed a second grievance against Canavan.  The second grievance was initially denied on October 4, 2000, and affirmed on appeal on November 29, 2000.  The plaintiff alleges that on December 13, 2000, only two weeks after his appeal was denied, but over four months after he initially filed the grievance, Canavan filed a false disciplinary report (DR 00-0234).  Again, the alleged issuance of the retaliatory disciplinary report is too remote in time

from the filing of the grievance to support a reasonable inference of retaliation.

A connection between an alleged retaliatory motive and the actions of defendants, other than Canavan, is even more attenuated. It appears that the plaintiff's claim is that these defendants punished the plaintiff in various ways to retaliate against him for filing grievances against Canavan. The chronology offered by the plaintiff does not support that claim, and the plaintiff has not otherwise offered facts to support it.

Specifically, the plaintiff alleges, in ¶¶ 112, 113, and 118, that defendants Glynn, Benevides, and Murray, as hearing officers, retaliated against him for filing grievances by refusing to allow him to call certain witnesses or to produce certain items as evidence at his disciplinary hearings and by finding him guilty of DR 00-0234, DR 00-0240, and DR 01-0050. He further alleges that defendants Sharpe and Matesanz retaliated against him for filing grievances by maintaining a deliberately indifferent stance toward his grievances and disciplinary appeals. The plaintiff has provided no reason to think that the dispositions of his grievances and appeals rendered by these defendants were in any way connected to the filing of grievances against Canavan.

The plaintiff next alleges in ¶¶ 111, 117, 122, and 123 that defendants Osman, Henault, and Gaw retaliated against him for filing a petition objecting to the termination of Muslim Arabic classes by threatening to rotate his job to another inmate and by reducing his wages. Again, the alleged chronology does not support an inference of retaliation, and the plaintiff has not otherwise supported the allegation. The plaintiff filed his petition on December 7, 1999, and was informed two days later that the classes would be allowed to resume. The plaintiff was allegedly threatened with job rotation by defendant Osman on March 24, 2000, over three months following the filing of the plaintiff's petition. In any case, Osman ultimately changed his mind, and the threat of a job

12

rotation was never carried out. Although the plaintiff's pay rate (or hours) was ultimately reduced in May or June of 2001, this action is not sufficiently connected in time to the plaintiff's exercise of his right to petition concerning the termination of language classes to give rise to an inference of retaliatory purpose.

Third, the plaintiff alleges in ¶¶ 114-116 that defendants Gaw, White, Donovan, and Matesanz retaliated against him for filing grievances against Canavan and Glynn and for questioning the impartiality of Hearing Officer Benevides. The plaintiff's third and fourth grievances were filed on December 15, 2000, and December 26, 2000, respectively, and were denied by Matesanz on January 9, 2001. The retaliation, according to the plaintiff, consisted of the decision by Matesanz on April 24, 2001, to reinstate the suspended disposition of DR-0234 (thus placing the plaintiff again on the bottom of the housing seniority list) and the execution of this decision by Gaw, White, and Donovan, who escorted the plaintiff from a single cell to a triple.

In *Layne v. Vinzant*, the First Circuit noted that on summary judgment, the plaintiff faced a "substantial burden" in proving that the actual motivating factor for his transfer to another facility was retaliation for a lawsuit he filed against prison officials. 637 F.2d 468, 475 (1st Cir. 1981) (quoting *McDonald*, 610 F.2d at 18-19). The court concluded that, even though the plaintiff was transferred the day after he filed suit, the "mere chronology alleged in the complaint, while sufficient to withstand a motion to dismiss, cannot get plaintiff to the jury once defendants have produced evidence of a legitimate reason." *Id.* at 476. Here, Matesanz's decision to reinstate the suspended punishment was made nearly four months after the plaintiff filed his third and fourth grievances. Moreover, he and the other officers acted in response to a search of the plaintiff's room that turned up several prohibited items. The chronology is thus not supportive of

13

the plaintiff's claim, and the plaintiff does not deny that prohibited items were found in his room.

Finally, the plaintiff has alleged in ¶¶ 110-115, 117, 119, and 122-23 that all of the defendants except Canavan conspired to retaliate against him for exercising his First Amendment rights. Agreement as to a common improper purpose, of course, is the principal element of a conspiracy claim. *See Earle v. Benoit*, 850 F.2d 836, 844 (1st Cir. 1988). The plaintiff has produced no factual support for his claim that the defendants entered into an agreement to retaliate against him.

In sum, the record indicates that the plaintiff was found guilty by various hearing officers as to each of the disciplinary reports in question. The broad discretion accorded prison officials in disciplining inmates, *see Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445, 455-56 (1985), along with the plaintiff's failure to establish that "but for" the defendants' improper motives, he would not have been disciplined, makes summary judgment "particularly appropriate." *McDonald*, 610 F.2d at 18-19. I therefore GRANT the defendants' motion for summary judgment as to each of the plaintiff's retaliation claims alleged in ¶¶ 109-117, 119, and 122-123 and each of his conspiracy claims alleged in ¶¶ 110-115, 117, 119, and 122-23.

