# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

Larry D. Ingram,                              )
                          Plaintiff,          )
                                              )
v.                                            )            **04 CV 12475 RCL**
                                              )
Christopher Donovan, Paul F. Glynn,           )
Christopher Morelli, Todd Johnson,            )
Russ Palmer, James Matesanz, all are          )
agents of the Massachusetts Department         )
Of Correction and sued in their individual )
and official capacities,                      )
                          Defendants.         )

### MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
### TO DISMISS AND/OR MOTION FOR SUMMARY JUDGMENT

The Plaintiff, Larry D. Ingram, ("Ingram") is a state prisoner currently confined at the Bay State Correctional Center, ("Bay State") in Norfolk, Massachusetts. The Defendants are: James Matesanz, ("Matesanz"), Christopher Donovan, ("Donovan"), Christopher Morelli, ("Morelli"), Russ Palmer, ("Palmer"), Paul Glynn, ("Glynn"), and Todd Johnson, ("Johnson").

Defendants Glynn and Johnson have been served with summons and complaint and are represented by the Department of Correction ("DOC"). The motion to dismiss is poised for resolution as to defendants Glynn and Johnson. The remaining defendants, Matesanz, Donovan, Morelli and Palmer have not been served with summons and complaint and are not represented by the DOC.

The Plaintiff's complaint, a §§ 1983 and 1985 civil rights conspiracy and retaliation by seizure of legal documents (**Ingram v. Canavan, et al., USDC 1:01-CV-11804-RCL**), from Plaintiff's living quarters. A violation of Plaintiff's right to petition the government and the Free exercise clause of the First Amendment to the United States Constitution.

For the following reasons, Defendants' Motion to Dismiss and/or Motion for Summary Judgment should not be allowed.

### STATEMENT OF UNDISPUTED FACTS

1.  At all times relevant herein, Plaintiff Larry D. Ingram was an inmate lawfully incarcerated at Bay State in Norfolk, Massachusetts. Complaint, ¶ 2.

2.  At all times relevant herein, Defendants' James Matesanz, Christopher Donovan, Christopher Morelli, Russ Palmer, Paul Glynn and Todd Johnson were employees of the Department of Correction at Bay State Correctional Center, Norfolk, Massachusetts. Complaint, ¶¶ 3-8.

3.    On October 18, 2001 Plaintiff formally filed civil action #01-11804 against
      four (4) of the named defendants herein, Morelli, Glynn, Donovan and
      Matesanz with the United States District Court, District of Massachusetts.
      02210. (Exhibit A). Complaint, ¶ 10.

4.    On October 18, 2001 Plaintiff filed a motion for service of process by the
      United States Marshals Service without fees to serve summons and complaint
      upon all named defendants therein, inclusive were Morelli, Glynn, Donovan
      and Matesanz. (Exhibit A, page 3). Complaint, ¶ 11.

5.    On November 13, 2001 Plaintiff's motion for service by the U,S, Marshals
      without fees was allowed by the Court. It was further ordered that, "the
      United States Marshal serve a copy of the complaint, summons and this order
      upon the Defendants as directed by the Plaintiff with all costs of service
      to be advanced by the United States." (Exhibit B). Complaint, ¶12.

6.    On November 16, 2001 Plaintiff received "Notice to Plaintiff" (dated 11-14-01)
      post-marked Nov. 15, 01, with the following forms: (15) Original Summons;
      (15) USM-285 forms (Process Receipt and Return); and an order approving the
      application for service on each defendant named, from the clerk of Court.
      The Notice also gave instructions of the necessary forms to be forwarded to
      the United States Marshals Service. (Exhibit C). Complaint, ¶13.

7.    On November 20, 2001 at approximately 8:05 a.m. Plaintiff requested that
      another inmate witness the contents of sixteen (16) envelops prior to leaving
      his housing unit to be mailed. (Exhibit D, Affidavit of Louis Goforth).
      Complaint, ¶ 14.

8.    On November 20, 2001 at approximately 8:10 a.m. Plaintiff caused to be mailed
      sixteen (16) 10 x 13 manila envelopes marked **"Legal Mail"** addressed to the
      United States Marshal for service of process upon each named defendant in
      civil action # 01-11804, Certified Mail Return Receipt Requested, #[7000 1530
      0000 5686 6379]. (Exhibit E and F). Complaint, ¶¶ 15, 25.

9.    On November 20, 2001 between 8:10-8:15 a.m. as mandated Plaintiff was required
      to have all his outgoing legal mail inspected. Mail Office Tom Caulfield
      inspected each envelope before being sealed in his presence. At which time
      Defendants Donovan and Glynn began to vex, intimidate and threaten Plaintiff
      by stating, "who provided you with all those legal photocopies"? "permission
      for legal photocopies better be validated or else" and "what was the nature
      and contents of those legal documents"? Complaint, ¶¶ 17,18.

10.   On November 20, 2001 at approximately 8:15-8:20 a.m. Defendant Donovan told
      Plaintiff to report to Defendant Glynn's office, room A211 at 10:00 a.m. with
      proof of purchase of one (1) of the sixteen (16) envelopes addressed to the
      United States Marshal Office. Complaint, ¶ 19.

11.   On November 20, 2001 at approximately 10:20 a.m. Defendants Glynn and Morelli
      entered the Modular Two housing unit where Plaintiff lived. Defendant Glynn
      called and asked Plaintiff why he had not reported to his office. Plaintiff
      said he forgot. Plaintiff was handcuffed and taken to administrative
      segregation from 10:20 a.m. to 5:15 p.m. per order Defendant Donovan.
      (Exhibit G, ¶¶ 3-4). Complaint, ¶ 20.

12.    On November 20, 2001 at or about 2:00 p.m. Defendants Donovan and Glynn entered
       the holding cell where Plaintiff was detained. Defendant Donovan threaten
       Plaintiff with the following: "you can't beat the system, there are things we
       all have to do, even I have to do things I don't like but in the end the system
       always win." "Don't you like it here?" "You wouldn't want to be in 10 block
       with urine and feces all over the place?" "Now I know when someone is calling
       me a liar." "Now, where did you get that envelope?" "Do you have proof of
       purchase?" Defendant Donovan ended his threats saying, "I'll see you in court."
       Complaint, ¶ 21.

13.    On November 20, 2001 at or about 2:00 p.m. Plaintiff responded to defendant
       Donovans; threats while detained: "I like it here (Bay State) and No, I
       wouldn't want to live in 10 block conditions." "I haven't called anyone a
       liar, I can provide proof of purchase for the envelope from Crow's Office
       Supplies." Plaintiff did not reply to defendant Donovans' threat, "I'll see
       you in court." Complaint, ¶ 22.

14.    On November 20, 2001 defendant Glynn wrote disciplinary report #01-0135
       alleging Plaintiff did not report to his office. (Exhibit G.) Complaint, ¶26.

15.    On November 20, 2001 defendant Johnson wrote disciplinary report #01-0136
       alleging Plaintiff had contraband in his living quarters and seizure of his
       legal documents (C.A. #01-11804) from his cell. (Exhibit H.).(See: Complaint,
       ¶ 24; Affidavit of Christopher Morelli, Exhibit I.).

16.    On November 20, 2001 at approximately 5:15 p.m. Plaintiff was released from
       administrative segregation. Plaintiff returned to his cell to find the
       following of his legal documents seized: (7) manila envelopes, one clearly
       marked "exhibits"; (1) Civil Action complaint, #01-11804, (20 pages with
       exhibits 133 pages); a Judge's Order directing service of process by the U.S.
       Marshals Service. Complaint, ¶ 23. (See: Exhibit B.).

17.    On November 21, 2001 one day later, at approximately 1:05 p.m. Defendant
       Morelli told Plaintiff to report to his office. Plaintiff was handed a
       wooden box containing the legal documents seized from Plaintiff's cell.
       (Exhibit I, Affidavit of Christopher Morelli). Complaint, ¶ 24.

18.    On December 6, 2001 Plaintiff was found guilty by defendant Palmer and
       sanctioned as follows: #01-0136, one month loss of canteen; and #01-0135
       five (5) days room detention. Complaint, ¶¶ 31, 32.

19.    On December 21, 2001 Plaintiff caused to be mailed Certified Mail Return Receipt
       Requested, #[7000 1530 0000 5686 6386] a consolidated appeal to d-report ##
       01-0135 & 01-0136 to Defendant Matesanz seeking dismissal based on the following
       grounds:  1) Threats, harassment, seizure of legal documents and retaliation
       relative to outgoing legal mail by Defendants Donovan , Glynn and Johnson;
       2) D-Report #01-0135 was written by defendant Glynn in retaliation and abuse
       of authority by defendants Donovan and Glynn; and 3) Violation of 103 CMR 430.
       07 and 430.11(2), Defendant Glynn wrote d-report #01-0135 and should have
       recused himself from all aspects of d-report #01-0135. (Exhibit J) Complaint,
       ¶ 33.

20.    On February 11, 2002 Plaintiff consolidated appeal to ## 01-0135 & 01-0136
       was denied by defendant Matesanz. (Exhibit K) Complaint, ¶ 34.

