UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LARRY D. INGRAM,<br>    Plaintiff,<br><br>v.<br><br>CHRISTOPHER DONOVAN, et al,<br>    Defendants. | Civil Action No. 04-CV-12475-RCL |

MEMORANDUM AND ORDER ON DEFENDANTS'
MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT

LINDSAY, District Judge.

Larry Ingram ("Ingram"), an inmate incarcerated at the Bay State Correctional Center ("BSCC"), brings this pro se claim under 42 U.S.C. § 1983 alleging that various BSCC officials conspired to retaliate against him because he filed a federal lawsuit against them. The defendants - - former Superintendant James Matesanz, former Sergeant Christopher Morelli, Sergeant Paul Glynn, former Captain Christopher Donovan, Officer Todd Johnson, and former Disciplinary Hearing Officer Russ Palmer - - now move to dismiss this complaint or, in the alternative, for summary judgment.[1] Upon consideration of the papers submitted by the parties, the court GRANTS the motion for summary judgment in favor of the defendants.

---

[1] In addition to their motion to dismiss and/or for summary judgment on the merits, defendants Morelli, Matesanz, Palmer and Donovan also move to dismiss the complaint against them on the ground that they were never personally served with the complaint. Because I grant their motion for summary judgment, I do not address this separate ground for dismissal. Neither do I consider the other procedural defenses raised by the defendants, finding it simpler to dispose of this case by a ruling on the merits.

## I. FACTUAL BACKGROUND[2]

On October 18, 2001, Ingram filed a lawsuit in this court against a number of prison officials, including current defendants Morelli, Donovan, Matesanz and Glynn. (Compl. ¶ 10, Compl. Ex. 1.) During the morning of November 20, 2001, Ingram was preparing envelopes marked "Legal Mail" to be sent to the United States Marshals Service for service of process upon the defendants in his civil action; according to prison procedure this legal mail was inspected in the presence of, inter alia, defendants Donovan, Glynn and Morelli. (Compl. ¶¶ 13-17.) During the inspection, Donovan and Glynn began to question Ingram about whether he had received proper permission for his legal photocopies and what he was sending to the U.S. Marshals Service. (Compl. ¶ 18.) Donovan instructed Ingram to report to Glynn's office at 10:00 a.m. that day with proof of purchase for the envelopes. (Compl. ¶ 19.)

Ingram did not report at the appointed time, and when Glynn found him and questioned him about his having missed the appointment, Ingram claimed he had forgotten the appointment. (Compl. ¶ 20.) Ingram was then handcuffed and taken to administrative segregation, where he remained until 5:15 p.m. that day. (Compl. ¶ 20.) At 2:00 p.m. that day Donovan and Glynn entered the holding cell where Ingram was detained; Donovan questioned Ingram about the envelope and made threats including "You wouldn't want to be in 10 block with urine and feces all over the place?" and "I'll see you in court." (Compl. ¶ 21.)

---

[2] The factual record is derived from consideration of the documents submitted by both Ingram and the defendants, as well as Ingram's verified complaint, which is treated as an affidavit for summary judgment purposes to the extent it addresses facts within Ingram's personal knowledge. *See Sheinkopf v. Stone*, 927 F.2d 1259, 1262-63 (1st Cir. 1991). For purposes of the present motion, the facts recited here are not disputed, unless otherwise indicated.

On November 23, 2001, Ingram was served with two disciplinary reports: one for insubordination in his failure to report to Glynn's office as ordered and the second for possession of contraband consisting of a spare lightbulb and a yellow highlighter. (Compl. ¶¶ 26, 28; Compl. Exs. 8, 10.) On December 6, 2001, Defendant Russ Palmer conducted hearings on both disciplinary charges that fully complied with Ingram's due process rights.[3] (Compl. ¶¶ 31-32; Compl. Exs. 17-18.) In defense of the contraband charge Ingram did not deny possession of the two objects but argued that they had been properly issued to him and that he did not know they were contraband. (Compl. Ex. 17.) With respect to the insubordination charge, Ingram reiterated that he had forgotten Donovan's instructions. (Compl. Ex. 18.) Palmer found Ingram guilty of both charges and sentenced him to one month loss of canteen for the possession of contraband and five days room detention for the insubordination. (Compl. ¶¶ 31-32; Compl. Exs. 17-18.) Ingram unsuccessfully appealed this discipline to Defendant Matesanz. (Compl. ¶¶ 33-34; Compl. Exs. 19-20.)