### C. Claims under the Free Exercise Clause and the Religious Land Use and Institutionalized Persons Act of 2000

In ¶ 121, the plaintiff alleges that defendant Glynn prevented him from attending Islamic Arabic classes and thus imposed a substantial burden on the free exercise of his beliefs in violation of the First Amendment and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §§2000cc-2000cc5, Pub. L.. No. 106-274, 114 Stat. 803-807 ("RLUIPA"). I address first the plaintiff's claim under RLUIPA.

RLUIPA was signed into law on September 22, 2000. The statute provides, in pertinent part, that "[n]o government shall impose a substantial burden on the religious exercise of a person

residing in or confined to an institution . . . even if that burden results from a rule of general

applicability, unless the government demonstrates that imposition of the burden on that person –

(1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of

furthering that compelling government interest." 42 U.S.C. § 2000cc-1(a). RLUIPA was enacted

pursuant to Congress's powers under the Spending and Commerce Clauses. *See* 42 U.S.C. §

2000cc-1(b)(1); 42 U.S.C. § 2000cc-1(b)(2). The defendants contend that the above-quoted

provision of RLUIPA is an unconstitutional enactment because it reaches beyond the legitimate

powers of Congress under the Spending and Commerce Clauses, violates the Establishment

Clause, and improperly impinges on state sovereign immunity under the Eleventh Amendment.[5] I

do not reach the question of the constitutionality of RLUIPA, however, because I conclude that

the plaintiff's claim can be resolved as a statutory matter.

The plaintiff alleges that he was improperly prevented from attending Islamic Arabic

classes from October 27, 1999 to December 10, 1999, nearly a year prior to the enactment of

RLUIPA. The plaintiff may seek relief under this statute only if the statute is to be retroactively

applied.

A strong presumption against the retroactive application of statutory law is "deeply rooted

in our jurisprudence, and embodies a legal doctrine centuries older than our Republic. Elementary

---

[5] Pursuant to Fed. R. Civ. P. 24(a)(1), the United States, acting by the Department of Justice, intervened to defend the constitutionality of RLUIPA. In addition, Kurt Wm. Hemr, Esquire, responding to a solicitation of the court, undertook the effort on behalf of the plaintiff to prepare a brief and argue in favor of the constitutionality of RLUIPA. I am grateful to Mr. Hemr for accepting this assignment and for the evident care, hard work, and legal skill and insight he applied pro bono to the role he assumed in this case. The resolution of this case makes it unnecessary that I reach the question that Mr. Hemr was initially asked to address. Even so, I am deeply grateful for the excellent briefs he prepared and the public spirit he demonstrated in undertaking to represent the plaintiff on this question.

15

considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." *Landgraf v. USI Film Products*, 511 U.S. 244, 265 (1994); *see also INS v. St. Cyr*, 533 U.S. 289, 315-16 (2001).  "Accordingly, 'congressional enactments . . . will not be construed to have retroactive effect unless their language requires this result." *St. Cyr*, 533 U.S. at 315 (quoting *Bowen v. Georgetown Univ. Hospital*, 488 U.S. 204, 208 (1988).  RLUIPA is silent as to whether it applies to actions taken prior to its enactment, and "nothing in the language of RLUIPA suggests that Congress [intended to] impose its conditions retroactively." *Williams v. Bitner*, 285 F. Supp. 2d 593, 602 (M.D. Pa. 2003) (citing RLUIPA).  Moreover, applying RLUIPA to the facts of this case would have the impermissible "retroactive effect" of imposing on defendant Glynn "new duties with respect to transactions already completed." *See Landgraf*, 511 U.S. at 280.

     In response to the retroactivity issue, raised by the court in an order dated February 19, 2004, the plaintiff argues first that he has been subject to a continuing course of retaliatory conduct, beginning with his petition for Islamic Arabic classes and lasting well past the date of the statute's enactment.  Although the plaintiff has alleged that he was the victim of retaliation in 2000 and 2001, he has never alleged that he was retaliated against for exercising his rights under RLUIPA.  Instead, his claims of retaliation concern only the exercise of his right to file inmate grievances under the First Amendment.

     Next, the plaintiff argues that his claim for prospective relief should not be barred by an anti-retroactivity rule.  The plaintiff, however, has not asked for an injunction to restore his rights

16

under RLUIPA.  In any case, injunctive relief is not required because, it appears from the record that the Islamic Arabic classes were allowed to resume on December 11, 1999.