3

## ARGUMENT

A motion to dismiss the complaint must be construed in the light most favorable to Plaintiff and its allegations taken as true. Hugh v. Rowe, 449 U.S. 5, 10 (1980). A complaint must fail if it appears beyond a doubt that Plaintiff can prove no set of facts in support of his claim which would be entitled to relief, Conley v. Gibson, 355 U.S. 41,45-46 (1957). Furthermore, in reviewing the legal sufficiency of petition's cause of action, '[the Court] must assume the truth of the material facts as alleged in the complaint' Davis v. Monroe Bd. of Educ., 526 U.S. 629, 631 (1999). To withstand a motion to dismiss, Plaintiff must "set forth minimal facts, not subjective characterizations, as to who did what to whom and why." Dewey v. University of New Hampshire, 694 F.2d 1,3 (1st Cir. 1982), cert. denied 461 U.S. 944 (1983). Although the threshold for stating a claim may be low, it is real. Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988). Therefore, the Plaintiff has stated a valid claim of a violation of his rights under Federal law and the U.S. Constitution against the Defendants and his complaint must not be dismissed.

Or, in the alternative, summary judgment is appropriate against a party, who, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The role of summary judgment is "to pierce the pleadings and assess the proof in order to see whether there is genuine need for trial." Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits,"that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex, 477 U.S. at 317 (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists only where the party opposing summary judgment provides evidence "such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Libby, Inc., 477 U.S. 242, 247-48 (1986). "To succeed, the moving party must show that there is an absence of evidence to support the non-moving party's position." Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990).

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp., 477 U.S. at 324. The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).

In addition,  Plaintiff's complaint was verified. In the event a complaint is verified, it is appropriate to consider factual averments based on personal knowledge therein as the equivalent of an  "affidavit" for purposes of summary judgment. Sheinkopf v. Stone, 927 F.2d 1259, 1262-63 (1st Cir. 1991)."A verified complaint is to be treated as an affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist, provided that it meets the other requirements for an affidavit under Rule 56(e)." Carmona v. Toledo, 215 F.3d 124, 131 (1st Cir. 2000).

For the reasons that follow, dismissal and/or summary judgment for the claims identified in Defendants' Motion to dismiss and/or motion for summary judgment should be denied.

## I.    Plaintiff's rights to serve C.A. #01-11804 is protected activity.

Plaintiff assert it is established that sending legal mail (C.A. #01-11804)
to the United States Marshal Service for service of process against state correctional
officers is constitutionally protected activity under Plaintiff's right  'to petition
the government for the redress of grievance', **U.S. Const. amend. I.** and § **1983** which
provides in relevant part:

> Every person who, under color of any statue, ordinance,
> regulation, custom, or usage, of any State..., subjects,
> or causes to be subjected, any citizen of the United
> States or other person within the jurisdiction thereof
> to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to
> the party injured in an action at law, suit in equity, or
> other proper proceeding for redress...

42 U.S.C. § 1983. See: Pontarelli v. Stone, 930 F.2d 132, 138 (1st Cir. 1988)."Under
§ 1983, a Plaintiff may allege retaliation by state actors for expressing his
constitutional rights." Guilloty-Perez v. Fuetes-Agostini, 196 F.3d 293 (1st Cir.1999);
McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979); see also Buise v. Hudkins, 584 F.2d
223, 229 (7th Cir. 1978), cert, denied, 440 U.S. 916 (1979) ("[A]n act in retaliation
for the exercise of a constitutional right is actionable under [s]ection 1983 even if
the act, when taken for difference reasons, would have been proper.").

Moreover, "it has been clearly established that government action taken in
retaliation for an individual's exercise of his First Amendment rights is a
constitutional violation." Crawford-El v. Britton, 523 U.S. 574 (1998): Mt. Healthy
City Sch. Dist. v. Doyle, 429 U.S. 283-4 (1977).

The Plaintiff's right to petition the government for redress of grievances
is  "among the most precious of the liberties safeguarded by the Bill of Rights,"
United Mine Workers v. Illinois State Bar Ass'n, 389 U.S. 217, 222 (1967), regardless
which branch of government an individual petitions. See California Motor Transport Co.
v. Trucking Unlimited, 404 U.S. 508, 510 (1972). The First Amendment right to petition
the government for redress of grievances includes the right to mail legal mail to the
U.S. Marshals Service for service of process of Civil Action #01-11804 upon state
correctional officers. Franco v. Kelly, 854 F.2d 584, 589 (2nd Cir. 1988): See Sprouse
v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989).

### A.    Defendants Donovan and Glynn Conspired to Retaliate against Plaintiff after Civil Action #01-11804 was filed.

Plaintiff filed civil action #01-11804 on October 18, 2001 alleging a civil
rights conspiracy, § 1983, supra, against state correctional officers, inclusive were
defendants, Donovan, Glynn, Morelli and Matesanz, (Exhibit A). Plaintiff's motion to
effect service of process was allowed by the Court. Plaintiff went to furnish the
United States Marshals Service the necessary documents to effect service of process
upon the named defendants therein as mandated by Fed. R. Civ. P. 4 (c) (1) which
requires that the Plaintiff,  "...shall furnish the person effecting service with the
necessary copies of the summons and complaint."

Defendants Donovan and Glynn on November 20, 2001 vexed, harassed and obstructed Plaintiff's rights to petition the courts in retaliation for filing civil action #01-11804 against them. § **1985 (3)** states in part:

> If two or more persons in any State or Territory conspire
> ...on the premises of another, for the purpose of depriving,
> either directly or indirectly, any person or class of
> persons of the equal protection of the laws, or of equal
> privileges and immunities under the laws; or for the purpose
> of preventing or hindering the constituted authorities of
> any State or Territory for giving or securing to all persons
> within such State or Territory the equal protection of the
> laws...in any case of conspiracy set forth in this section,
> if one or more persons engaged therein do, or cause to be
> done, any act in furtherance of the object of such conspiracy,
> whereby another is injured in his person or property, or
> deprived of having and exercising any right or privilege of
> a citizen of the United States, the party so injured or
> deprived may have an action for the recovery of damages
> occasioned by such injury or deprivation, against any one or
> more of the conspirators.

42 U.S.C. § 1985 (3), et seq.

Defendant Donovan and Glynn's conspiracy began with their obstruction and threats of "who provided you with all those legal photocopies?" "permission for legal photocopies better be validated or else" and "what was the nature and contents of those legal documents?" (Complaint, ¶¶ 17, 18) when mail officer Tom Caulfied inspected each envelope individually prior to being sealed.(Complaint, ¶ 17).

Defendants threats and mens rea continued when defendant Donovan told Plaintiff to report to defendants Glynn's office, room A211 at 10:00 a.m. with proof of purchase of one (1) of the sixteen (16) manila envelopes addressed to the U.S. Marshals Office,(Complaint, ¶ 19). When Plaintiff forgot to report to defendant Glynn's office he was detained and taken to administrative segregation per order defendant Donovan. (Complaint, ¶ 20).

The United States Court of Appeals for the Second Circuit in Franco v. Kelly, 854 F.2d 589 (2nd Cir. 1988) rendered:

> [T]he right to petition government for redress of grievances
> [i]s among the most precious of liberties safeguarded by the
> Bill of Rights. Moreover, the right to petition applies with
> equal force to a person's right to seek redress from all
> branches of government. In the prison context,...inmates must
> be permitted free and uninhibited access to both administrative
> and judicial forums for the purpose of seeking redress of
> grievances against state officers...[I]ntentional obstruction
> of a prisoner's right to seek redress of grievances is precisely
> the sort of oppression that section 1983 is intended to remedy.

Franco, 854 F.2d at 589. (internal quotation marks and citations omitted).

6

Defendants Donovan and Glynn continued to threaten and intimidate the Plaintiff while he was detained in administrative segregation, "you can't beat the system, there are things we all have to do, even I have to do things I don't like but in the end the system always win." "Don't you like it here?" "You wouldn't want to be in 10 block with urine and feces all over the place?" "Now I know when someone is calling me a liar." "Now where did you get that envelope?" "Do you have proof of purchase?" Defendant Donovan ended by saying, "I'll see you in court." Complaint, ¶ 21.

Plaintiff explicitly announced at a required inspection the destination of his documents marked "legal." It is unconstitutional for prison officials to punish a prisoner for filing a claim against them, Garcia v. District of Columbia, 56 F.Supp. 2d 1, 6 (D.D.C. 1998), See Byrd v. Mosely, 942 F.Supp. 644 (D.D.C. 1996).

Prisoners have a constitutional right of access to court, Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 828 (1977). That right is implicated when prison authorities "actively interfer[e] with inmates' attempts to prepare legal documents." Lewis , 518 at 350, (citing Johnson v. Avery, 393 U.S. 483 490 (1969)). It also " 'requires prison authorities to assist inmates in the preparation and filing of meaningful papers by providing prisoners with adequate law libraries...' " Lewis, 518 U.S. at 346, (quoting Bounds, 430 U.S. at 828); See also, LaPlante v. Department of Correction, 2003 WL 1877872 (D. Mass.)(holding that First Amendment entitles prisoners to the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts).

**B.   Defendants conspired to retaliate and punish Plaintiff by filing d-reports #01-0135 and #01-0136 to cover up the seizure of Plaintiff's legal documents C.A. #01-11804 from his cell.**

While Plaintiff was detained in administrative segregation for seven hours Defendants Glynn and Johnson wrote d-reports #01-0135 and #01-0136 during the seizure of C.A. #01-11804 from his cell. Defendant Morelli returned the seized legal documents on November 21, 2001, as stated in his Affidavit, see exhibit marked I.

The Plaintiff has no right to be protected against the filing of false d-reports, "he may nevertheless establish a claim under §1983" if the actions complained of were taken "by reason of his exercise of constitutionally protected First Amendment freedoms," McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979). However, a prisoner should have  the  " 'freedom to employ, without retaliation or harassment, those accessories without which legal claims cannot be effectively asserted'" Martin v. Ezeagu, 816 F.Supp. 20, 24 (D.D.C. 1993) (quoting Ruiz v. Estelle, 679 F.2d 1115, 1153 (5th Cir. 1982).