## II. DISCUSSION

### A. Summary Judgment Standard

Because in disposing of the present motion, I have relied on materials beyond the complaint, I have treated the present motion as one for summary judgment. Under Federal Rules of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issues of material fact and the moving party is entitled to judgment as a

---

[3] Although the defendants interpret Ingram's complaint as in part asserting a violation of his right to due process, Ingram makes clear in his reply that he is not challenging the protections afforded to him in these hearings.

matter of law." In considering a motion for summary judgment, the court must review the record "in the light most flattering to the nonmovant and indulge all reasonable inferences in that party's favor." *Cadle Co. v. Hayes*, 116 F.3d 957, 959 (1st Cir. 1997).

B.  **Retaliation**

Prison officials may not retaliate against inmates based on the inmates' exercise of constitutionally protected rights. *Beauchamp v. Murphy*, 37 F.3d 700, 710 (1st Cir. 1994). Even if an action, such as the revocation of privileges, would be proper if done for a different reason, it is unconstitutional if intended as retaliation for constitutionally protected activity. *Id*. Because of the latitude given to prison officials to control the administration of the prison, Ingram faces a substantial challenge in this case. *McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir. 1979). In order to prevail on his retaliation claim, he must establish that he would not have been disciplined "but for" the defendants' intent to retaliate against him. *Id.* Thus, even if the defendants had an impermissible reason for disciplining Ingram, so long as they also had an independent, permissible reason, they would not be liable. *Scarpa v. Ponte*, 638 F. Supp. 1019, 1029 (D. Mass. 1986).

Considering the facts in the light most favorable to Ingram, he cannot meet this burden. Even were he to establish that the defendants were motivated to retaliate against him for the filing of his civil suit, he cannot establish that he would not have been disciplined but for this motive. Indeed, the present record does not show that the defendants were even aware of Ingram's lawsuit against them when they imposed the discipline of which Ingram now complains. Moreover, the discipline Ingram received was not excessive in response to the violations that he does not dispute he committed: possession of contraband and failure to follow

4

a correction officer's order.  Although Ingram contested his guilt of these violations at his disciplinary hearings, he admitted sufficient facts to find him guilty of each violation and therefore to warrant the punishment he received.  The Court GRANTS summary judgment against Ingram on the retaliation claim.

### C. Conspiracy

Ingram also claims the defendants are guilty of a conspiracy to retaliate against him. While there are many deficiencies in Ingram's § 1983 conspiracy claim, including the dearth of evidence that would support a reasonable inference of an agreement among the defendants, one in particular is fatal: the record does not show that Ingram can establish that "there [has] been, besides the agreement, an actual deprivation of a right secured by the Constitution and laws." *See Johnson v. Mahoney*, 424 F.3d 83, 96 (1st Cir. 2005) (internal citations omitted); *see also Landrigan v. City of Warwick,* 628 F.2d 736, 742 (1st Cir.1980) ("Conspiracy is merely the mechanism by which to obtain the necessary state action or to impose liability on one defendant for the acts of the others performed in pursuance of the conspiracy.") (internal citations omitted)**.** Accordingly, the Court GRANTS summary judgment against Ingram on the conspiracy claim as well.

### III.  CONCLUSION

Because there are no genuine issues of material fact and the defendants are entitled to judgment as a matter of law, the defendants' motion for summary judgment is GRANTED.  The clerk shall enter judgment for the defendants, dismissing this case, and shall terminate the case on the court's docket.

SO ORDERED.

                                                    /s/ REGINALD C. LINDSAY  
                                                    United States District Judge

DATED:  March 7, 2006