I conclude that RLUIPA has no retroactive effect, and that because the violation asserted by the plaintiff occurred prior to the enactment of the statute, the plaintiff may not avail himself of its heightened protections.  Accordingly, I GRANT the defendants' motion for summary judgment on the plaintiff's claims for relief under the RLUIPA.

Because I find that RLUIPA does not apply in this case, I must analyze the plaintiff's free exercise claim under the lower, rational-relationship standard articulated in *Turner v. Safley*, 482 U.S. 78 (1987).  *See Denson v. Marshall*, 59 F. Supp. 2d 156, 158 (1999) (applying *Turner* standard to inmate's free exercise claim prior to enactment of RLUIPA).  Initially formulated to apply in freedom of speech cases, the *Turner* test has been extended to free exercise claims brought by prisoners as well.  *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987).  Under the *Turner* standard, a prison regulation is "valid if it is reasonably related to a legitimate penological interest."  482 U.S. at 89.

It appears from the undisputed facts that the plaintiff's Islamic Arabic classes were cancelled temporarily for two reasons:  first, the classes were taught by other inmates, which violated a regulation providing that:  "No inmate or group of inmates shall be in a position of control or authority over any other incarcerated person(s)."  Mass. Regs. Code tit. 103 § 400.06.  Second, the classes had not been approved by Bay State's officer in charge of programs.  The proffered justifications clearly fall under the umbrella of the state's legitimate interests in maintaining institutional order and security.  *See O'Lone*, 482 U.S. at 350 (noting that

17

institutional orders and security are legitimate governmental interests).  Moreover, the record

shows that on December 10, 1999, the classes were approved, and that they resumed on

December 11, 1999.  I conclude that any temporary burden on the plaintiff's free exercise was

reasonably related to legitimate institutional interests, and that the action taken by Glynn satisfies

the deferential standard articulated in *Turner* and subsequent cases.

     For the foregoing reasons, I GRANT the defendants' motion for summary judgment as to

the plaintiff's claims under RLUIPA and the Free Exercise Clause.

### D.  Statutory Claims

     The plaintiff's state law claims under the Massachusetts Civil Rights Act ("MCRA"),

Mass. Gen. Laws ch. 12, §§ 11H and 11I, under Mass. Gen. Laws ch. 127, §§ 38E (Inmate

complaints; grievance system; grievance revolution), 88 (Religious services), and 89 (Maintenance

of Sabbath schools and schools for instruction), and under Mass. Regs. Code tit. 103 § 491:00 *et*

*seq.* (procedures for inmate grievances) must also fail.  The plaintiff, who appears pro se on these

state law claims, has not pled sufficient facts or developed any argument to sustain them.  I am

required to construe liberally the papers offered by pro se litigants.  *See Rockwell v. Cape Cod*

*Hosp.*, 26 F.3d 254, 255 (1st Cir. 1994).  "The policy behind affording pro se plaintiffs liberal

interpretation is that if they present sufficient facts, the court may intuit the correct cause of

action, even if it was imperfectly pled."  *Ahmed v. Rosenblatt*, 118 F.ed 886, 890 (1st Cir. 1997).

While I am duty-bound to interpret the plaintiff's papers leniently, my "duty to be 'less stringent'

with pro se complaints does not require [me] to conjure up unpled allegations."  *McDonald*, 610

F.2d at 19 (quoting *Hurney v. Carver*, 602 F.2d 993 (1st Cir. 1979).  I therefore GRANT the

18

defendants' motion to dismiss as to the plaintiff's state law claims.

<u>Conclusion</u>

Because I have granted summary judgment on all of the plaintiff's claims, I direct the clerk to enter judgment for the defendants, dismissing this action.

Dated:  March 24, 2004

/s/ REGINALD C. LINDSAY
United States District Judge

19

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LARRY D. INGRAM                    CIVIL ACTION NO. 04-CV-12475-RCL

        Plaintiff,

vs.

CHRISTOPHER DONOVAN, ET AL.

        Defendants.

## AFFIDAVIT OF TIMOTHY KORTES

I, Sergeant Timothy Kortes, hereby depose and say:

1. I have been employed by the Massachusetts Department of Correction ("Department") for approximately seventeen years. I have been assigned to Bay State Correctional Center ("Bay State".) for approximately nine years. I am presently the Institutional Grievance Coordinator ("IGC") at Bay State. I have worked in this capacity for approximately one year.

2. I am also currently the Commander of the Inner Perimeter Security ("IPS") Team at Bay State and have worked in this capacity for the past eight years.

3. The statements contained herein are based upon my personal knowledge and my review of the Department of Correction's records, which are kept during the normal course of business at Bay State.

4. According to Bay State records, inmate Larry Ingram did not file a grievance regarding alleged verbal threats, harassment or retaliation by any officer from


EXHIBIT
E

November 2001 to February 2002.

Signed under the pains and penalties of perjury this ___10___ day of June 2004.

Timothy Kortes