In Morello v. James, 810 F.2d 347 (2nd Cir. 1987), "intentional obstruction of a prisoner's access to the courts is precisely the sort of oppression that the fourteenth Amendment and section 1983 are intended to remedy...[t]he right of access to the courts is substantive rather than procedural...[It] cannot be obstructed, regardless of the procedural means applied." Id. at 346-47 (citations omitted).

See Franco v. Kelly, 854 F.2d 588-89 (2nd Cir. 1988). See also Daniels v. Williams, 474 U.S. 338 (1986) (Stevens, J., concurring in the judgment) (noting that if a state infringes on a substantive constitutional right, the mere presence of procedural protections or state law remedies cannot defeat a claim under section 1983); Parratt v. Taylor, 451 U.S. 545 (1981) (Blackmum, J., concurring) ("[T]here are certain governmental actions that, even if undertaken with a full panoply of procedural protections, are in and of themselves antithetical to fundamental notions of due process."); Hall v. Sutton, 755 F.2d 787-88 (11th Cir. 1985).

In Freeman v. Rideout, 808 F.2d 953-55 (2nd Cir. 1986) accords prison officials wide latitude in disciplining inmates as long as minimum constitutional procedures are employed, See also, Superintendent, Massachusetts Correctional Inst. v. Hill, 472 U.S. at 454-56 (1985), that latitude does not encompass conduct that infringes on an inmates substantive constitutional rights. Moreover, "[b]ecause the retaliatory filing of a disciplinary charge strikes at the heart of an inmate's constitutional right to seek redress of grievances, the injury to this right inheres in the retaliatory conduct itself." Garcia v. District of Columbia, 56 F.Supp. 2d 1, 13 (D.D.C. 1998); See Dixon v. Brown, 38 F.3d 379 (8th Cir. 1994); Accord, Hershberger v. Scaletta, 33 F.3d 955 (8th  Cir. 1994); Franco v. Kelly, 854 F.2d 584 (2nd Cir. 1988) (disciplinary charges expunged).

Furthermore, "the close chronological order of a Plaintiff's protected conduct and a Defendants alleged retaliatory conduct may warrant an inference of retaliation." Perez v. Agostini, 37 F. Supp. 2d 103, 110-11 (D. Puerto Rico 1999).See Ferranti v. Moran, 618 F.2d 888, 892 (1st Cir. 1980), see also Anthony v. Sundlum, 952 F.2d 603, 605 (1st Cir. 1991) (Circumstantial evidence can be helpful to determine an actor's motive).

Because Plaintiff has stated a claim for which relief can be granted, his claims of retaliation and conspiracy §1985 et seq. of his First Amendment rights should not be dismissed and/or summary judgment in the alternative.

## C.    Defendants erroneously allege Fourteenth Amendment violation

The Defendants impermissibility allege Plaintiff alleges the defendants conspired to violate his Fourteenth Amendment rights (Defendants Memorandum in Support of Defendants Motion to Dismiss and/or Motion for Summary Judgment, pages,2-5 and 7-15, ("Def's Memo")), implicating a liberty interest, "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995), This is without merit and misleading the court.

Retaliation by prison officials for the exercise of a constitutional right may be actionable even when the retaliatory action does not involve a liberty interest. See, e.g.,Stanley v. Litscher, 213 F.3d 340, 343 (7th Cir. 2000) (holding that Plaintiff stated claim for retaliatory transfer even though no liberty interest involved in transfer); Rouse v. Benson, 193 F.3d 936, 939 (8th Cir. 1999)(same).

Sandin, instructs that placement in administrative confinement will generally not create a liberty interest. See Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997) (applying Sandin and holding that conditions experienced by prisoner in administrative custody do not implicate liberty interest).

8

However, in Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000) held that,
"[G]overnment actions, which standing alone do not violate the Constitution, may
nonetheless be constitutional torts if motivated in substantial part by a desire to
punish an individual for the exercise of a constitutional right." (quoting Thaddeus-X
v. Blatter, 175 F.3d 378, 386 (6th Cir. 1999)(en banc)).

The third Circuits holding that claims alleging retaliation for the exercise
of First Amendment rights survive Sandin is consistent with those Circuits that have
considered the issue.

In Pratt v. Rowland, 65 F.3d 802, 806-7 (9th Cir. 1995), the Court of Appeals
for the Ninth Circuit held that Sandin did not bar a claim alleging that a prisoner-
plaintiff had been transferred and placed in a double cell in retaliation for a
television interview that had been given. The Court stated:

> To succeed on his retaliation claim, [the plaintiff]
> need not establish an independent constitutional
> interest in either assignment to a given prison or
> placement in a single cell, because the crux of his
> claim is that state officials violated his First
> Amendment rights by retaliating against him for his
> protected speech activities.

Id. at 806. In Babcock v. White, 102 F.3d 267, 274-75 (7th Cir. 1996) the Court
of Appeals for the Seventh Circuit agreed, holding that a prisoner-plaintiff's claim
that a prison official had prevented an expeditious transfer in retaliation for his
filing lawsuits against prison officials was actionable "even if [the prison official's]
actions did not independently violate the Constitution" and thus was barred by Sandin.
As the Supreme Court recognized in its footnote in Sandin, however, "[p]risoners...
retain other protection from arbitrary state action even within the expected
conditions of confinement." Sandin, 515 U.S. at 487, n.11 (emphasis added).

Accordingly, defendants liberty interest claims should be denied.

## II.  Plaintiff has exhausted administrative remedies available to him.

In deciding the Defendants motion to dismiss Plaintiff's complaint, the Court
must consider whether the administrative remedies available to the Plaintiff have
been exhausted under the Prison Litigation Reform Act ("PLRA") before he brought his
claim in federal court. Civil Rights of Institutionalized Persons Act, §7, 42 U.S.C.
§1997e. The PLRA provides that:

> No action shall be brought with respect to prison conditions
> under section 1983 of this title, or any other Federal law, by
> a prisoner confined in any jail, prison, or other correctional
> facility until such administrative remedies as are available
> are exhausted.

42 U.S.C. § 1997e(a).  Section 1997e(a) "applies to all inmates suits about prison
life, whether they involve general circumstances or particular episodes, and whether
they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532
(2002). The PLRA's exhaustion requirement "simply 'governs the timing of the action'
and does not contain the type of 'sweeping and direct language that would indicate a
jurisdictional bar rather than a mere codification[] of administrative exhaustion
requirements'." Ali v. District of Columbia, 278 F.3d 1, 6 (D.C. Cir.,2002) citing

9

Chelette v. Harris, 229 F.3d 684, 688 (8th Cir.,2000) (quoting Weinberger v. Salfi, 422 U.S. 749 (1975)).

While exhaustion under the PLRA is not jurisdictional, it is mandatory for prisoners to satisfy this mandate before bringing an action in a court of law. Porter v. Nussle,   534 U.S. 516, 520 (2002); Casanova v. DuBois, 289 F.3d 142, 146-47 (1st Cir. 2002) (noting exhaustion is not a prerequisite to federal jurisdiction, nonetheless mandatory).

The PLRA does not require the exhaustion of all available remedies, but only those that are  "available" to the inmate. Section 1997e(a), To be "available" under the PLRA, a remedy must afford  "the possibility of some relief for the action complained of." Booth v. Churner, 532 U.S. 731, 738 (2001). The PLRA requirement that inmates exhaust  "such administrative remedies as are available," §1997e(a), "refer[s] to the procedural means, not the particular relief ordered," since  "one 'exhausts' processes, not forms of relief." Booth, 532 U.S. at 739. Moreover, the PLRA's exhaustion requirement is designed to  "afford[] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case," Porter v. Nussle, 534 U.S. 516, 524 (2002).

The Massachusetts Department of Correction provides a grievance system for prisoners under 103 CMR 491.00 (1996) et seq. which details the procedures an inmate must follow to file an informal or formal complaint seeking redress within the prison. Among other rules, the procedure regarding informal complaints state:

> Each institution should develop informal measurers for resolving inmate complaints whereby inmates are encouraged to communicate their problem to the staff person responsible in the particular area of the problem, e.g., Correction Program Officer, the appropriate department head or other institutional staff. Staff awareness as to the need for prompt attention and response to these complaints will minimize the use of formal grievance procedures. While inmates are encourgaged to pursue informal measures prior to filing a grievance, they shall not be required to do so.

103 CMR 491.07 Informal Resolution.

Plaintiff asserts that informal channels is sufficient to satisfy the exhaustion requirement of the PLRA. Plaintiff's complaint contain "particularized averments"  showing that each claim asserted has been exhausted. Knuckles-El v. Toombs, 216 F.3d 640 (6th Cir. 2000),cert. denied, 531 U.S. 1040 (2000). See Exhibit J.(Complaint, ¶¶ 33, 34, 35).

In Thomas v. Woolum, 337 F.3d 720 the Sixth Circuit held that "a prisoner who has presented his or her grievance through one complete round of prison grievance process  has exhausted available administrative remedies under the PLRA, regardless of whether the prisoner complied with the grievance system's procedural requirements. A determination that the state inmate satisfied the exhaustion requirements of the PLRA is not precluded on the grounds that prison officials refused to hear the inmate's grievance as untimely filed, where the inmate gave state officers the opportunity to address his complaint, which is all that is required." Thomas v. Woolum, 337 F.3d 720 (6th Cir. 2003); Giano v. Goord, 380 F.3d 670, 676 (2nd Cir. 2004)(exhaustion under

the PLRA was achieved in situation where prisoner's claim was fully exhausted through other administrative procedures which were pursued for good reasons.) See also, NGO v. Woodford, 403 F.3d 620, 626 (9th Cir. 2005)(State prisoner, for whom no further level of administrative review remained available after his appeal of disciplinary action was deemed time-barred, had exhausted administrative remedies, as required in order to assert §1983 claim in federal court.); Roland v.Murphy, 289 F.Supp.2d 321 (E.D.N.Y. 2003) (denying the jail official's motion for judgment on the pleadings on the grounds that the inmate did not exhaust administrative remedies on her claim that female officers performed a strip search on her in view of three male officers even though the inmate did not follow the formal grievance policy. The court held that the plaintiff provided the defendant with adequate notice of her claim to satisfy the exhaustion requirement when she "informed the Sheriff's Department's Internal Affairs Unit and the District Attorney's Office about the disputed search which triggered an investigation by the Sheriff's Bureau of Investigations and the District Attorney's Special Investigations Bureau"); Lewis ex rel. Lewis v. Gagne, 281 F.Supp.2d 429 (N.D.N.Y. 2003) (holding that the plaintiffs exhausted administrative remedies even though they did not follow the formal grievance policy because the informal steps the plaintiff employed were sufficient to notify the officials of their claim and to provide the officials with an opportunity to address their claim. In this case, there were two plaintiffs. The first was a minor who was adjudicated as a juvenile and housed in a state residential facility and the second was his mother. The plaintiffs claimed that facility officers intentionally burned the resident's hand on a heater and then failed to provide adequate medical care to treat the burn. In response to this incident , the resident's mother complained to facility staff and "contacted an attorney, family court, and the New York State Child Abuse and Maltreatment Register." The court held that these formal steps were sufficient to meet the exhaustion requirement of the PLRA).

Plaintiff has prior to filing his claim filed consolidated disciplinary appeal alleging that defendants, threaten, harassed and seized his legal documents in retaliation relative to outgoing legal mail against him. Accordingly, plaintiff has exhausted the available administrative remedies as required under PLRA, his claims should not be dismissed.

### III.   **PLRA does not bar damages under 42 U.S.C. §1983.**

The relevant provision of PLRA, Section 803(d), as codified at 42 U.S.C. § 1997e(e), states:

> No Federal civil action may be brought by a prisoner
> confined in a jail, prison or other correctional facility,
> for mental or emotional injury suffered while in custody
> without a prior showing of physical injury.

Accordingly, § 1997e(e) prohibits a prisoner from recovering damages in a claim brought under federal law for an alleged mental or emotional injury suffered while in custody unless the prisoner can demonstrate that the mental or emotional injury is the result of a "physical injury."

However, "Where the harm that is constitutionally actionable is physical or emotional injury occasioned by a violation of rights, § 1997e(e) applies. In contrast, where the harm that is constitutionally actionable is the violation of intangible rights--regardless of actual physical or emotional injury section 1997e(e) does not govern." Shaheed-Muhammad v. DiPaolo, 138 F.Supp.2d 99, 107 (D.Mass. 2001).

A prisoner is barred from bringing into federal court an action "for" emotional damages suffered while in custody, unaccompanied by physical injury. However, the constitutional violations of the type at issue here are not actions "for" emotional distress. Id. at 107. See Memphis Community School District v. Stachura, 477 U.S. 299, 308 n. 11 (1986)(courts should vindicate deprivations of certain "absolute" rights that are not shown to have caused actual injury because of their fundamental importance in organized society). The severity of the violation is not measured by the independent physical harm they produce.

The First Amendment, for example,is not concerned with preventing physical abuse by government agents, but rather with the invasion of the "sphere of intellect and the spirit which it is the purpose of the First Amendment to our Constitution to reserve from all official control." Shaheed-Muhammad, 138 F.Supp.2d at 108 (D. Mass. 2001); West Virginia State Bd. of Educ. v. Barnette, 319 U.S. 624, 642 (1943).

The legislative history and purpose of PLRA, § 1997e(e) is clear, where the meaning of statutory language is equivocal, the courts should interpret the language with reference to the statutory purpose. Negonsott v. Samuels, 507 U.S. 99, 104 (1993) (" 'Our task [in interpreting statues] is to give effect to the will of congress' ") (quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 570 (1982)); Passamaquoddy Tribe v. Maine, 75 F.3d 784, 788 (1st Cir. 1996).

A number of federal courts have drawn similar distinctions applying the physical injury requirement of § 1997e(e) when the underlying claim is "for" physical injuries. See Searles v. Van Bebber, 251 F.3d 869, 875-77 (10th Cir. 2001); Zehner v. Trigg, 133 F.3d 459 (7th Cir. 1997); Siglar v. Hightower, 112 F.3d 191, 193-4 (5th Cir. 1997); Davis v. District of Columbia, 158 F.3d 1342, 1347 (D.C. Cir. 1998).

But, courts have likewise rejected its application when, for example, the underlying claim is "for" a violation of the First Amendment. As the Ninth Circuit held in Canell v. Lightner, 143 F.3d 1210, 1213 (9th Cir. 1998)("[t]he deprivation of First Amendment rights entitles a plaintiff judicial relief wholly aside from any physical injury he can show, or any mental or emotional injury he may have incurred."). See also Williams v. Ollis, 230 F.3d 1361 (6th Cir. 2000) (PLRA does not cover First Amendment retaliation claim); Rowe v. Shake, 196 F.3d 778, 781 (7th Cir. 1999) (No requirement of physical, mental or emotional injury for First Amendment claim because deprivation of First Amendment rights standing alone is a cognizable injury); Amaker v. Haponik, 1999 U.S. Dist. LEXIS 1568, 1999 WL 76798, *7 (S.D.N.Y.) (§1997e(e) did not bar plaintiff's First Amendment claims); Mason v. Schriro, 45 F.Supp.2d 709, 720 (W.D.Mo. 1999) (§ 1997e(e) does not apply to Equal Protection claims under the Fourteenth Amendment); Lewis v. Sheahan, 35 F.Supp.2d 633, 637 n. 3 (N.D.Ill.1999) (§ 1997e(e) does not bar a right to access claim); Auleta v. LaFrance, 233 F. Supp.2d 396 (N.D.N.Y. 2002) (state inmate filed action alleging that his constitutional rights were violated when he was placed in disciplinary confinement in retaliation for providing legal assistance to another inmate; defendant argued that his claim should be dismissed because he failed to allege physical injury as required by Prison Litigation Reform Act; court held that physical injury requirement did not apply to an action alleging violations of First Amendment rights).

As a result, Plaintiff's claims for damages under § 1983 are not barred by § 1997e(e).

12

## IV.    Defendants are not entitled to Qualified Immunity.

The qualified immunity doctrine protects state officials from civil liability under § 1983 so long as their conduct does not violate a clearly established constitutional right which a reasonable official would have been cognizant. Harlow v. Fitzgearld, 457 U.S. 800, 818 (1982): see also Saucier v. Katz, 121 S. Ct. 2151 (2001); Ringuette v. City of Fall River, 146 F.3d 1, 5 (1st Cir. 1998).

A state actor claiming qualified immunity must do so either under the theory that the asserted constitutional right was not clearly established or under the theory that his conduct satisfies the test of objective legal reasonableness. Camilo-Robles v. Hoyos, 151 F.3d 1 (1st Cir. 1998). "the question...is not whether the right is clearly established at a high abstract level; rather, the question is whether, under the circumstances at hand, a reasonable officer would understand that his conduct was violating a constitutional right." Perez v. Agostini, 37 F.Supp. 2d 103, 112 (D. Puerto Rico 1999); Berthiaume v. Caron, 142 F.3d 12, 15 (1st Cir. 1998).

The defendants conspiracy to retaliate against the plaintiff for filing C.A. #01-11804 against them is clear, established rights.  Defendants threats and intimidation against the plaintiff while mailing "legal mail" to the U.S. Marshals Service for service of process against defendants Donovan, Glynn, Morelli and Matesanz is constitutionally protected conduct, clearly established.

Undoubtedly, the First Amendment right to petition government for the redress of grievance of the United States Constitution is clearly established. Moreover, Corrections officers are expected to be familiar with the rules and regulations governing the correctiona system. All corrections officers are sworn by an Oath before entering correctional facilities as officers:

> All officers of such institutions, before entering upon
> the performance of their official duties, shall subscribe
> the following oaths: "I, A.B., do solemnly swear and affirm
> that I will faithfully and impartially discharge and perform
> all duties incumbent on me in the office to which I have been
> appointed according to the best of my abilities and understanding,
> agreeably to the requirements of the constitution, the laws of
> the commonwealth, and the rules provided in accordance with law
> for the government of the correctional institutions of the
> commonwealth. So help me God."

Mass. Gen. Law, c.125, §10. By virtue of the defendants oath, the rights of the Plaintiff protected by the United States Constitution should be taken as "clearly established."

Granting qualified immunity on motion to dismiss an/or motion for summary judgment may not be appropriate where there are factual issues as to essential elements of the Plaintiff's claims. Perez, 37 F.Supp. 2d at 112 (D. Puerto Rico); Swain v. Spinney, 117 F.3d 1, 10 (1st Cir. 1997).

The defendants can be held liable for damages to the Plaintiff. The actions of all the defendants were not objectively reasonable, the Plaintiff's claims should not be dismissed.

## V.    Conclusion.

For the aforementioned reasons, the Plaintiff opposes the defendants motion to dismiss and/or motion for summary judgment on the counts and claims identified herein.

Respectfully submitted,

Dated: August 3, 2005

Larry D. Ingram, Plaintiff-Pro Se
Bay State Correctional Center
P.O. Box 73
Norfolk, Massachusetts. 02056

### Certificate of Service

I, hereby certify that a true copy of the above document was served upon the attorney of record for each party by first class mail

Dated: 8/3/05

Larry D. Ingram

14

U.S. District Court
U.S. District Court - Massachusetts (Boston)

CIVIL DOCKET FOR CASE #: 01-CV-11804

Ingram v. Canavan, et al                              Filed: 10/18/01
Assigned to: Judge Reginald C. Lindsay      Jury demand: Plaintiff
Demand: $770,000                             Nature of Suit:  550
Lead Docket: None                            Jurisdiction: Federal Question
Dkt# in other court: None

Cause: 42:1983 Prisoner Civil Rights


**LARRY D. INGRAM**                    Larry D. Ingram
        Plaintiff                     [COR LD NTC] [PRO SE]
                                       Bay State Correctional Center
                                       (BSCC)
                                       P.O. Box 73
                                       Norfolk, MA 02050-0073


     v.


**JAMES T. CANAVAN**, Individual
**and Official Capacity**▒▒▒▒▒▒▒▒
        Defendant


**JUDY F. SHARPE**, Individual and
**Official Capacity**
        Defendant


**HASSAN OSMAN**, Individual and
**Official Capacity**
        Defendant


**CHRIS MORELLI**, Individual and
**Official Capacity**
        Defendant


**PAUL F. GLYNN**, Individual and
**Official Capacity**
        Defendant
                                            

**EUGENE BENEVIDES**, Individual
**and Official Capacity**
        Defendant


Docket as of November 2, 2001 2:26 pm              Page 1

Proceedings include all events.
1:01cv11804 Ingram v. Canavan, et al


PAUL LABOULIERE, Individual
and Official Capacity
      Defendant


JAMES GRACE, Individual and
Official Capacity
      Defendant


PETER GAW, Individual and
Official Capacity
      Defendant


ROBERT WHITE, Individual and
Official Capacity
      Defendant


CHRIS DONOVAN, Individual and
Official Capacity
      Defendant


FRANK MURRAY, Individual and
Official Capacity
      Defendant


JOSEPH CASEY, Individual and
Official Capacity
      Defendant


JAMES MATESANZ, Individual and
Official Capacity
      Defendant


DAVID HENAULT, Individual and
Official Capacity
      Defendant

Proceedings include all events.
1:01cv11804 Ingram v. Canavan, et al

10/18/01  1        Complaint filed.  Case assigned to Judge: Lindsay.  Receipt
                   #: 34563  Amount:$ 150.00.  Fee Status: paid  (Exhibits were
                   not scanned) (sat) [Entry date 10/24/01]
                   [Edit date 10/24/01]

10/18/01  2        Motion by Larry D. Ingram for service by U.S. Marshalls
                   without fees, filed. (sat) [Entry date 10/24/01]

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LARRY D. INGRAM
    Plaintiff

    v.                               C. A. No. 01-11804-RCL

JAMES T. CANAVAN, et al.
    Defendants.

## ORDER FOR SERVICE BY U.S. MARSHAL

Now before the court is plaintiff's Motion for Service by U.S. Marshal (Docket No. 2).

Rule 4(c)(2) of the Federal Rules of Civil Procedure provides that:

> Service may be effected by any person who is not a party and who is at least 18 years of age. At the request of the plaintiff, however, the court may direct that service be effected by a United States marshal, or other person or officer specially appointed by the court for that purpose. Such an appointment must be made when the plaintiff is authorized to proceed in forma pauperis pursuant to 28 U.S.C. § 1915.... On June 15, 1999, the court entered an endorsed order granting plaintiff's motion.

Having considered plaintiff's motion, it is hereby

ORDERED, plaintiff's Motion for Service by U.S. Marshal (Docket No. 2) is

ALLOWED; and it is further

ORDERED, the United States marshal serve a copy of the complaint, summons and this

order upon the defendants as directed by the plaintiff with all costs of service to be advanced by

the United States.

Dated at Boston, Massachusetts, this 31 day of November, 2001.

**EXHIBIT**

REGINALD C. LINDSAY
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
OFFICE OF THE CLERK
UNITED STATES COURTHOUSE
1 COURTHOUSE WAY, SUITE 2300
BOSTON, MA 02210

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE $300

Larry D. Ingram
Bay State Correctional Center (BSCC)
P.O. Box 73
Norfolk, MA    02050-0073

02050+0073



Opened By CC Court

Rec'd: Nov. 15, 2001
Larry D. Ingram



**OFFICE OF THE CLERK**
**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**UNITED STATES COURTHOUSE**
**1 COURTHOUSE WAY - SUITE 2300**
**BOSTON, MASSACHUSETTS 02210**



**TONY ANASTAS**
**CLERK OF COURT**

TELEPHONE: 617-748-9152

DATE: _11-14-01_

IN RE: _Larry Ingram_

CIVIL ACTION NO: _01-11804 CCL_

## NOTICE TO PLAINTIFF

**Upon receipt of the enclosed forms, you are required to complete the necessary forms and furnish the United States Marshal with the following:**

( ✓ )  one copy of the original complaint for service on each named defendant;

( ✓ )  one original summons for each named defendant;

( ✓ )  one copy of each original summons for service on each named defendant;

( ✓ )  one copy of USM-285 (Process Receipt and Return) for service on each named defendant;

( ✓ )  ~~one copy of the application to proceed without prepayment of fees and the~~ order approving the application for service on each named defendant.

**Upon completion of each package of the above forms, please forward them to the**

**Office of the United States Marshal**
**United States Courthouse**
**Civil Section - Room 1500**
**1 Courthouse Way**
**Boston, Massachusetts  02210**

(Notice - Service by USM.wpd - 12/98)



EXHIBIT



Case: 1:01-cv-11804

Larry D. Ingram
Bay State Correctional Center (BSCC)
P.O. Box 73
Norfolk, MA  02050-0073

BOSTON
NOV 15 01
MASS.

U.S. OFFICIAL MAIL
US POSTAGE
PENALTY
FOR
PRIVATE
USE $300        $ 3.50

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**EXHIBIT**

tabbies

Larry D. Ingram,    )
     Plaintiff,    )
        )
        )
        )
     **v.**    )    C. A. No. 01-CV-11804-RCL
        )
        )
        )
James T. Canavan, et al,    )
     Defendants,    )

### AFFIDAVIT

I, Louis Goforth, an inmate currently confined at the Bay State Correctional Center, ("BSCC"), Norfolk, Massachusetts. I make this affidavit of my own free will and hereby state:

1. On November 20, 2001 at approximately 8:05 a.m. inmate Larry D. Ingram request that I witness the contents of a box containing (16) 10 x 13 manila envelopes;

2. One of the sixteen envelopes was addressed to the United States Marshal, Massachusetts.;

3. The remaining fifteen were marked "Legal Mail" and all contained the same contents; a one page federal judges order; one civil complaint; and forty-four exhibits;

4. I also visually observed inmate Ingram carry said box containing the sixteen envelopes to the main one housing unit at BSCC for a required inspection before being mailed out.

Wherefore, pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

1

Louis Goforth, Affiant
Bay State Correctional Center
P.O. Box 73
Norfolk, Massachusetts. 02056.

Dated: 4-1-02

2

Mr. Larry Donnell Ingram
~~W87083~~
Baystate Correctional Center  P.O. Box 73
Norfolk, Ma. 02056

**Office of the United States Marshal**
**United States Courthouse**
**Civil Section - Room 1500**
**1 Courthouse Way**
**Boston, Massachusetts. 02210**
**(617) 748-2500; Fax:(617) 748-2599**
**Attn: Nancy J. McGillivray**
      **U.S. Marshal**

                                    Return
                                    Receipt
                                    Requested
            U.S. First Class Mail [ 7000 1530 0000 5686 6379 ] #########

      Re:  SERVICE BY U.S. MARSHAL

      Marshal McGillivray;

            Please find enclosed the following for service
on each named defendant as ordered by the court:

[✓]   15 copies of the original complaint with exhibits and
      Judges order directing service by U.S. Marshal for each
      named defendant;

[✓]   15 original summons for service on each named defendant;
      and a copy of each summons for each named defendant;

[✓]   15 original USM-285 (Process Receipt and Return) for
      service on each named defendant.


            Thank you for your attention to this matter.


                        Cordially,

                        *Larry D. Ingram*
                        Larry D. Ingram, Plaintiff

Dated:November 20, 2001


cc: Attorney Rust
    file





**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

United States Marshal
United States Courthouse
Civil Section—Room 1500
1 Courthouse Way
Boston, MA. 02210
Attn: Nancy J. McGillivray
U.S. Marshal

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)    B. Date of Delivery

C. Signature
X Nancy Johnson    ☐ Agent    ☐ Addressee

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☑ Certified Mail    ☐ Express Mail
☐ Registered    ☑ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number (Copy from service label)
7000 1530 0000 5686 6379

PS Form 3811, July 1999    Domestic Return Receipt    102595-00-M-0952

UNITED STATES POSTAL SERVICE
First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

- Sender: Please print your name, address, and ZIP+4 in this box •

Larry D. Ingram
Bay State C.C.
P.O. Box 73
Norfolk, MA 02056

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

7000 1530 0000 5686 6379

|  |  |
|---|---|
| Postage | $ .65(5) |
| Certified Fee | 2.10 |
| Return Receipt Fee (Endorsement Required) | 1.30 |
| Restricted Delivery Fee (Endorsement Required) |  |
| Total Postage & Fees | $ 19.05 |

Sent to office of the United States Marshal
attn: Nancy J. McGillivray, U.S. Marshal
Street, Apt. No.; or PO Box No.
1 Courthouse Way — Room 1500
City, State, ZIP+4
Boston, Massachusetts 02210

PS Form 3800, May 2000    See Reverse for Instructions

**EXHIBIT**
**F**

tabbies®

**BAY STATE CORRECTIONAL CENTER**
**MASSACHUSETTS DEPARTMENT OF CORRECTION**
**DISCIPLINARY REPORT**

Inmate: _Larry Ingram_    Commit #: _W38220_  Housing Unit: _Mod 221A_

Date: _November 20, 2001_    D-Report #: _BS-01-0134_

Offense: _____ Code #: _#1,2,8,33_

Reviewed by Disciplinary Officer on _____ _11/23/01_

Disciplinary Report Designated as Minor ____ Major _X_ on _11/23/01_

**Referred to District Attorney:**             Yes _____        No _____

**Referred to DDU Special Hearing Officer:**   Yes _____        No _____

**DESCRIPTION OF OFFENSE:**
On November 20, 2001 at approximately 8:10 am, I, Sgt. Paul F. Glynn,
while doing the mail, spoke with inmate Larry Ingram W38220 and
instructed him to report to room A211 at 10:00 am.

At approximately 8:10 am I instructed inmate Ingram twice to report to
room A211 at 10:00 am.  I informed inmate Ingram that he should not be
late or early, but should arrive at 10:00 am.  At this time he stated
"ok".  As inmate Ingram walked away he stated "Sgt. Glynn, 10:00" and I
said "Yes, 10:00".

Inmate Ingram did not show up at A211 at 10:00 am, as instructed.  At
approximately 10:20 am I called Mod 2 and spoke with Officer Johnson who
informed me that inmate Ingram had not signed out of his unit.  At that
time I informed Captain Donovan that the inmate had not shown up.  I was
instructed by Captain Donovan to escort the inmate to the Inner Control
holding cell.

Myself and Sgt. Morelli entered Mod 2.  Inmate Ingram was sitting in the
day room reading a book.  We called inmate Ingram into the Mod 2
Sergeant's office.  I asked inmate Ingram why he did not report to room
A211 at 10:00 am, as instructed.  He replied in a surly tone "Oh, I
forgot".  Inmate was placed in restraints by myself and Sgt. Morelli and
escorted to the Inner Control holding cell.

Has the Inmate been placed on Awaiting Action Status? Yes:____ No:____

Reporting Staff Persons's Signature: _____

Date: _11/20/01_    Shift: _7X3_          Days Off: _S, S_

Shift Commander's Signature: _____ Date: _11/20/01_

Disciplinary Officer's Signature: _____ Date: _11/23/01_

Finding and Sanction, If Any: _Guilty  5 days room detention_

(Transcribed from disciplinary hearing if major matter)

Appeal Results _appeal/denied_

Reviewing Authority: _James Maloson_ Date: _1/3/0_

**EXHIBIT**

**August, 2000**                          **ATTACHMENT A - BSCC 430**

# BAY STATE CORRECTIONAL CENTER
## MASSACHUSETTS DEPARTMENT OF CORRECTION
### DISCIPLINARY REPORT

Inmate: _Ingram Larry_  Commit # _W38220_  Housing Unit: _MOD-2_

Date: _11/20/01_  D-Report #: _BS-01-0136_

Offense: _____  Code #: _2, 8, 24, 33_

Reviewed by Disciplinary Officer on _11/23/01_

Disciplinary Report Designated as Minor ____ Major _X_ on _11/23/01_

**Referred to District Attorney:**  Yes _____  No _X_

**Referred to DDU Special Hearing Officer:**  Yes _____  No _X_

**DESCRIPTION OF OFFENSE:**

On 11/20/01 At Approximently 10:50 AM
I CO Todd Johnson conducted A Room
Search of Rm#221.
The Following Items were found in
Inmates Ingram, Larry #W38220 property
① Sylvania 40w light Bulb
① Avery yellow Hi-Litor
These Item Are consperd Contraband.
Sgt Morrelli Notified.

Has the Inmate been placed on Awaiting Action Status? Yes:____ No:____

Reporting Staff Persons's Signature: _CO Todd Johnson_

Date: _11/20/01_  Shift: _7X3_  Days Off: _F/S_

Shift Commander's Signature: _____  Date: _11/20/01_

Disciplinary Officer's Signature: _Paul J. Fly_  Date: _11/28/01_

Finding and Sanction, If Any: _Guilty_
_1 month loss of canteen_

(Transcribed from disciplinary hearing if major matter)

Appeal Results: _Appeal denied_

Reviewing Authority: _Janice Nicole_  Date: _2/1/0_

**August, 2000**  **EXHIBIT**  ATTACHMENT A - BSCC 430

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LARRY D. INGRAM

CIVIL ACTION NO. 01-CV-11804-RCL

Plaintiff,

vs.

JAMES T. CANAVAN, et al.

## **AFFIDAVIT**

I, Christopher Morelli depose and state that:

1.     I am a Sergeant at Bay State Correctional Center.

2.     On November 20, 2001, Sergeant Paul Glynn issued Disciplinary Report
Number BS-01-0135 to inmate Larry Ingram. It is standard procedure to
search the cells of inmates when a disciplinary report is issued.

3.     Correction Officer Todd Johnson conducted the search of Mr. Ingram's
cell following the aforesaid disciplinary report. During the search, Officer
Johnson discovered contraband items that formed the basis of a second
disciplinary report, Number 01-0136.

4.     Officer Johnson also determined that the inmate had legal papers in his
cell in excess of the one cubic foot allowed by property regulations. As a
result, he removed the excess papers from the cell and brought them to my
office. Neither Officer Johnson nor I read Mr. Ingram's legal papers.

5.     The next day, I spoke with Mr. Ingram and explained that he had more
documents in his cell than the regulations allow. I gave him the
opportunity to sort through the papers to remove anything he did not want



EXHIBIT
I

included in the one cubic foot of materials he was allowed to retain.

Christopher Morelli



James Matesanz, Superintendent
Bay State Correctional Center (BSCC)
28 Clark Street
Norfolk, Massachusetts. 02056


Larry D. Ingram, [W-38220] Mod.2. #221 A
Bay State Correctional Center
P.O. Box 73
Norfolk, Massachusetts. 02056

                                    Return
                                    Receipt
                                    Requested
        U.S. First Class Mail [7000 1530 0000 5686 6386] #########


        Re: <u>Consolidated Disciplinary Appeal</u>
            D-Reports,##01-0135 & 01-0136


    Supt. Matesanz,

        Please find before you my consolidate appeal to d-reports,#
01-0135 and 01-0136. Each disciplinary report is written by a different
officer, yet stem from a single incident.

        The specific grounds for dismissal to d-report, #01-0135
are as follows: 1) Harassment and retaliatory actions relative to
outgoing legal mail by Capt. Donovan and Sgt. Glynn; 2) D-report, # 01-
0135 was written by Sgt. Glynn as an abuse of authority of Sgt. Glynn
and Capt. Donovan; and 3) Violation of existing CMR's, i.e. 103 CMR
430.07 and 430.11 (2). Sgt. Glynn wrote d-report, #01-0135, he should
have recused himself from all aspects of d-report, #01-0135, he did
not.

        As to d-report, #01-0136 C.O. Todd Johnson was ordered,
(Respondeat Superior) by Capt. Donovan and/or Sgt. Glynn to search my
living quarters at 10:50 a.m. to find and confiscate contraband and
any excess property, etc., thus, a d-report. However, legal documents
were taken from my living quarters while I was detained in the inner
control holding cell for (7) hours. This action was retaliatory and
abuse of authority by Capt. Donovan and Sgt. Glynn. C.O. Johnson's
ordered room search produced an extra light bulb and a yellow Hi-Liter.
These items were allowed for retention by inmates (light bulbs still

Consolidate appeal continued......2


allowed for retention if you possess a lamp). I have never been
informed by notice or otherwise that I could no longer be in possession
of a yellow hi-liter or light bulbs.

       For these reasons, independently and accumulative the
Findings, Sanctions and Recommendations to d-reports, #01-0135 and
#01-0136 should be dismissed and expunged from my institutional record.


### I.
### Diciplinary Report, 01-0135


       I have attached my affidavit of the accuracy of the
circumstances which give rise and produced d-report, #01-0135. The
following is a more detailed description of what took place:


          On November 20, 2001 at approximately 8:05 a.m. I
          went to mail (16) 10 x 13 manila envelopes to the
          United States Marshals Office, Massachusetts. (I
          requested that an unnamed inmate witness the contents
          of each envelope prior to leaving Mod. 2 for mail out).

          Once in the main one housing dayroom the following staff
          members were present, Capt. Chris Donovan, Sgt. Paul Glynn,
          Sgt. Chris Morelli, I.P.S. Kennedy, C.O. David Heanult and
          Tom Caulfield, mail Officer, and inmate Arlis Evans.

          I announced to C.O. Tom Calufield that the destination
          of my mail out was to the United States Marshals Office.
          I proceeded to allow C.O. Caulfield to inspect each
          envelope individually. After several envelopes were inspected
          Capt. Donovan began questioning me.

          Capt. Donovan: "where did you get those envelopes?"
          Inmate Ingram: "from the law library."

          Capt. Donovan: "where did you get all those copies from?"
          Inmate Ingram: "from the law library."

Consolidated appeal continued......3

          Capt. Donovan:   "Did you fill out a slip for those copies?"
          Inmate Ingram:   "yes."

          Capt. Donovan:   "there better be one."

        While still allowing C.O Caulfield to inspect the
envelopes Sgt. Glynn began questioning me:

          Sgt. Glynn:   "Hey Larry, are you going on a trip today?"
          Inmate Ingram:   "not to my knowledge, and if so, I'm not
                            aware of such a trip."

          Capt. Donovan:   "where did you get that envelope from?"
          Inmate Ingram:   "I brought it."

          Capt. Donovan:   "do you have proof of that?"
          Inmate Ingram:   "yes I do."

          Capt. Donovan:   "come and see me at 10:00 a.m., No! No! don't
                            see me, see Sgt. Glynn."

          Sgt. Glynn:   "I'll see you at 10:00 a.m. right Larry?"
          Inmate Ingram: "yeah, yeah, O.K."


        It is evident that d-report, #01-0135 says nothing about
why I was instructed to report to A211 . It (d-report, #01-0135) does
not describe nor identify the envelope in question, (See: d-report,#
01-0135 ¶¶,one and two). A photostat copy of the envelope has been
submitted into evidence at both hearings to show relevancy and a
continuum of the intentions of Capt. Donovan and Sgt. Glynn.

        I reasoned that I was suppose to report to A211 with proof
that I purchased the envelope in question. D-report, #01-0135 says
absolutely nothing about why I was instructed to report to A211. I
requested that the reporting officer, Sgt. Glynn be at the hearing,
and that the hearing be tape recorded. I asked Sgt. Glynn one question,

          Inmate Ingram:   "why was I instructed to report to A211 ?"
          Sgt. Glynn:   "the Captain wanted to get more information."

Consolidated appeal continued......4

Before I left the main one housing dayroom I clearly
told Capt. Donovan that I had proof of purchase for the envelope he
was concerned about. What more information could he have been looking
for? At the hearing for d-report, #01-0135 I requested that Capt.
Donovan be a witness. I asked Capt. Donovan several questions:

Inmate Ingram:  "why was I instructed to report to A211?"

Capt. Donovan:  "I wasn't satisfied with your answers."


At or about 10:15 a.m. Sergeants Glynn and Morelli
entered Mod. two. Sgt. Glynn motioned for me to come
to the officers station. Sgt. Glynn asked why didn't
I report to A211 as instructed. I simply stated,
"I forgot."
As a result of said reply I was escorted to the
modular Sgt. office, over aggressively pat searched
by Sgt. Glynn and taken to the inner control holding
cell from 10:20 a.m. to 5:15 p.m. (7 hours) per order
Capt. Donovan. (See: D-report, #01-0135, ¶3.)


According to d-report, #01-0136 a room search was conducted
(per order Capt. Donovan and/or Sgt. Glynn) at 10:50 a.m. (30) minutes
after I was detained at the inner control holding cell by C.O. Todd
Johnson. C.O. Johnson considered the following item contraband, (1)
40 watt light bulb and (1) Avery yellow Hi-Liter and confiscated these
items. (See: D-report, #01-0136).

He also confiscated (7) manila envelopes, one clearly
marked "Exhibit", (the same type of envelope Capt. Donovan instructed
me to report to A211 with proof of purchase), (1) Civil Complaint,
#11804 (20 pages), 44 exhibits (133 pages), and a Judges order directing
service upon the defendants by U.S. Marshals.

Consolidated appeal continued......5

At or about 2:00 p.m. 11/20/01 Capt. Donovan and
Sgt. Glynn entered the inner control holding cell.
The following is a summary of the conversation that
ensued:

Capt. Donovan:   "You can't beat the system. There are things
                 we all have to do, even I have to do things
                 I don't like, but in the end the system
                 always win."
                 "Don't you like it here? You wouldn't want
                 to be in 10 block with urine and feces all
                 over the place?"

Inmate Ingram:   "I like it here, and No! I wouldn't want to
                 live in those conditions."

Capt. Donovan:   "Now, I know when someone is calling me a liar."

Inmate Ingram:   "I haven't called anyone a liar."

Capt. Donovan:   "Now, where did you get that envelope?"

Inmate Ingram:   "Crow's Office Supplies."

Capt. Donovan:   "Do you have proof of that?"

Inmate Ingram:   "I can provide proof for the envelope you are
                 concerned about."

Capt. Donovan:   "I'll see you in court."

When I was released from the inner control holding cell
at 5:15 p.m. I returned to my living quarters. I immediately
realized that, as previously described, (7) manila envelopes,
one clearly marked "exhibit", (1) Civil complaint, #11804 (20
pages), Exhibits (133 pages), and a Judges order directing
service by the U.S. Marshals were missing from my cell. The
civil complaint and judges order was not within a envelope,
however, these documents were the same exact contents of the
(15)  10x13 marked  "legal" envelopes I had mailed earlier
that morning. All the other envelopes taken from my cell
contained legal documents.

The following day, November 21, 2001 at approximately at
1:00 p.m. Sgt. Morelli said he needed to see me in his office.
The following dialogue took place as he placed a box with
"1 cubic foot" written on it containing what look like the
documents taken from my cell. The following dialogue took
place:

Consolidated appeal continued......6


Sgt. Morelli:    "you were over the 1 cubic foot limit for
                 legal documents."

Inmate Ingram: "who took legal documents from my cell?"

Sgt. Morelli:   "I don't know."

Inmate Ingram: "what do you mean you don't know, you're the
                 modular housing Sergeant, you should know."

At approximately 1:05 p.m. I was given all the legal
documents taken from my cell.



      The nature of d-report, #01-0135 is my proof of purchase
of a particular envelope. It is clear that I was detained (7 hours),
ordered to have my cell searched, and (7) similar envelopes Capt.
Donovan was concerned about, a civil complaint with its exhibits
taken from my cell. Sgt. Glynn stated, "The Capt. wanted to get more
information."  Then Capt. Donovan stated, "I wasn't satisfied with
your answers." Capt. Donovan's final statement made to me at the
inner control holding cell surmise the extent of his satisfaction,
"I'll see you in court."

      Lastly, Sgt. Glynn wrote d-report,#01-0135. He should have
recused himself from all aspects of d-report, #01-0135, he did not.
See, 103 CMR 430.07 (1), Disciplinary Personnel:

#### 430.07 Disciplinary Personnel

(1)  The Superintendent at each institution shall appoint a
disciplinary officer who is of supervisory rank or function,
who will perform the functions of that office, as set forth in
103 CMR 430.00.  The Superintendent may appoint a disciplinary
officer for a definite or indefinite term and may in addition
appoint a separate disciplinary officer for any disciplinary
matter or class of disciplinary matters.

(2)  The Superintendent shall appoint a hearing officer or officers
to conduct disciplinary hearings as set forth in 103 CMR
430.00.  Each Superintendent may appoint a hearing officer or
officers for a definite or indefinite term and may in addition
appoint a new hearing officer to hear and determine any
disciplinary matter or class of disciplinary matters.

**Consolidated appeal continued......7**

        More specifically, Sgt. Glynn as the Disciplinary
Officer   requested two continuance concerning d-report, #01-0135,
See, attachments **A** and **B**, also See, 103 CMR 430.11 (2), Notice and
Scheduling of Hearing Before a Hearing Officer:

>     430.11  Proceedings in Major Matters:  Notice and Scheduling of
>             Hearing Before a Hearing Officer
>
> (1)   Within one weekday of the designation of the offense as a
>       major matter, the disciplinary report, a notice of hearing,
>       and a request for representation and/or witness form shall be
>       served upon the inmate by the disciplinary officer or his
>       designee.
>
> (2)   The disciplinary officer shall schedule a hearing before a
>       hearing officer within a reasonable time, but not less than 24
>       hours after the inmate has been served with both the
>       disciplinary report and the notice specifying the time of
>       hearing.   The disciplinary officer or hearing officer may
>       continue a hearing at his discretion.  The inmate shall be
>       given written notice of such continuance and the new date for
>       the hearing.  The inmate shall be entitled to one continuance
>       for good cause provided that any request for a continuance
>       must  ordinarily be made at least 24 hours prior to the
>       scheduled time of the hearing.

        Surely, this may be considered an innocuous error, but
in the totality of the initiation involving the circumstances created
solely by Capt. Donovan and Sgt. Glynn, he Sgt. Glynn should have
recused himself from all aspects of d-report, #01-0135 to eliminate
any appearance of impropriety.

Consolidated appeal continued......8

## II.
### Disciplinary Report, 01-0136

C.O. Todd Johnson was ordered to search me cell 30 minutes after I was detained at the inner control holding cell.

At the hearing for d-report, #01-0136, the hearing was tape recorded. I asked Officer Johnson several questions:

Inmate Ingram:   "Did you confiscate anything else from my cell besides the light bulb and a Hi-Liter?"

C.O. Johnson:    "Yes, excess legal papers."

Inmate Ingram:   "Was this a random search or were you ordered to search my cell?"

Note: The Hearing Officer R. Palmer stated that that question was immaterial and precluded C.O. Johnson from answering that question.

This question was very material and relative to what prompt C.O. Johnson to randomly search my cell on November 20, 2001, at 10:50 a.m. and confiscate the exact legal contents of (15) envelopes air marked for the U.S. Marshals office earlier that same morning.

Why would Capt. Donovan say to me at 2:00 p.m. at the inner control holding cell, "I'll see you in court." The only logical deduction,Capt. Donovan and/or Sgt. Glynn ordered my cell be searched, confiscate legal documents, documents had to have been read in order to know that they were legal, illegally possess my legal material, legal material directly relative to civil litigation against staff here at this institution and read or do as they wish with my legal documents. At no time have I said to Capt. Donovan or any other staff member that I was taking them to court.

The light bulb and the Hi-Liter are a diversion to obscure the real intent behind the clandestine actions of Capt. Donovan and Sgt. Glynn. Sgt. Glynn, as the Disciplinary Officer denied my

Consolidated appeal continued......9


my request to have property records that would have shown that light
bulbs were at one time allowed to enter the institution, thus inmates
could and still possess the right to retain them in their living
quarters.

I have been a college student at this institution since
April 1993. I have received numerous yellow hi-liters through the
educational department, not the present educational staff. I have never
been informed that I, nor inmates in general have been informed that if
you are in possession of a    "yellow hi-liter" it is considered contraband
and you would be receiving a d-report. The memo issued by Director of
Security, Steven Fairley on November 7, 2000, is addressed to All Staff,
not to inmates nor to be posted in the housing units. Nothing tells me
that a yellow hi-liter in my possession is contraband, therefore, I have
not knowingly violated the rules and regulations of this institution.

Finally, as to the regulations referred to in this appeal
have the force of law. The disciplinary hearing is a quasi-judicial
hearing which are afforded certain procedural rights. Some of those
rights have been abridged. A regulation promulgated pursuant to
Legislative Authority, as is 103 CMR 430.00 et seq. generally have
the force of law and is binding on the agency that promulgated it.
See: Kenny v. Commissioner, 393 Mass at 33 (1984). Once an agency has
seen fit to promulgate a regulation, as the DOC has, it must comply with
it, See: Royce v. Commissioner, 390 Mass 423, 427 (1983), also See:
Dalomba's case, 352 Mass 598, 603 (1967), and Stokes v. Commissioner,
26 Mass. App. Ct. 585, 588 (1988).

Consolidate appeal continue....10

### III.

### Conclusion

For the foregoing reasons disciplinary reports, ## 01-0135 and 01-0136, their Findings, Sanctions and Recommendations should be dismissed and expunged from my institutional record.

Respectfully submitted,

Larry D. /Ingram [W-38220]
Bay State Correctional Center
P.O. Box 73
Norfolk, Massachusetts. 02056

cc: Attorney Rust
     file

## AFFIDAVIT OF LARRY D. INGRAM

I, Larry D. Ingram [W-38220] hereby depose and state that the following description and testimony of the November 20, 2001 incident are accurate and true to the best of my knowledge and belief. I hereby state:

1. That, on November 20, 2001 at approximately 8:10 a.m. I went to mail (16) 10 x 13 manila envelopes to the United State Marshal Office, Massachusetts;

2. That once at the main one housing day room I proceeded to allow Tom Caulfield, Mail Officer to inspect each envelope individually;

3. That present were Capt. Chris Donovan, Sgt. Paul Glynn, Sgt. Chris Morelli, C.O. David Henault, C.O. Tom Caulfield, I.P.S. Officer Kennedy and inmate Arlis Evans;

4. That, after several envelopes were inspected Capt. Donovan asked me "where did you get those envelopes?" I stated, "from the law library." He next asked, "Where did I get all these copies from?" I again stated, "from the law library." He further asked, "Did you fill out a slip for those copies?" I said, "yes." Capt. Donovan replied, "there better be one.";

5. That Sgt. Glynn asked me,"hey Larry! are you going on a trip today?" I replied, "Not to my knowledge, and if so I'm not aware of such a trip.";

6. That Capt. Donovan then asked me about a particular enevlope. "Where did you get that envelope from?" I stated, "I brought it." He said, "do you have proof of that?" I said, "yes I do." Capt. Donovan said, come and see me at 10:00 a.m., no! no ! don't see me see Sgt. Glynn.";

7. That Sgt. Glynn said "I'll see you at 10:00 a.m., right Larry," I stated, yeh, yeh O.K.";

**Affidavit of Larry D. Ingram continued...2**

8. That, after each envelope was inspected I sealed the box and left the main one housing day room and returned to my housing unit.;

9. That, at approximately 10:15 a.m. Sgt. Glynn and Sgt. Morelli entered the Modular two and called me from the day room. Sgt. Glynn asked me why didn't I come to his office at 10:00 a.m. . I simply stated, "I forgot.";

10. That, I was taken to the Modular two Sgt. office, pat searched and taken to the inner control holding cell from 10:20 a.m. to 5:15 p.m.;

11.  That, at or about 2:00 p.m. Capt. Donovan and Sgt. Glynn entered the inner control holding cell. Capt. Donovan began by stating, "you can't beat the system. There are things we all have to do, even I have to do things I don't like, but in the end the system always wins.";

12. That, Capt. Donovan continued by stating, "Don't you like it here? You wouldn't want to be in 10 block with urine and feces all over the place." I said, "I like it here and No! , I wouldn't want to live in those conditions.;

13. That, Capt. Donovan stated,  "now, I know when someone is calling me a liar." I said, "I haven't called anyone a liar." He continued, "Now where did you get that envelope?" I stated, "Crow's Office Supplies , He asked, "Do you have proof of that?" I said, "I can provide proof for the envelope he was concerned about." Capt. Donovan ended the conversation by stating, "I'll see you in court." I remained quiet ;

14. That, when I went back to my living quarters it had been searched. I immediately realized that (7) manila envelopes, one clearly marked "Exhibit" (1) copy of my civil complaint #11804, Exhibits (133 pages) and a Judges order directing service by the U.S. Marshal was missing from my cell, (The same exact contents of the (15) envelopes I had mailed earlier that morning). All envelopes contained legal documents.;

**Affidavit of Larry D. Ingram continued...3**

15. That, the following day November 21, 2001 at approximately 1:00 p.m. Sgt. Morelli said he needed to see me in his office. Sgt. Morelli stated, "you were over the 1 cubic foot limit for legal documents." I asked Sgt. Morelli, "who took legal documents from my cell ?" Sgt. Morelli stated, "I don't know!" I asked Sgt. Morelli, what do you mean you don't know, you're the Modular Housing Sgt. you should know!";

16. That, on November 21, 2001 at approximately 1:05 p.m. I was handed (7) manila envelopes (the same envelope Capt. Donovan was concerned about); (1) civil complaint, #11804, with exhibits, 133 pages, all legal documents from Sgt. Chris Morelli..

Wherefore, the above statements are true to the best of knowledge and belief.

**SWORN AND SUBSCRIBED TO UNDER THE PAINS AND PENALTIES OF PERJURY PURSUANT TO SUPERIOR COURT RULES, RULE 15.**

_Larry D. Ingram_

**Larry D. Ingram, Affiant**
**Bay State Correctional Center**
**P.O. Box 73**
**Norfolk, Massachusetts. 02056.**

**Dated: December 6, 2001.**

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

James Matesanz
Superintendent
Bay State Corr. Center
28 Clark Street
Norfolk, Massachusetts.
02056

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)   B. Date of Delivery

C. Signature
X _____   ☐ Agent
                    ☐ Addressee

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☐ Registered       ☐ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number (Copy from service label)
7000 1530 0000 5686 6386

PS Form 3811, July 1999    Domestic Return Receipt    102595-00-M-0952

---

UNITED STATES POSTAL SERVICE                    First-Class Mail
                                                Postage & Fees Paid
                                                USPS
                                                Permit No. G-10

- Sender: Please print your name, address, and ZIP+4 in this box •

Larry D. Ingram
Bay State Correctional Center
P.O. Box 73
Norfolk, Massachusetts. 02056

---

U.S. Postal Service
CERTIFIED MAIL RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

O F F I C I A L   U S E

Postage  $  1.26

Certified Fee  2.10

Return Receipt Fee  1.50
(Endorsement Required)

Restricted Delivery Fee
(Endorsement Required)

Total Postage & Fees  $4.86

Sent To  James Matesanz, Superintendent
Street, Apt. No.; or PO Box No.  28 Clark Street
City, State, ZIP+4  Norfolk, Massachusetts. 02056

7000 1530 0000 5686 6386

Postmark Here   DEC 21 2001   U.S. MA 02056

PS Form 3800, May 2000   See Reverse for Instructions





*The Commonwealth of Massachusetts*
*Executive Office of Public Safety*
*Department of Correction*
*Bay State Correctional Center*
*28 Clark Street, P.O. Box 73*
*Norfolk, Massachusetts 02056*

**Jane Swift**
*Governor*

**Jane Perlov**
*Secretary*

Michael T. Maloney
*Commissioner*

Kathleen M. Dennehy
*Deputy Commissioner*

James Matesanz
*Superintendent*

To:        Larry Ingram, W38220

From:      James Matesanz, Superintendent

Date:      February 11, 2002

Re:        **Appeal Results for BS-01-0135 and 0136**

I have reviewed your appeal and transcripts of the disciplinary hearing for BS-01-0135 and 0136. I have decided to uphold the findings and sanctions of the hearing officer. Therefore, the findings and sanctions will stand. Your appeal is denied.

Served
2/11/02

cc:   File

